THAD A. DAVIS (CSB # 220503)
Thad.Davis@ropesgray.com
JOSHUA V. VAN HOVEN (CSB # 262815)
Joshua.vanhoven@ropesgray.com
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Phone: (650) 617-4000
Facsimile: (650) 617-4090

PETER M. BRODY
Peter.Brody@ropesgray.com
ROPES & GRAY LLP
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Telephone: (202) 508-4612
Facsimile: (202) 383-7777

Attorneys for Plaintiff
TRIA BEAUTY, INC.

FILED

2010 NOV -5 P 3: 55

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA. SAN JOSE

ADR

E-filing

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

TRIA BEAUTY, INC.

           Plaintiff,

  vs.

RADIANCY INC.,

           Defendant

Case No. CV10- 5030 PVT

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR: VIOLATION OF § 43(a) OF THE LANHAM ACT; VIOLATION OF CAL. BUS. & PROF. CODE § 17500; VIOLATION OF CAL. BUS. & PROF. CODE § 17200; AND INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS**

**JURY TRIAL DEMANDED**

1.      Plaintiff TRIA Beauty, Inc. ("TRIA" or "Plaintiff"), by its attorneys, Ropes & Gray LLP, files this Complaint against defendant Radiancy Inc. ("Radiancy" or "Defendant") to obtain relief from a massive campaign of false and misleading advertising and other unfair competitive practices by Radiancy that is enticing large numbers of customers to purchase Radiancy's hair-removal products and is thereby causing TRIA substantial injury in the considerable market for such products.  In support of its claims for relief, TRIA avers particularly as follows:

## PARTIES

2.      Plaintiff is a Delaware corporation with its principal place of business in Dublin, California.

3.      Upon information and belief, Defendant is a Delaware company with its principal place of business in Orangeburg, New York.

## JURISDICTION

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121.  This Court has related claim jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Defendants because Defendants have established minimum contacts with the State of California by purposefully availing themselves of, and doing business in, the State of California through extensive sales in that state and advertising there in various media, including national television networks and the Internet.

## VENUE

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the false and misleading advertising and unfair competition complained of in this complaint has occurred and is occurring in this judicial district, and because TRIA and the public have suffered and continue to suffer injury in this judicial district as a result of the matters complained of herein.

/////

/////

/////

1

## FACTUAL BACKGROUND

### The TRIA System

7.    Plaintiff designs, manufactures, markets, and sells the TRIA Laser Hair Removal System ("TRIA System"). The TRIA System consists of a semiconductor diode laser hand-held device that delivers infrared light, combined with a skin sensor that analyzes the user's skin-type to ensure safe use of the system.

8.    The TRIA System uses a method known as selective photothermolysis, whereby the TRIA System's laser energy is selectively targeted at the dark pigment in hair in order to disable the hair follicle permanently and thereby prevent re-growth of the hair.

9.    The Food and Drug Administration ("FDA") regulates the advertising and distribution of all "devices" that fall within the definition set forth in Section 201(h) of the Federal Food, Drug and Cosmetic Act ("FDC Act"), including any "instrument, apparatus, implement, machine, contrivance" which is "intended to affect the structure or any function of the body of man." 21 U.S.C. § 321(h).   With certain exceptions not relevant here, a medical device may not be introduced into interstate commerce without approval by the FDA of a premarket application or clearance by FDA of a premarket notification under Section 510(k) of the FDC Act.   In a Section 510(k) notification, a person proposing to distribute a device in interstate commerce must demonstrate that its device is "substantially equivalent" to a previously legally marketed device, referred to as a "predicate device." The device may not be legally marketed unless and until FDA issues an order declaring the device that is the subject of the Section 510(k) notification to be substantially equivalent to the predicate identified in the submission. To establish substantial equivalence, the Section 510(k) notification must, among other things, demonstrate to FDA's satisfaction that any technological differences between the new device and the predicate device do not render the new device less safe or effective than the predicate device. The evidence to make such a showing may include, as FDA deems necessary, human clinical testing or other appropriate scientific data. 21 U.S.C. § 360c(i)(1).

