THAD A. DAVIS (CSB # 220503)
  thad.davis@ropesgray.com
JOSHUA VAN HOVEN (CSB # 262815)
  joshua.vanhoven@ropesgray.com
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone:  (650) 617-4000
Facsimile: (650) 617-4090

PETER M. BRODY (*pro hac vice*)
  peter.brody@ropesgray.com
ROPES & GRAY LLP
700 12th Street, NW, Suite 900
Washington, DC  20005-3948
Telephone:  (202) 508-4612
Facsimile:  (202) 383-7777

Attorneys for Plaintiff and Counter-defendant
TRIA BEAUTY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TRIA BEAUTY, INC.<br><br>     Plaintiff and Counter-defendant,<br><br>vs.<br><br>RADIANCY INC.,<br><br>     Defendant and Counter-claimant. | Case No. 10-cv-05030-RS<br><br>**PLAINTIFF/COUNTER-DEFENDANT TRIA BEAUTY, INC.'S OPPOSITION TO RADIANCY'S MOTION TO DISMISS PLAINTIFF TRIA BEAUTY, INC.'S STATE LAW CLAIMS**<br><br>**Date:  March 10, 2011**<br>**Time:  1:30 p.m.**<br>**Courtroom:  3**<br>**Honorable Richard Seeborg** |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In this action, plaintiff TRIA Beauty, Inc. ("TRIA") seeks injunctive relief and damages caused by false and misleading advertising and other acts of unfair competition by a direct competitor, Radiancy, Inc. ("Radiancy"). TRIA's complaint (the "Complaint") asserts federal claims under Sections 43(a) and 32 of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and claims under California's false-advertising law ("FAL") and unfair-competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17500, 17200 *et seq*. Radiancy's motion (the "Motion") asks the Court to dismiss the FAL and UCL claims on the ground that TRIA lacks legal standing to assert them.

It is well settled that a business has standing to sue a direct competitor for false advertising under the FAL and UCL – indeed, Radiancy itself has asserted mirror-image counterclaims against TRIA under these same laws. *See* Dkt. 10, ¶¶ 107-119; *Kwikset Corp. v. Superior Court*, Case S171845, 2011 Cal. LEXIS 532 (Cal. Jan. 27, 2011). Radiancy, however, contends that TRIA's complaint fails to allege competitive injury with sufficient particularity to meet the requirements of Federal Rules of Civil Procedure 8(a) and 12(b)(6).

Radiancy's contention, and its Motion, are frivolous. Radiancy simply ignores the factual allegations set forth in the Complaint and focuses solely on the paragraphs of the claims for relief set forth at the end of the Complaint. When the Complaint is read in its entirely, as it certainly must be, it plainly meets the notice-pleading standard of the Federal Rules and equally plainly meets the pleading requirements for standing under the FAL and UCL, as is crystal clear from the California Supreme Court's recent decision in *Kwikset Corp*.

## II. STATEMENT OF FACTS

For purposes of Radiancy's motion, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

As stated in the Complaint, TRIA "designs, manufactures, markets, and sells the TRIA Laser Hair Removal System ("TRIA System")." Dkt. 1, ¶ 7. As the Complaint explains, "[t]he TRIA System uses a method known as selective photothermolysis, whereby the TRIA

System's laser energy is selectively targeted at the dark pigment in hair in order to disable the hair follicle permanently and thereby prevent re-growth of the hair." Dkt. 1, ¶ 8. The Complaint alleges that Radiancy, for its part, markets and sells a competing OTC hair-removal device, in several models, under the brand or product name "no!no!" (the "no!no! Device"). Dkt. 1, ¶ 11.[1] The Complaint describes the function of the no!no! Device as follows:

> The no!no! Device consists of a small wire mounted toward the open end of a rectangular metal casing. When the user turns on the device, the wire heats up. The user is supposed to hold the open end of the device against the skin and move the device across the skin surface. As the user does this, the heated wire melts or chars the surface hairs with which it comes into contact. The user is then supposed to rub the treated area with an abrasive buffing pad included in the package with the device, in order to remove the crystallized pieces of charred hair.

Dkt. 1, ¶ 12.

