**Not For Publication**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIA BEAUTY, INC. | No. C-10-05030 |
| Plaintiff(s), | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL** |
| RADIANCY, INC | **(Doc. No. 55)** |
| Defendant(s). | |

The district court has referred the parties' discovery motions and all future discovery matters to this Court for determination. Doc. No. 58.

Plaintiff and counter-defendant TRIA Beauty, Inc. ("TRIA") moves to compel production of documents by defendant and counter-claimant Radiancy, Inc. ("Radiancy"). Doc. No. 55. The Court ordered the parties to engage in further meet and confer efforts (Doc. No. 75), and took the matter under submission without oral argument (Doc. No. 77). Having carefully considered the papers submitted and the arguments of the parties, the Court **overrules** Radiancy's objections and **grants** TRIA's motion to compel.

## BACKGROUND

TRIA and Radiancy are direct competitors in the hair-removal market. TRIA markets the "Laser Hair Removal System" ("LHRS") (Doc. No. 55 at 1), and Radiancy's product is called the "no! no! hair removal product" ("no! no! Hair") (Doc. No. 66 at 3). TRIA seeks "relief from a massive campaign of false advertising and other unfair competitive practices by Radiancy that are enticing large numbers of customers to purchase Radiancy's hair-removal [] product[] and are thereby causing TRIA substantial injury." Doc. No. 54 (Amended Complaint). TRIA challenges

Radiancy's claims regarding the effectiveness of no! no! Hair, especially when compared to laser and intense pulse light therapy; the science behind no! no! Hair and Radiancy's clinical studies; and the safety and pain-free nature of no! no! Hair. Doc. No. 55 at 2-3. Radiancy has filed a counter-claim, asserting claims for false advertising and trademark infringement. Doc. No. 53.

TRIA served its first set of document requests on Radiancy on January 13, 2011. Radiancy asserted a number of objections, two of which are at issue here. The first is based on TRIA's failure to limit the requests as to time and Radiancy's objection to producing at least some documents that predate TRIA's April 2008 entry into the market. The second objects to producing documents relating to Radiancy's communications with the FDA. Radiancy interposed each objection to a number of TRIA's document requests. The parties engaged in sporadic email discussions regarding the discovery requests, and when it appeared to TRIA that further discussion would be futile, TRIA filed the instant motion to compel. Prior to the filing of TRIA's motion, the parties did not engage in the in person meet and confer session required by this Court's Standing Order. The parties subsequently met and conferred in person but were unable to resolve or narrow the dispute. Doc. No. 68 at 1 n.2. The Court ordered the parties to confer in person once more prior to the hearing to attempt to narrow the issues. Doc. No. 75. The Court took the matter under submission (Doc. No. 77), and as of the date of this Order, the parties have not informed the Court that they had succeeded in narrowing or resolving their dispute.

**DISCUSSION**

**A. Legal Standard**

The purpose of discovery is to make litigation "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of

2

persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992)). "The scope of discovery permissible under Rule 26 should be liberally construed." *Board of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 621 (N.D. Cal. 2006). The standard of "relevant to the claim or defense of any party" is very broad. 8 Charles Alan Wright et al., Federal Practice and Procedure § 2008 (3 ed. 2011).

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, "[a] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The moving party bears the burden of demonstrating "actual and substantial prejudice" from the denial of discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citations omitted.). The party resisting discovery has a heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Cable and Computer Tech. Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D.Cal. 1997) (the party resisting discovery must clarify, explain, and support its objections).

**B. Analysis**

TRIA seeks to overcome two objections asserted by Radiancy. First, Radiancy specifically objects to producing documents predating TRIA's April 2008 entry into the market on the ground that requests seeking such documents are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. *See* Doc. No. 55-1, Ex. C (Radiancy's Responses) at Nos. 26, 28, 32-37, 42. Radiancy asserts a general objection on the same ground (*id*. at p. 4, Nos. 5, 7), and incorporates its general objections in each of its responses. Second, Radiancy objects to producing documents relating to its communications with the FDA. *Id*., Ex. C at Nos. 57-61. The Court addresses each in turn.

1. Pre-lauch documents

The Court cannot determine from Radiancy's responses to the document requests whether it is withholding documents that predate TRIA's April 2008 launch. Although Radiancy only asserts this as a specific objection to Document Request Nos. 26, 28, 32-37 and 42[1], Radiancy incorporates its general objections into each of its responses. Radiancy's Opposition to the Motion to Compel does not clarify whether Radiancy is withholding any pre-launch documents based on its general objection. *See* Doc. No. 66 at 9 (arguing Radiancy has "specifically agreed to produce responsive, non-privileged documents" in response to Request Nos. 1, 3, and 9, where Radiancy did not assert a specific objection regarding pre-launch documents) and 10 (it is "possible that Radiancy may have already agreed to produce documents" in response to some of TRIA's other requests). Radiancy's responses are inadequate. Neither TRIA nor the Court can determine what Radiancy actually has agreed to produce, and to what extent (if any) it plans to withhold documents based on its general objections. Will Radiancy produce non-privileged pre-launch documents *unless* it has asserted a specific objection to producing them? If so, Radiancy should so state. This is precisely the sort of ambiguity the parties should resolve through meet and confer efforts prior to presenting their disputes to the Court. Because the dispute is before the Court after the parties met and conferred in person, however, the Court assumes that Radiancy has not agreed to produce documents predating April 2008 in response to any requests other than Request Nos. 1, 3, and 9.