10.    In 2005, the FDA granted Section 510(k) clearance for an earlier model of the TRIA System as a prescription device for hair removal, for use under the supervision of a practitioner

2

1  licensed by state law to direct the use of such device. *See* 21 C.F.R. § 801.109. In 2008, the FDA

2  granted Section 510(k) clearance for the TRIA System as an over-the-counter ("OTC") device for

3  home use, based on extensive clinical testing demonstrating the safety and effectiveness of that

4  product for use in the OTC environment. In December 2009, after TRIA submitted additional

5  information demonstrating that use of the TRIA System results in a permanent reduction of hair re-

6  growth, the FDA granted a further Section 510(k) clearance for the TRIA System as the first OTC

7  device indicated for permanent hair reduction. To TRIA's knowledge, the TRIA System remains the

8  only OTC device to have such FDA clearance.

**The "no!no!" Device**

10      11.    Defendant Radiancy markets and sells an OTC hair-removal device, in several

11  models, under the brand or product name "no!no!" (the "no!no! Device").

12      12.    The no!no! Device consists of a small wire mounted toward the open end of a

13  rectangular metal casing. When the user turns on the device, the wire heats up. The user is

14  supposed to hold the open end of the device against the skin and move the device across the skin

15  surface. As the user does this, the heated wire melts or chars the surface hairs with which it comes

16  into contact. The user is then supposed to rub the treated area with an abrasive buffing pad included

17  in the package with the device, in order to remove the crystallized pieces of charred hair.

18      13.    Radiancy distributes the no!no! Device nationally through its own Internet websites at

19  https://www.my-no-no.com and https://www.trynono.com and its toll-free telephone number at 1-

20  800-948-8215. These websites and the toll-free telephone number permit consumers located in any

21  state, including California, to make direct purchases of the no!no! Device.

22      14.    Radiancy also distributes the no! no! Device nationally through third-party on-line

23  and "bricks and mortar" resellers, including Sephora, Neiman-Marcus, Home Shopping Network,

24  and DERMADoctor. These resellers permit consumers located in any state, including California, to

25  make direct purchases of the no!no! Device.

**Radiancy's False And Misleading Advertising Claims**

27      15.    Since introducing the no!no! Device into the U.S. market in approximately 2007,

28  Radiancy has engaged in an increasingly heavy campaign of national television and Internet

3

COMPLAINT FOR INJUNCTIVE RELIEF

1  advertising to the general public to promote sales of the product. This advertising consists of the

2  interstate distribution of information and materials to the general public, including to the public in

3  California.

4       16.     In its labeling and advertising, Radiancy repeatedly claims that use of the no!no!

5  Device results not simply in a removal of hair (such as results from use of traditional hair-removal

6  techniques like shaving) but in an alteration of the physiological process by which a user normally

7  grows hair, resulting in a reduction of hair re-growth and hair density.

8       17.     Radiancy claims that this reduction is substantial – indeed, Radiancy quantifies this

9  claim in large-type banners asserting that use of the no!no! Device results in "Up To 94% Reduction

10 In Hair Re-Growth," https://trynono.com/PS3/index.aspx?mid=807732, or "Up to 94% less hair

11 regrowth," http://www.my-no-no.com. In a frequently-broadcast television infomercial

12 ("Infomercial"), Radiancy makes the same that "with repeated use, hair density can be reduced by up

13 to 94%."