The gravamen of the Complaint, stated in Paragraph 1, is that Radiancy has engaged in "a massive campaign of false and misleading advertising and other unfair competitive practices by Radiancy that is enticing large numbers of customers to purchase Radiancy's hair-removal products and is thereby causing TRIA substantial injury in the considerable market for such products." Dkt. 1, ¶ 1. The Complaint goes on to identify, with particularity, specific false and misleading advertisements and other unfair competitive practices by Radiancy. These include specific advertisements that "incorporate a number of claims stating or implying that the no!no! Device is categorically equivalent or superior to laser-based hair removal systems in effectiveness . . . ." Dkt. 1, ¶ 26; *see also* Dkt. 1, ¶ 27 ("Radiancy's advertising also features a chart that explicitly compare the benefits from using the no!no! Device with those of, among other things, 'laser treatment' without specifying any particular laser-based hair removal system."). Other claims include: (1) claims that the no!no! Device results in a reduction of hair growth and density (*See* Dkt. 1, ¶¶ 16-18, 25); (2) claims regarding a "Thermicon effect" or "thermolysis," and claims comparing this technology or effect to the

---

[1] In its motion, Radiancy does not dispute that the parties are direct competitors or that, in particular, that the TRIA System and the no!no! Device are competing hair-removal products. Nor could Radiancy dispute those facts, given that it alleges the same things in its Counterclaims. *See* Dkt. 10, ¶¶ 8, 104, 110, 118.

laser hair removal technology or effects (*See* Dkt. 1, ¶¶ 19-20, 26-29, 33-34); (3) claims stating or implying that the no!no! Device has been clinically tested or proven to be safe or effective (*See* Dkt. 1, ¶¶ 21-22); and (4) claims regarding the safety of the no!no! Device and pain levels from use of the no!no! Device (*See* Dkt. 1, ¶¶ 35-37).

The Complaint alleges that all of "[t]he above-described advertising claims made by Defendant either deceived or had the capacity to deceive a substantial segment of potential consumers for aesthetic hair removal products." Dkt. 1, ¶ 39. The Complaint further avers that "Defendant's deception was and is material, in that it was and is likely to influence a consumer's purchasing decisions." Dkt. 1, ¶ 39.

The Complaint asserts four claims for relief, including claims under the FAL and UCL. Each of these Claims incorporates all of the preceding allegations of the Complaint. Dkt. 1, ¶¶ 44, 47. With respect to the FAL Claim, the Complaint further alleges that "Plaintiff TRIA has suffered injury in fact and has lost money or property as a result of such unfair competition, causing damage to TRIA in an amount to be determined at trial, and, unless restrained, will further damage TRIA." Dkt. 1, ¶ 46. With respect to the UCL Claim, the Complaint further alleges that "TRIA has suffered injury in fact and has lost money or property as a result of such unfair competition, causing damage to TRIA in an amount to be determined at trial, and, unless restrained, will further damage TRIA." Dkt. 1, ¶ 48.

### III. ARGUMENT

Although Radiancy's motion to dismiss begins with the by-now obligatory citation of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the relevance of those cases here is nil, given that TRIA has made detailed allegations about a concrete dispute between direct competitors over specific, identified advertisements. Nor does Radiancy dispute that such disputes are cognizable under the UCL and FAL. To the contrary, as noted above, Radiancy has pleaded mirror-image counterclaims under the UCL and FAL regarding TRIA's advertisements. *See* Dkt. 10, ¶¶ 107-119.

That TRIA has standing to sue Radiancy for false advertising under the UCL and FAL was amply confirmed by the California Supreme Court, in a decision issued after