Radiancy does not challenge at all the relevance of pre-launch documents relating to the characteristics, safety, and effectiveness of the no! no! Hair product. *See* Doc. No. 66 at 9-11. Radiancy also does not challenge the relevance of pre-launch documents relating to the development of the no! no! Hair product. *Id*. at 11.

---

[1] *See* Doc. No. 55-1, Ex. C (Request 26 seeks documents sufficient to show number of hits on Radiancy's website from January 2007 forward; Request 28 seeks documents sufficient to show number of times infomercials and commercials for no! no! Hair have been shown from first time publicly available to present; Request 32 seeks documents sufficient to show weekly and monthly sales of product from January 2007 forward; Request 33 seeks documents sufficient to show projected and actual gross revenue & net profits from January 2007 forward; Request 34 seeks documents sufficient to show how Radiancy calculates gross revenue & net profits; Request 35 seeks documents sufficient to show projected and actual sales/orders from January 2007 to present; Request 36 seeks documents sufficient to show Radiancy's costs and expenses for advertising; Request 37 seeks documents sufficient to show prices of product from January 2007 to present; Request 42 seeks documents relating to effect of causal factors on sales, etc., of TRIA or Radiancy products from January 2007 to present).

Radiancy does challenge the relevance of pre-launch documents relating to its customers' experience with the no! no! Hair product, and the relevance of pre-launch advertising. *Id*. at 11-16. Radiancy does not refute TRIA's claim that no! no! Hair launched in September 2007 (Doc. No. 55 at 2), nor provide any information that would allow the Court to conclude that producing advertising or customer experience documents going back to that time would be unduly burdensome. The Court does not find TRIA's requests are "obviously overbroad and unduly burdensome." Doc. No. 66 at 13. On the contrary, the Court finds these requests all relate to TRIA's claims regarding the efficacy of no! no! Hair, the science behind the product and the testing of the product, the safety of the product, and whether the product performs as advertised. *See* Doc. No. 55-1, Ex. B at Nos. 1, 3-4, 9, 11-30, 51-56, and 69. Documents from the months immediately before TRIA's launch may lead to the discovery of admissible evidence regarding, among other relevant topics: (1) Radiancy's positioning of no! no! Hair by itself and the evolution of its positioning in response to TRIA's entry; (2) customer expectations of the product, including expectations based on the advertising; (3) whether customers were satisfied with the way the product functioned, whether the product performed as advertised, and whether the advertisement accurately reflected customer satisfaction and testing results; (4) potential witnesses; and (5) any customer confusion of Radiancy's product with TRIA's product and/or FDA-approved devices. Even documents predating *no! no! Hair's* launch could be relevant, for example if Radiancy conducted pre-launch focus groups or other market research. TRIA's requests accordingly are reasonably likely to lead to the discovery of admissible evidence.

Radiancy has not provided the Court with any authority suggesting that discovery into these issues is improper. *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1332 (11th Cir. 2008) does not support Radiancy's position. *See* Doc. No. 66 at 12 ("Until TRIA launched [LHRS] it did not compete with Radiancy . . . and therefore whatever effect Radiancy's messages may have had on consumers prior to that time is irrelevant to the claims at issue in this case"). The plaintiff in *Natural Answers* had stopped selling a product seven months before the defendant launched its product and therefore could not have lost any customers or potential customers as a result of the defendant's subsequent entry into the market. 529 F.3d at 1331. *Natural Answers* does

5

not stand for the proposition that advertising campaigns, consumer research or consumer complaints immediately preceding a competitor's entry into the market are irrelevant to false advertising or unfair competition claims. Radiancy's attempt to distinguish TRIA's authority in support of its motion is unpersuasive. *See, e.g., Intralox, L.L.C. v. Habasit Belting, Inc.*, 2004 U.S. Dist. LEXIS 26355, **13-16 (E.D. La. Dec. 27, 2004) (request asking for documents relating to response to entry by competitor into market proper because pre-entry advertising, marketing and business model were relevant to whether defendant competed unfairly; request asking for documents "evidencing [customer] complaints related to" marketing or pricing practices were not relevant[2]); *Storck USA, L.P. v. Farley Candy Co.*, 1995 U.S. Dist. LEXIS 4433, *4 (E.D. Ill. April 6, 1995) (request seeking pre-entry financial information were relevant to false advertising counterclaim and plaintiff had not demonstrated undue burden). Radiancy bore the "heavy burden" of demonstrating that this discovery should be denied, and it failed to do so. *Blankenship*, 519 F.2d at 429.