14      18.     Radiancy further claims throughout its Internet advertising, explicitly or implicitly,

15 that this near-100% reduction in hair re-growth is long-term or permanent. For example, on one of

16 Radiancy's web sites, Radiancy promises that the user of the no!no! Device will obtain "long-term,

17 professional quality hair removal results," https://trynono.com/PS3/advantage.aspx, and "guaranteed

18 long-term results, (https://trynono.com/PS3/index.aspx?mid=807732. On Radiancy's other website,

19 Radiancy promises that the user will "get rid of unwanted hair and keep it gone." http://www.my-no-

20 no.com. And "sponsored links" purchased by Radiancy from various popular Internet search

21 engines has featured the following "banner" advertising claiming "permanent" results from use of

22 the no!no! Device:

23

24 **Permanent** Hair Remover                                  Sponsored links
   trynono.com/No_No_Special_Offer      NO NO The Amazing Home Hair Remover TV Offer-

25 Only $270, 60 Days Trial!

26

27

28

4

COMPLAINT FOR INJUNCTIVE RELIEF

1    Likewise, in television commercials, infomercials, and sponsored segments on Home Shopping

2    Network and QVC, Radiancy spokespersons repeatedly and forcefully reinforce and elaborate these

3    claims of permanent hair removal with statements such as the following:

4        • "It's been almost two years that I have not had to think about hair

5          removal because of the no!no!"

6          http://www.youtube.com/watch?v=2IB789zasE0&feature=related.

7        • "We're talking about hair removal, this is no longer a short-term

8          solution. We're talking about a long-term benefit to having no hair

9          returning"

10         http://www.youtube.com/watch?v=3U0UYv8qwLc&feature=chan

11         nel.

12       • "After just a few months of using it, less hair was there, and then I

13         was done, for good – it was gone"

14         http://www.youtube.com/watch?v=3U0UYv8qwLc&feature=chan

15         nel.

16       • "You will have a life of freedom from hair" *Id.*

17       • "Certainly commit to it, because it's going after all those little

18         hairs. But I'll tell you, once you get them, and once they're gone,

19         and they don't come back, they're gone for good." *Id.*

20       19.    Radiancy's labeling and advertising purports to offer a scientific explanation for this

21   claimed near-100%, permanent reduction in hair re-growth. According to Radiancy's advertising,

22   the no!no! Device incorporates a "proprietary technology," which Radiancy has branded

23   "Thermicon," which Radiancy claims uses "thermolysis" or "the thermal principle of heat

24   transference" to alter the body's hair growing function. https://www.my-no-no.com/technology-

25   thermicon.asp. Specifically, Radiancy claims a "Thermicon effect" whereby the "no!no! conducts

26   heat down the hair shaft and into the follicle. Like laser and IPL [intense pulsed light] treatments,

27   the heat gradually disrupts the hair growth cycle." https://www.my-no-no.com/nono-about.asp.

28   Radiancy asserts that "the signal disrupts the cell communication between the bulge and root,"

                                              5

COMPLAINT FOR INJUNCTIVE RELIEF

1  which communication is "responsible for stimulating hair growth." https://www.my-no-

2  no.com/technology-thermicon.asp.

3      20.     Although the no!no! Device does not use or incorporate lasers, Radiancy falsely

4  advertises the no!no! Device as being "like laser" for hair removal and the "Thermicon" technology

5  as "laser-like." For example, in one television commercial, Radiancy's founder is shown stating that

6  "Radiancy is the world leader in professional systems used by physicians, in physicians' offices and

7  medical spas. After years of research and millions of dollars spent, we managed to miniaturize the

8  technology and come out with a solution that can be used at home," thus suggesting that the no!no!

9  Device is simply a "miniaturized" version of the laser-based hair removal systems used by

10 dermatological professionals.

11      21.     All of Radiancy's claims regarding the effectiveness of the no!no! Device in

12 achieving near-100%, permanent reduction of hair re-growth are reinforced by claims stating or

13 implying that the effectiveness of the Radiancy Device has been clinically tested and proven, such as

14 the following:

15          • "Clinical studies show it inhibits hair regrowth and can reduces

16            [sic] hair density by up to 94% with no pain, no mess and no

17            chemicals." https://www.my-no-no.com/nono-about.asp.

18          • "What impresses me about **no!no!** is all the research and clinical

19            studies that have been done to prove that it really does work. A

20            more recent study shows that **no!no! reduces hair up to 94%**

21            when used long term."

22            https://trynono.com/PS3/index.aspx?mid=807732.