| | |
|---|---|
| 1 | Radiancy's motion was filed. *Kwikset Corp. v. Superior Court*, Case S171845, 2011 Cal. |
| 2 | LEXIS 532, *12 (Cal. Jan. 27, 2011).  As the court explained, the UCL's "purpose 'is to protect |
| 3 | both consumers *and competitors* by promoting fair competition in commercial markets for |
| 4 | goods and services.'"  *Kwikset*, 2011 Cal. LEXIS 532, *12 (quoting *Kasky v. Nike, Inc.*, 27 |
| 5 | Cal.4th 939, 949 [119 Cal. Rptr. 2d 296, 45 P.3d 243] (2002) (emphasis added)).  "The state's |
| 6 | false advertising law (§ 17500 *et seq.*) is equally comprehensive within the narrower field of |
| 7 | *false and misleading advertising*."  *Id*. at *12-*13 (emphasis added). |
| 8 | Relying on pre-*Kwikset* decision, Radiancy argues that TRIA's Complaint does |
| 9 | not adequately allege facts establishing standing under the UCL and FAL.  Radiancy points to |
| 10 | paragraphs 46 and 48 – the claims for relief under the UCL and FAL – and argues that "TRIA |
| 11 | merely parrots the language of the statute, alleging that 'TRIA has suffered injury in fact and |
| 12 | lost money or property.'"  Dkt. 9, at p. 4.  Radiancy contends that "[n]owhere does TRIA allege |
| 13 | that Radiancy caused it to lose profits, or to expend money, or to suffer any other economic loss |
| 14 | as a result of Radiancy's allegedly wrongful actions."  *Id.* |
| 15 | As a factual matter, Radiancy is flatly incorrect, ignoring, as it does, the |
| 16 | remainder of the Complaint.  Both TRIA's FAL and UCL claims expressly incorporate all of the |
| 17 | preceding paragraphs by reference. Dkt. 1, ¶¶ 44, 47.  The very first paragraph of the Complaint |
| 18 | expressly alleges how TRIA has suffered injury in fact and has lost money or property: |
| 19 | Radiancy "is enticing large numbers of customers to purchase Radiancy's hair-removal products |
| 20 | and is thereby causing TRIA substantial injury in the considerable market for such products." |
| 21 | Dkt. 1, ¶ 1.  Paragraph 1 also alleges that this is the result of a "massive campaign of false and |
| 22 | misleading advertising and other unfair competitive practices . . . ."  Dkt. 1, ¶ 1.  Other |
| 23 | paragraphs of the Complaint describe Radiancy's false advertisements with specificity, |
| 24 | including advertisements comparing the no!no! Device to laser hair removal products.  *See* |
| 25 | *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. Cal. 1997) (explaining, |
| 26 | in the context of Federal false advertising claims, that "publication of deliberately false |
| 27 | comparative claims gives rise to a presumption of actual deception and reliance") (quoting *U-* |
| 28 | *Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986)).  TRIA further alleges |

that the "advertising claims made by Defendant either deceived or had the capacity to deceive a substantial segment of potential consumers for aesthetic hair removal products" and "[were] and [are] likely to influence a consumer's purchasing decisions." Dkt. 1, ¶¶ 39-40.

As a legal matter, Radiancy's suggestion that such allegations are insufficient to confer standing is equally incorrect, particularly in light of *Kwikset*. In that case, the California Supreme Court construed California Proposition 64's limitation of rights under the UCL and FAL "to any person who has suffered injury in fact and has lost money or property as a result of" unfair competition or false advertising. In interpreting this limitation, the court emphatically rejected a restrictive pleading standard.[2] As the court made clear, standing under the FAL and UCL requires only the allegation of two elements: (1) that the plaintiff have suffered "injury in fact" in the form of "lost money or property," i.e., an *economic* injury; and (2) that the injury have been "as a result of" the defendant's conduct, i.e., *causation*. *Id.* at *16, *18, *25. As the *Kwikset* court further clarified, injury in fact in this context is similar to the requirements for federal standing under Article III, section 2 of the United States Constitution. *Id.* at *16. "Under federal law, injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized . . . ; and (b) "actual" or "imminent," not "conjectural" or "hypothetical" . . . .'" *Id.* at *18 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As the court explained, "[b]ecause . . . economic injury is itself a form of injury in fact, proof of lost money or property will largely overlap with proof of injury in fact." *Id.* at *24.