The Court finds that documents relating to Radiancy's development of the no! no! Hair product, its safety and effectiveness, its advertising and the development of its advertising, and customer experiences with the no! no! Hair product are relevant even if they took place before TRIA's launch in April 2008. While the Court finds the requests are broad, Radiancy did not make any effort to establish that producing responsive documents would be unduly burdensome. Radiancy asks the Court to limit the requests to a more reasonable time frame but does not suggest what that time frame might be. Doc. No. 66 at 15. Moreover, given the Court's understanding that Radiancy launched no! no! Hair six to seven months before TRIA launched LHRS, the requests do not appear to impose an undue burden on Radiancy. Because Radiancy does not demonstrate that producing these documents would be unduly burdensome, the Court overrules Radiancy's objections to producing pre-launch documents responsive to Request Nos. 1, 3-4, 9, 11-30, 51-56, and 69.[3]

---

[2] Here TRIA is not seeking complaints regarding advertising and pricing of no! no! Hair *per se*; it is seeking customer complaints regarding the product, which would be directly relevant to the effectiveness of the product itself, and also relevant to whether the product performs as advertised.

[3] Although Radiancy asserts the requests impose an undue burden, Radiancy does not provide the Court with any information enabling it to assess that burden. For example, Radiancy's Opposition is unsupported by any declaration from a person familiar with Radiancy's files or email system who could testify competently as to the burden the requests would impose on the company.

Finally Radiancy objects to producing financial information from 2007 to present. Radiancy again fails to make any showing of undue burden. For example, Radiancy does not argue that producing documents in the form requested by TRIA (documents sufficient to show *weekly* and monthly categories sought by Request Nos. 32-33, 35, and 37) would be unduly burdensome. Nor does Radiancy argue that Request Nos. 42 and 43 are ambiguous or unduly burdensome. Radiancy does not argue the documents contain sensitive financial information. Radiancy instead relies entirely on its relevance objection. Doc. No. 66 at 16. TRIA concedes this information is relevant only to its damages and to Radiancy's counterclaims for damages and lost profits (Doc. No. 68 at 12), but non-expert discovery will close on December 2, 1011 (Doc. No. 42), and the parties have not phased damages discovery. The Court accordingly overrules Radiancy's objections to producing pre-launch documents responsive to Request Nos. 32-33, 35-37 and 42-43. Radiancy need not produce financial documents until the parties have negotiated a reasonable protective order.

2. FDA documents

Whether Radiancy advertises that no! no! Hair is FDA-approved is not determinative of whether Radiancy's communications with the FDA about the safety or efficacy of the product are relevant to TRIA's claims and defenses. Nor does the fact that TRIA cannot contest the FDA's classification of no! no! Hair render documents relating to classification irrelevant. TRIA's requests all seek documents relating to the safety and efficacy of no! no! Hair and to how it performs compared to TRIA's LHRS. Indeed, Radiancy appears willing to produce documents constituting or relating to communications with the FDA to the extent they pertain to what no! no! Hair "does, how it does it, what side effects, if any, result from it, and how it compares in safety and effectiveness to medical devices for hair removal." Doc. No. 66 at 16 (quoting Opening Brief). Radiancy appears to contend such documents are responsive to Request Nos. 1-13, but not to Request Nos. 57 through 61, as Radiancy categorically objects to producing any documents in response to the latter.

The Court has reviewed Request Nos. 57 through 61and concludes that each falls within the categories of documents Radiancy apparently concedes are relevant:

- No. 57: "safety and efficacy of product" squarely falls within "safety and effectiveness"
- No. 58: "Thermicon effect" or "effect of product on structure/function of human body" squarely pertains to "what" the product does and "how it does it."

7

- No. 59: "equivalence or substantial equivalence or superiority" of product to any FDA-cleared laser or IPL device squarely falls within "how it compares in safety and effectiveness to medical devices for hair removal."
- No. 60: "clearance" for the product under section 510(k) of the Food, Drug, and Cosmetic Act (governing the medical device approval process) and/or requests for information under section 513(g) (regarding classification of devices) pertain to "what the product does" and "how it does it," and also to how it compares in safety and effectiveness to medical devices for hair removal.
- No. 61: "whether or not" the product "is a medical device" pertains to "how it compares in safety and effectiveness to medical devices for hair removal."

These document requests all are reasonably calculated to lead to the discovery of admissible evidence. The Court accordingly overrules Radiancy's objection to producing FDA documents responsive to Request Nos. 57 through 61.

**CONCLUSION**

The Court overrules Radiancy's objections to producing pre-launch documents and FDA documents, and grants TRIA's motion to compel as described above. Unless the parties agree to a later date for production, within thirty days of this Order, Radiancy shall produce any non-privileged documents withheld on these grounds.

The Court reminds the parties to consult and follow the Court's Standing Order, as well as the Northern District Local Rules (both are available on the Northern District's website). In the future, meeting and conferring in good faith will allow the parties to narrow the issues presented to the Court to those that truly are in dispute. Invective and hyperbole will not help the Court decide the matter at hand, and distract from the substantive merits of the arguments.

**IT IS SO ORDERED**.

Dated: September 23, 2011

Nandor J. Vadas
United States Magistrate Judge

8