23          • "Clinical data has shown that with repeated use, hair density can be

24            reduced by up to 94% and the hair that does grow back comes back

25            thinner and finer." Infomercial.

26          • "The great thing about the no!no! is that it has been shown

27            scientifically to actually have an effect similar to what lasers

28

6

COMPLAINT FOR INJUNCTIVE RELIEF

1    accomplish in the dermatologist office."

2         http://www.youtube.com/watch?v=BFZ8md9c2u8.

3         22.    Radiancy's website lists three papers under the heading "Clinical Studies." From a

4    review of these papers, it is apparent that none of these studies demonstrates (i) that use of the

5    Device results in a reduction of "hair re-growth"; (ii) that this reduction is substantial and can be as

6    much as 94%; (iii) that the reduction is "long-term" or "permanent"; (iv) that the reduction occurs as

7    a result of heat transference, or the "Thermicon effect," whereby "no!no! conducts heat down the

8    hair shaft and into the follicle" and "the heat gradually disrupts the hair growth cycle"; or (v) that the

9    no!no! Device has "an effect similar to what lasers accomplish in the dermatologist office." Nor

10   does Radiancy cite any other scientific basis for its claims. Tellingly, Radiancy, to TRIA's

11   knowledge, has not submitted any of these studies to FDA or otherwise attempted to obtain

12   clearance from FDA for the no!no! Device as device for reducing hair regrowth, let alone effecting a

13   permanent reduction, and on information and belief, there is no such FDA clearance for the no!no!

14   Device.

15        23.    Moreover, TRIA believes, based on scientific principles and the opinion of leading

16   independent experts, that Radiancy's unsupported effectiveness claims are false and misleading. In

17   particular, TRIA submits that (i) use of the no!no! Device does not result in any "long-term" or

18   "permanent" reduction of hair or a reduction in the rate of hair re-growth, let alone a reduction of as

19   much as 94%; and (ii) the "Thermicon effect," as depicted by Radiancy, does not occur and, in fact,

20   is a physical impossibility.

21        24.    In a solitary and relatively obscure portion of one of its websites, Radiancy itself

22   effectively contradicts its widely advertised claim that use of the no!no! Device produces a

23   substantial, permanent reduction in hair re-growth. On the website

24   https://trynono.com/PS3/faq.aspx, Radiancy includes a link to a lengthy list of 44 "Frequently Asked

25   Questions" or "FAQ." Buried in the middle of these is the question "How long do results last?" and

26   the following answer:  "After 3-5 months of no treatments, hair might *return to pretreatment values.*

27   You can easily maintain results with continued use of no!no!" (Emphasis added).

28

COMPLAINT FOR INJUNCTIVE RELIEF

25.     No such disclosure is included in any of the television commercials or, as noted above, on the other of Radiancy's two websites. *See* https://www.my-no-no.com. Indeed, this single, obscure disclosure does not begin to counteract the ubiquitous and directly contrary claims that the user of the no!no! Device will have "no hair in the future," https://trynono.com/PS3/advantage.aspx; that the user will be able to "get rid of unwanted hair and keep it gone," http://www.my-no-no.com; that the user will be "guaranteed long-term results," https://trynono.com/PS3/index.aspx?mid=807732; that "It's been almost two years that I have not had to think about hair removal because of the no!no!," http://www.youtube.com/watch?v=2IB789zasE0&feature=related; that "After just a few months of using it, less hair was there, and then I was done, for good – it was gone" http://www.youtube.com/watch?v=3U0UYv8qwLc&feature=channel, that "it's going after all those little hairs. But I'll tell you, once you get them, and once they're gone, and they don't come back, they're gone for good," http://www.youtube.com/watch?v=3U0UYv8qwLc&feature=channel; and that "you will have a life of freedom from hair," http://www.youtube.com/watch?v=3U0UYv8qwLc&feature=channel.