---

[2] As the *Kwikset* court noted with disapproval, in the wake of California's Proposition 64, some courts had interpreted the standing requirement in a restrictive manner, such as "a line of cases that have read the 'lost money or property' requirement as confining standing under section 17204 'to individuals who suffer losses ... that are eligible for restitution.'" *Kwikset*, 2011 Cal. LEXIS 532, *12 (quoting the Court of Appeals decision under review). Nevertheless, even under the more restrictive test employed by some California courts prior to *Kwikset*, including the cases cited by Radiancy, the allegations of TRIA's Complaint clearly establish standing under the FAL and UCL. Indeed, two of Radiancy's cases did not involve a direct competitor using false advertising and unfair competition to entice the parties' potential customers. *See Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1122 (N.D. Cal. 2009) (failure to allege loss of money in conjunction with claim relating to deficiency lawsuit); *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 U.S. Dist. LEXIS 2176, at *28 (N.D. Cal. Jan. 3, 2006) (discussing allegations that a competitor delayed in filing a lawsuit). And in a third case cited by Radiancy, the Court found in *favor* of standing based in part on diverted sales, commenting that "Plaintiff is not a consumer initiating action on behalf of the public, but rather claims injury for its own harm incurred as a competitor of Defendant." *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 2:09-cv-02067, 2010 WL 1611398, *3 (E.D. Cal. Apr. 20, 2010).

The *Kwikset* court further clarified that, while "lost money or property" limits standing to economic harms, it does not limit the types of economic harms that confer standing. *Id.* at *19-*20. "There are innumerable ways in which economic injury from unfair competition may be shown" such that the Court cannot "supply an exhaustive list of the ways in which unfair competition may cause economic harm." *Id.* at *20. All that is necessary to prove "lost money or property," and by extension, injury in fact, is a "personal, individualized loss of money or property in any nontrivial amount . . . ." *Id.* at *24. The plaintiff in *Kwikset* satisfied this test by alleging that he would not have bought the defendant's locksets if he knew that "Made in the U.S.A." designations were false. *Id*. at *30. According to the *Kwikset* Court, "the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id.* at *35-*36. In this case, Radiancy's false advertising and unfair tactics are enticing the parties' potential customers to purchase Radiancy's products, and thus, reducing TRIA's sales in the market for hair-removal products.

As for the causation element of the standing test, the plaintiff need not allege that the accused conduct or misrepresentations are the sole or even decisive cause of the plaintiff's injuries. *Id.* at *27. Here, TRIA has alleged that Radiancy caused TRIA's injuries by enticing customers in the considerable market for hair-removal products, and has in fact gone into great detail as to how Radiancy has done so, e.g., by making false claims comparing the no!no! device to laser hair removal devices that deceive consumers and influence their purchasing decisions.

By contrast, the sole allegation of injury and causation that appears in Radiancy's own counterclaims against TRIA under the UCL and FAL (Paragraphs 110 and 118) is, in its entirety, as follows: "As a result of TRIA's wrongful actions, and consumers' reliance thereon, Radiancy has suffered an injury in fact and lost money or property, including but not limited to injury to Radiancy's goodwill and reputation, increased marketing expenses, money spent on investigating TRIA's allegedly false advertising, lost sales, and lost profits from sales wrongfully diverted to TRIA." Radiancy's motion thus appears to boil down to the contention

that, regardless of the specific factual pleadings elsewhere in the Complaint, TRIA lacks standing because it failed to include a comparable "including but not limited to" catch-all in the portion of the Complaint setting forth its claims for relief phrase. That, however, is not the law, and clearly would be at odds with the California Supreme Court's view in *Kwikset*.[3]

## IV. CONCLUSION

For the foregoing reasons, TRIA respectfully requests the Court deny Radiancy's Motion to Dismiss TRIA's state law claims under Cal. Bus. & Prof. Code §§ 17500 and 17200.

Respectfully submitted,

February 17, 2011                    By */s/ Joshua V. Van Hoven*
                                         Joshua V. Van Hoven

                                         ROPES & GRAY LLP

                                         Attorneys for Plaintiff/Counter-defendant
                                         TRIA BEAUTY, INC.

---

[3] In the unlikely event this Court agrees that, in order to have standing to sue Radiancy under the UCL and FAL, TRIA must include, after the phrase "injury in fact and lost money or property," the magic words "including but not limited to injury to TRIA's goodwill and reputation, increased marketing expenses, money spent on investigating Radiancy's allegedly false advertising, lost sales, and lost profits from sales wrongfully diverted to Radiancy," TRIA would ask leave to amend the Complaint to insert those words, thereby mooting Radiancy's motion. *See Swain,* 699 F. Supp. 2d at 1122 (granting leave to amend complaint where it appeared that plaintiff could "allege that she expended money defending against Defendants' purportedly unlawful lawsuit). Radiancy could not plausibly argue that any prejudice would result from such an amendment.