26.     Radiancy's labeling and advertising also incorporate a number of claims stating or implying that the no!no! Device is categorically equivalent or superior to laser-based hair removal systems in effectiveness, including the following:

- "The great thing about the No!no! is that it has been shown scientifically to actually have an effect similar to what lasers accomplish in the dermatologist office." http://www.youtube.com/watch?v=BFZ8md9c2u8.

- "THE no!no! ADVANTAGE
  Now you finally have a solution that lets you achieve long-term, professional quality hair removal results – in the comfort of your own home! You no longer need to hassle with the inconvenience and high cost of expensive, time consuming, and often painful professional treatments.

8

You can use the no!no! whenever and wherever you want – and

see better results than you would get with professional solutions.

We guarantee it!"

https://trynono.com/PS3/index.aspx?mid=807732; *accord*

https://trynono.com/PS3/advantage.aspx.

- "no!no! uses science, not magic, to get these great results. Based
  on ThermiconTM technology, no!no! conducts heat down the hair
  shaft and into the follicle. Like laser and IPL treatments, the heat
  gradually disrupts the hair growth cycle. But unlike lasers and
  IPLs, no!no! does not use light at all. This makes it universally
  safe and effective for EVERYONE - no matter the skin type or hair
  color, including blonde and grey hair!" https://www.my-no-
  no.com/nono-about.asp.

27.     Radiancy's advertising also features a chart that explicitly compare the benefits from

using the no!no! Device with those of, among other things, "laser treatment" without specifying any

particular laser-based hair removal system. https://trynono.com/PS3/advantage.aspx.

28.     In an attempt to reinforce its claims of equivalence and superiority to laser-based

systems, and the TRIA systems in particular, and in a deliberate attempt to maximize the unlawful

diversion of customers from TRIA, Radiancy has purchased, and uses, the terms "TRIA," "TRIA

Beauty," "TRIA laser" and other phrases incorporating the TRIA name as "keywords" on leading

Internet search engines, including Google, Yahoo!, and Bing, to generate sponsored links to

Radiancy's websites when Internet users conduct a search using one of these terms. In some of these

sponsored links, Radiancy explicitly refers to TRIA in a manner that states or implies the

equivalence or superiority of the no!no! Device to TRIA laser hair-removal products.

29.     In addition, Radiancy has purchased sponsored links on Internet search engines that

contain banner ads promoting the no!no! Device as providing "Laser Like Results." *See, e.g.,*

http://www.google.com/#hl=en&expIds=17259,26637,27087,27113,27218,27357,27360,27404&sug

9

COMPLAINT FOR INJUNCTIVE RELIEF

1  exp=ldymls&xhr=t&q=tria+laser&cp=7&pf=p&sclient=psy&aq=f&aqi=g-l4g-

2  o1&aql=&oq=tria+l%3B&gs_rfai=&pbx=1&fp=b2da8a77dcd93603.

3      30.     Where no specific laser-based hair removal systems are referenced in Radiancy's

4  comparative advertisements, Radiancy's claims of equivalence and superiority to such products are

5  true and not misleading only if the no!no! Device is, in fact, superior or equivalent to all such

6  products, including not only TRIA's OTC laser-based hair removal systems, but also third-party

7  prescription devices used by medical professionals such as the Candela GentleLASE® and

8  Lumenis® LightSheer laser systems.

9      31.     The no!no! Device is not superior or equivalent to TRIA's laser-based hair removal

10  systems, nor is it superior or equivalent to third-party prescription devices used by medical

11  professionals such as the Candela GentleLASE® and Lumenis® LightSheer laser systems.

12      32.     Radiancy's advertising includes other bogus claims.

13      33.     For example, Radiancy claims repeatedly that the no!no! Device is a "professional

14  treatment," http://www.youtube.com/watch?v=BFZ8md9c2u8; that it is the "only at-home

15  professional system for long-term hair removal," Infomercial; and that "no!no! is a breakthrough in

16  hair removal because it delivers the same professional results using professional technology right in

17  the privacy of your home." Infomercial.  On information and belief, the no!no! Device is not used

18  by dermatologic professionals, with the possible exception of professionals paid by Radiancy to act

19  as endorsers, nor does the no!no! Device deliver the same results as any professional systems for the

20  reduction of hair regrowth.

21      34.     Radiancy also markets the no!no! Device with a cream product called "no!no!

22  Smooth," which it labels and advertises as a "hair growth inhibitor cream" (the "no!no! Cream").

23  Radiancy claims on the product label that the no!no! Cream contains an ingredient called

24  "Capislow," which "helps reduce hair regrowth and density."  In its  advertising, Radiancy goes

25  further, claiming, for example, that Capislow is "clinically proven to further reduce hair re-growth"

26  (Infomercial) and can "reduce hair by 35%," "reduce hair density by 26%," and "reduce hair

27  regrowth by 11%."  http://www.my-no-no.com/nono-smooth-about.asp.  On information and belief,

28  these claims are false and misleading:  Capislow is not clinically proven to reduce hair re-growth or

COMPLAINT FOR INJUNCTIVE RELIEF

1     hair density, much less to the specific degrees claimed by Radiancy. Radiancy also describes

2     Capislow as "patented," although a search of the United States Patent and Trademark Office

3     ("USPTO") patent database reveals no patent for this product. Likewise, Radiancy affixes the

4     statutory trademark registration symbol "®" to the name Capislow, although the USPTO trademark

5     database reveals no trademark registration for this name.

6          35.     In addition to its many false and misleading claims of effectiveness, both absolute and

7     comparative, Radiancy also repeatedly claims throughout its Internet and television advertising that

8     the no!no! Device is "universally safe and effective for everyone" https://www.my-no-no.com/nono-

9     about.asp; *accord, e.g.*, https://www.my-no-no.com/products.asp; and will entail "no pain"

10    https://www.my-no-no.com/nono-about.asp; *accord, e.g.*, https://www.my-no-no.com/products.asp

11    (devices are "pain-free"); https://trynono.com/PS3/index.aspx?mid=807732 (video segment)

12    ("totally pain-free"); and that "no matter where you no!no!, you can no!no! in comfort."

13    https://www.my-no-no.com/nono8800_about.asp; *accord, e..g.,*

14    https://trynono.com/PS3/advantage.aspx ("You can use the no!no! whenever and wherever you

15    want.").

16         36.     An appreciable percentage of consumers would assume from these claims that the

17    no!no! Device has been determined by FDA to be safe for use anywhere on the body. On

18    information and belief, FDA has made no such determination; thus, Radiancy's advertising is

19    misleading in this regard.

20         37.     Moreover, on information and belief, Radiancy's claims that the no!no! Device is safe

21    and pain-free and may be used anywhere on the body are false and misleading without regard to the

22    issue of FDA clearance. In a single location on one of its websites, Radiancy provides the following

23    warning concerning one of the models of the no!no! Device, namely, the so-called "Classic":

24    "WARNING! Never use no!no! on the face, breasts or genitals." https://www.my-no-no.com/nono-

25    how-to-use.asp. And the user's manual admits that "Those with sensitive skin may experience a

26    burning sensation or find that their skin becomes uncomfortably hot during treatment." no!no!

27    User's Manual at p. 6. With regard to another model, the "8800," Radiancy similarly cautions, "Do

28    not use no!no! on the breasts or genitals." https://www.my-no-no.com/nono8800_about.asp. These

COMPLAINT FOR INJUNCTIVE RELIEF

1    statements evidence the falsity of Radiancy's claims that the no!no! devices are "universally safe,"

2    "totally pain-free," and may be used "whenever and wherever you want."

### FIRST CLAIM FOR RELIEF

### FEDERAL UNFAIR COMPETITION

[Lanham Act § 43(a), 15 U.S.C. § 1125(a)]

6    38.    Plaintiff incorporates and realleges each of the averments of the previous paragraphs.

7    39.    The above-described advertising claims made by Defendant either deceived or had

8    the capacity to deceive a substantial segment of potential consumers for aesthetic hair removal

9    products.

10    40.    Defendant's deception was and is material, in that it was and is likely to influence a

11    consumer's purchasing decisions.

12    41.    Defendant has caused their false statements to enter interstate commerce.

13    42.    Defendant's advertising claims, as alleged above, violate 15 U.S.C. Section 1125(a)

14    and have caused and/or are likely to cause damage to TRIA and the public in an amount to be

15    determined at trial, and, unless restrained, will further damage TRIA and the public.

16    43.    In making and disseminating the above-described materially false and misleading

17    advertising claims, Defendant knew, or by exercise of reasonable care should have known, that the

18    claims were untrue and/or misleading and likely to deceive the public.  Accordingly, the actions of

19    Defendant were willful, and this is an exceptional case justifying an award of reasonable attorneys'

20    fees.

### SECOND CLAIM FOR RELIEF

### CALIFORNIA FALSE ADVERTISING

[Cal. Bus. & Prof. Code § 17500]

24    44.    Plaintiff incorporates and realleges each of the averments of the previous paragraphs.

25    45.    Defendant's advertising, as alleged above, contains statements that are untrue or

26    misleading.  Defendant knows or should have known by exercise of reasonable care that the

27    statements were untrue or misleading.

28

12

COMPLAINT FOR INJUNCTIVE RELIEF

46.     Defendant's advertising violates Section 17500 of the California Business and Professions Code. Plaintiff TRIA has suffered injury in fact and has lost money or property as a result of such unfair competition, causing damage to TRIA in an amount to be determined at trial, and, unless restrained, will further damage TRIA.

## THIRD CLAIM FOR RELIEF

## CALIFORNIA UNFAIR COMPETITION

[Cal. Bus. & Prof. Code § 17200 *et seq.*]

47.     Plaintiff incorporates and realleges each of the averments of the previous paragraphs.

48.     Defendant's advertising, as alleged above, constitutes unlawful, unfair and/or fraudulent conduct in violation of Section 17200 of the California Business and Professions Code. TRIA has suffered injury in fact and has lost money or property as a result of such unfair competition, causing damage to TRIA in an amount to be determined at trial, and, unless restrained, will further damage TRIA.

## FOURTH CLAIM FOR RELIEF

## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS

[Lanham Act § 32, 15 U.S.C. § 1114]

49.     Plaintiff incorporates and realleges each of the averments of the previous paragraphs.

50.     The terms TRIA and TRIA BEAUTY are valuable trademarks of Tria in active use in commerce and registered in the United States, among other jurisdictions, in connection with, among other things, electrical devices for personal use for removing hair, eliminating acne, facial rejuvenation and toning, and skin care; and acne treatment and skin care preparations (United States Trademark Registration Nos. 3360633, 3756135, 3807647, 3822558, and 3828866).

51.     Radiancy has used these registered TRIA trademarks in commerce in connection with the sale, offering for sale, distribution, or advertising of goods in connection with which such use is likely to cause confusion, to cause mistake, or to deceive and thereby constitute infringement of these registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Radiancy's infringement of TRIA's registered trademarks has caused and/or is likely to cause

13

COMPLAINT FOR INJUNCTIVE RELIEF

1  damage to TRIA and the public in an amount to be determined at trial, and, unless restrained, will

2  further damage TRIA and the public.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, the Plaintiff seeks judgment as follows:

5  On the First Claim for Relief

6  1.    For preliminary and permanent injunctions:

7  a.    Enjoining and restraining Defendant and its agents, servants and employees

8  from publishing or publicly disseminating any statement, either directly or indirectly, concerning the

9  nature, characteristics and qualities of the no!no! Device and/or the no!no! Cream in any way so as

10 to constitute unfair competition or deceptive, untrue, or misleading advertising;

11 b.    Ordering Defendant to issue statements retracting its false and/or misleading

12 and deceptive statements concerning the no!no! Device and the no!no! Cream by distributing such

13 retractions, in a form approved by TRIA, to all recipients of Defendant's advertising containing said

14 false and/or misleading and deceptive statements and by posting such retractions on its websites at

15 https://www.my-no-no.com and https://www.trynono.com for at least six (6) months;

16 c.    Ordering that all of Defendant's physical brochures, advertisements, press

17 releases and promotional materials that contain unlawful statements concerning the no!no! Device

18 and/or the no!no! Cream be recalled and destroyed;

19 2.    That Defendant file with this Court and serve upon TRIA within fifteen (15) days

20 after issuance of any injunction, a report in writing, under oath, setting forth in detail the manner and

21 form in which Defendant has complied with the injunction.

22 3.    That the Court award TRIA:

23 a.    All damages sustained by reason of the wrongful acts complained of herein in

24 an amount to be proven at trial;

25 b.    Treble the amount of the actual damages suffered by TRIA pursuant to 15

26 U.S.C. § 1117;

27 c.    Costs of this action;

28

14

COMPLAINT FOR INJUNCTIVE RELIEF

1          d.      Reasonable attorneys' fees, in that this is an exceptional case, within the

2 meaning of 15 U.S.C. § 1117(a); and

3          e.      Such other and further relief as the Court shall deem just.

4     On the Second and Third Claims for Relief

5      4.      For preliminary and permanent injunctions:

6          a.      Enjoining and restraining Defendant and its agents, servants and employees

7 from publishing or publicly disseminating any statement, either directly or indirectly, concerning the

8 nature, characteristics and qualities of the no!no! Device and/or the no!no! Cream in any way so as

9 to constitute unfair competition or deceptive, untrue, or misleading advertising;

10          b.      Ordering Defendant to issue statements retracting its false and/or misleading

11 and deceptive statements concerning the no!no! Device and/or the no!no! Cream by distributing such

12 retractions, in a form approved by TRIA, to all recipients of Defendant's advertising containing said

13 false and/or misleading and deceptive statements and by posting such retractions on its websites at

14 https://www.my-no-no.com and https://www.trynono.com for at least six (6) months;

15          c.      Pursuant to California Business and Professions Code § 17203, ordering that

16 Defendant immediately cease and desist from making reference, either directly or indirectly, to the

17 no!no! Device and/or the no!no! Cream in any way so as to constitute unfair competition or

18 deceptive, untrue, or misleading advertising;

19      5.      That Defendant file with this Court and serve upon TRIA within fifteen (15) days

20 after issuance of any injunction, a report in writing, under oath, setting forth in detail the manner and

21 form in which Defendant has complied with the injunction.

22      6.      That the Court award TRIA:

23          a.      Costs of this action;

24          b.      Such other and further relief as the Court shall deem just.

25     On the Fourth Claim for Relief

26      7.      Preliminarily and permanently enjoining and restraining Defendant and its agents,

27 servants and employees from using any registered or unregistered TRIA trademark in commerce in

28 connection with the sale, offering for sale, distribution, or advertising of goods in connection with

15

COMPLAINT FOR INJUNCTIVE RELIEF

which such use is likely to cause confusion, to cause mistake, or to deceive, including without limitation use as an Internet search keyword, metatag, or domain name;

8. That Defendant file with this Court and serve upon TRIA within fifteen (15) days after issuance of any injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

9. That the Court award TRIA:

a. All damages sustained by reason of the wrongful acts complained of herein in an amount to be proven at trial;

b. Treble the amount of the actual damages suffered by TRIA pursuant to 15 U.S.C. § 1117;

c. Costs of this action;

d. Reasonable attorneys' fees, in that this is an exceptional case, within the meaning of 15 U.S.C. § 1117(a); and

e. Such other and further relief as the Court shall deem just.

## JURY DEMAND

Plaintiff TRIA demands a jury trial for all claims as provided for in Federal Rule of Civil Procedure 38.

DATED: November 5, 2010

Respectfully submitted,

By: _____
Thad A. Davis
Joshua V. Van Hoven
ROPES & GRAY LLP

Attorneys for Plaintiff
TRIA BEAUTY, INC.

16

COMPLAINT FOR INJUNCTIVE RELIEF