Brendan J. O'Rourke*
*borourke@proskauer.com*
Alexander Kaplan*
*akaplan@proskauer.com*
Jennifer L. Jones*
*jljones@proskauer.com*
Victoria L. Loughery*
*vloughery@proskauer.com*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Facsimile: (212) 969-2900
* Admitted *Pro Hac Vice*

Robert H. Horn (SBN 134710)
*rhorn@proskauer.com*
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Phone:    (310) 557-2900
Facsimile: (310) 557-2193

Attorneys For Defendant and
Counterclaim Plaintiff Radiancy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRIA BEAUTY, INC.,<br>　　　　Plaintiff,<br>　　vs.<br>RADIANCY, INC.,<br>　　　　Defendant. | CASE NO. CV-10-5030 (RS) (NJV)<br><br>**DEFENDANT-COUNTERCLAIM PLAINTIFF RADIANCY, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULING ORDER** |
| RADIANCY, INC.,<br>　　　Counterclaim Plaintiff,<br>　　vs.<br>TRIA BEAUTY, INC.,<br>　　　Counterclaim Defendant,<br>　　and<br>KIMBERLY KARDASHIAN,<br>　　　Counterclaim Defendant. | Date:   April 5, 2012<br>Time:   1:30pm<br>Ctrm:   3<br><br>Honorable Judge Richard Seeborg |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

   I.  PRELIMINARY STATEMENT ...................................................................................1

   II. ARGUMENT .................................................................................................................4

      A. Radiancy Has Demonstrated the Requisite "Good Cause" ........................ 4

         i. Radiancy Worked Diligently to Comply with the Current
         Schedule, Which Has Become Unworkable ......................................... 5

         ii. Radiancy Diligently Pursued Amendment of the Scheduling
         Order .................................................................................................... 10

      B. TRIA Has Not Demonstrated It Would Be Prejudiced by a Short
      Adjournment Of The Trial Schedule ............................................................ 12

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Conley v. Union Pac. Railroad Co.*,
   No. S-04-1970 FCD GGH, 2008 WL 2523644 (E.D. Cal. June 20, 2008) ......... 9

*Hamilton v. Willms*,
   No. 1:02-cv-06583-AWI-SMS, 2011 WL 1356770 (E.D. Cal. Mar. 28,
   2011) .................................................................................................................11

*Masterpiece Leaded Windows Corp. v. Joslin*,
   No. 08-CV-0765-JM (JMA), 2009 WL 1456418 (S.D. Cal. May 22,
   2009) .................................................................................................................12

*Monroe v. Zimmer US, Inc.*,
   No. 2:08-cv-2944 FCD EFB, 2010 U.S. Dist. LEXIS 37718 (E.D. Cal.
   Apr. 16, 2010) ...........................................................................................5, 11-12

*Schaffner v. Crown Equip. Corp.*,
   No. C 09-00284 SBA, 2011 WL 6303408 (N.D. Cal. Dec. 16, 2011) ................ 7

*SKF Condition Monitoring, Inc. v. Invensys Sys., Inc.*,
   No. 07cv1116 BTM (BGS), 2010 WL 3463686 (E.D. Cal. Aug. 31,
   2010) .................................................................................................................12

*Techsavies, LLC v. WDFA Mktg.*,
   No. C10-1213 BZ, 2011 U.S. Dist. LEXIS 152833 (N.D. Feb. 23,
   2011) ................................................................................................................... 7

**OTHER AUTHORITIES**

F.R.C.P. 26(e)(1)(A) ............................................................................................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant-Counterclaim Plaintiff Radiancy, Inc. ("Radiancy") respectfully submits this Reply Memorandum of Points and Authorities in support of its Motion for Relief from the Case Management Scheduling Order (the "Scheduling Order").

## I.  PRELIMINARY STATEMENT

As explained in Radiancy's moving brief, there is simply not enough time left under the Scheduling Order for the parties to complete the remaining fact discovery, while also conducting expert discovery and preparing summary judgment motions.  Rather than accept responsibility for the role it played in de-railing the current case management schedule, TRIA Beauty Inc. ("TRIA") instead attempts to distract the Court with a series of mischaracterizations and irrelevancies, which Radiancy is constrained to address in this reply brief.

First, TRIA's statement of "relevant" facts is a thinly-veiled attempt to argue the merits of this case on a simple discovery motion.  The notion that TRIA has somehow been oppressed by Radiancy's advertising is belied by the fact that much of the advertising at issue was running for several months before TRIA brought the instant litigation and TRIA has never applied for any form of expedited relief.  Moreover, TRIA never considered Radiancy to be a "competitor" until it decided to sue Radiancy.  And as will be shown at trial, the allegedly false claims that TRIA lists (Opp. Br. at 3) are not actionable, and in some cases they were discontinued long ago or were never made.  There is a time and a place for these arguments; it is not this motion.

TRIA also misstates the history of the parties' prior amendments of the case schedule in this litigation.  Contrary to TRIA's characterizations of the previous amendments as being at "Radiancy's behest", all prior extensions in this case have been jointly requested by the parties.  (Dks. 41, 86, 88, 96).  Moreover, it was <u>TRIA</u> – not Radiancy – that first suggested that the parties agree to adjourn the January 25th deadline for completing fact discovery, which Radiancy initially

opposed.[1] Radiancy subsequently agreed to a limited adjournment of non-expert fact discovery, solely for the purpose of completing depositions, and in reliance on TRIA's representation that TRIA would have substantially completed its document production by January 25th – a representation which ultimately proved to be false.

Equally misleading is TRIA's characterization of Radiancy as having "dragged its feet" in responding to TRIA's requests for depositions and that Radiancy "ultimately refused to produce" witnesses after having agreed to do so. TRIA requested the depositions of numerous <u>former</u> Radiancy employees and other third parties, many of whom reside in other countries. From the beginning, Radiancy explained that it does not control these witnesses; nonetheless, Radiancy attempted to secure their cooperation. Merely because Radiancy was unsuccessful in this regard does not mean that Radiancy was not diligent.[2]

Likewise, while TRIA complains that Radiancy "refused to produce key custodians in the United States," TRIA fails to acknowledge that Radiancy was not obligated to produce the employees of a non-party foreign subsidiary, let alone to produce them in the United States.[3] Nonetheless, Radiancy not only agreed to produce the employees of its Israeli subsidiary in Israel, it also did not require TRIA to go through the lengthy process otherwise required by the Hague Convention to secure their appearance.[4] Indeed, had Radiancy insisted upon the procedural protections of the Hague Convention, these depositions would not have proceeded yet. In any event, the fact that TRIA's counsel was required to travel to Israel (as was Radiancy's counsel) has no bearing on whether Radiancy was diligent in its discovery efforts.

---

[1] *See* Declaration of Brendan O'Rourke ("O'Rourke Decl."), Ex. 1 (Jan. 3, 2012 email from Radiancy counsel stating "Regarding an extension of the discovery cutoff, we told you that if you wanted us to consider a new cutoff, you should propose one in writing so that we could consider it with our client, but that we did not think we would be in favor of an extension."; Jan. 4, 2012 email from TRIA counsel stating, "<u>we</u> [TRIA] suggested during our last call, that a short extension might be necessary").
[2] It should be noted that TRIA has never attempted to subpoena any of these supposedly "key" witnesses for deposition.
[3] *See* Roberts Decl., Ex. M (January 5, 2012 email from Radiancy counsel).
[4] *See id*.

1   Also irrelevant are TRIA's repeated assertions that Radiancy collected
2   documents from only 8 custodians, as compared to TRIA's 13.  Not once has
3   TRIA ever identified any custodian whose documents TRIA believed Radiancy
4   unfairly omitted for collection, or asked Radiancy to produce any additional
5   custodians.  Nor does the number of custodians TRIA collected documents from in
6   any way justify the fact that it produced nearly 30% of its documents after the
7   agreed-upon cut-off date.  Both parties had a heavy burden to meet in reviewing
8   and producing documents.  But in contrast to TRIA's surprise document dump,
9   Radiancy kept TRIA well informed of its document production status, notifying
10  TRIA by email on December 22, 2012 that it expected to have another production
11  of approximately 8,000 documents to be produced by the cutoff date and thereby
12  giving TRIA the option to adjourn the depositions of Radiancy witnesses until it
13  had received and reviewed such documents.  O'Rourke Decl., Ex. 2.  Those
14  documents were in fact produced before the cutoff and totaled less than 8,000
15  documents.  Roberts Decl., Ex. Q.  TRIA points to this production as if it justifies
16  the late and unexpected TRIA productions that were over five times the size of
17  Radiancy's – it does not.

18   Indeed, none of TRIA's irrelevant assertions and mischaracterizations
19  change the simple fact that, despite the parties' best efforts, the Scheduling Order
20  has become unworkable due in large part to the fact that TRIA – without warning
21  or justification and contrary to prior representations – dumped over 220,000 pages
22  of documents on Radiancy.  This production came after the cutoff for document
23  discovery and after the depositions of key TRIA witnesses.  As a result of the
24  newly-produced documents, Radiancy requires additional time for discovery, and a
25  corresponding extension of all other deadlines in the Scheduling Order.

26   As concerns the issue of prejudice, TRIA tries to create the impression that it
27  will be harmed if the trial date is adjourned, but has made no showing of fact in
28  this regard.  TRIA merely claims – without any substantiation – that its witnesses

1 may not be available. There is no evidence in the record that such prejudice will
2 result and TRIA appears to have done nothing to confirm the availability of these
3 witnesses for a trial after July.

4 II. ARGUMENT

5     Radiancy has "good cause" to modify the scheduling order because it has
6 been diligent, not only in working with the Court to set a case schedule which
7 appeared workable at the time, but also in working to comply with that schedule
8 and in seeking amendment to that schedule – first, by conferring with TRIA, and
9 finally, by filing a motion with the Court when TRIA refused to join Radiancy in
10 securing an amendment – after it became apparent that the schedule could not be
11 met. TRIA's opposition demonstrates a total disregard for how diligently and
12 cooperatively the parties have generally worked throughout this matter. TRIA
13 instead disclaims any accountability for having pulled a bait-and-switch and tries
14 to paint Radiancy as a "bad actor" before this Court. This is a transparent and
15 common adversarial tactic, and the Court should not be swayed.

16     Because Radiancy has demonstrated the requisite "good cause", the Court
17 need not even consider TRIA's feigned claim of prejudice, which only
18 demonstrates that TRIA has no genuine reason to object to a modification of the
19 schedule. Considering Radiancy has demonstrated actual prejudice caused by
20 TRIA's delay, Radiancy's motion should be granted.

21     **A.**     **Radiancy Has Demonstrated the Requisite "Good Cause"**

22     It is not disputed that Radiancy was diligent in assisting the Court to create
23 initial case schedules that seemed workable when drafted. Radiancy has also been
24 diligent in its efforts to adhere to that schedule and to work with TRIA, when
25 possible, to reach agreements to amend the schedule based on the necessities of the
26 case. TRIA has flatly refused to adjourn the trial date several times over, which
27 has led to an exceedingly cramped schedule that does not permit the parties to
28

complete the fact and expert discovery needed sufficiently in advance of the current summary judgment deadline of April 5, 2012.

### i. Radiancy Worked Diligently to Comply with the Current Schedule, Which Has Become Unworkable

The initial case management order in this matter was entered in January of 2011. (Dk. 36). As a result of the parties' mutual intentions to amend their pleadings, the parties jointly requested an amendment to the schedule. The amended schedule, entered in April 2011, required all non-expert fact discovery to be completed by December 2, 2011, all expert discovery to be completed by March 16, 2012, and set trial for July 2012. (Dk. 42). In November 2011, the parties again jointly sought to extend the scheduling order, which the Court so ordered. (Dk. 86-89). This adjournment extended non-expert discovery to January 25, 2012 and extended the expert discovery deadline by only two weeks, to March 28, 2012. *Id*. The case management conference date did not change. *Id*. Finally, in January 2011, the parties jointly sought the last so-ordered amendment to the schedule. (Dk. 96). Again, although the dates for discovery changed, the dates for the case management conference and the trial did not. (Dk. 97-98).[5]

The last of these jointly requested amendments was agreed to by Radiancy under the false pretense that TRIA's document production was near complete. (Loughery Decl. ¶¶20-21, Ex. 1). This amendment extended the non-expert fact discovery deadline solely for the purpose of taking depositions, yet TRIA repeatedly mischaracterizes this amendment as having extended all non-expert fact discovery. *See* Opp. Br. at 6, 11, n8. That assertion is not correct, as is apparent from the joint request itself and the contemporaneous email traffic between the parties. (Dk. 96 ("The parties are limiting this requested extension of the non-expert discovery cut-off to depositions only.")); Roberts Decl. Ex. O at p. 2 ("[T]he

---

[5] Radiancy's repeated cooperation in amending the Scheduling Order also supports its instant application for a short extension. *Monroe v. Zimmer US, Inc*., No. 2:08-cv-2944 FCD EFB, 2010 U.S. Dist. LEXIS 37718, at *5 (E.D. Cal. Apr. 16, 2010) (party's history of cooperation was further evidence of its diligence).

1 extension of the discovery deadline is for depositions only."). The sole caveat the
2 parties agreed to regarding document production was that, of course, the parties
3 would remain under their continuing obligation to supplement discovery, as
4 F.R.C.P. 26(e)(1)(A) already requires. Roberts Decl. Ex. P. The parties did not
5 contemplate that the extension was necessitated for the purposes of finishing
6 document production.

7 Moreover, at no time prior to submitting the joint request for modification of
8 the scheduling on January 24, 2012 did TRIA signal to Radiancy that a third of its
9 document production remained to be produced. Instead, TRIA told Radiancy
10 precisely the opposite on January 23: that only a "small batch" of documents
11 would be produced thereafter. Loughery Decl. Ex. 1.

12 This representation was false. TRIA had significantly more than a "small
13 batch" of documents yet to produce, and in fact made several additional
14 productions – specifically, on January 26 (18,115 documents), February 2 (15,645
15 documents), February 7 (6,164 documents) and February 21 (948 documents).
16 Loughery Decl ¶¶22, 25, 26, 29. These productions total over 40,000 documents
17 and over 220,000 pages that Radiancy had to digest after the agreed-upon January
18 25 deadline. *Id*. at ¶30.

19 TRIA's counsel admits that their January 23 representation regarding the
20 anticipated size of TRIA's future document production was not accurate, claiming
21 that it was a surprise even to them. Roberts Decl., ¶ 25. It is difficult to believe
22 that TRIA did not know on January 23 that it would be sending out for production
23 125,000 pages of documents a mere two days later. *See* Roberts Decl., Ex. R. In
24 any event, the fact remains that the volume of documents TRIA would produce
25 over the next month was entirely unforeseen to Radiancy.

26 TRIA's counter (Opp. Br. at 11) that its document production was
27 foreseeable conflates whether the volume of total documents produced in the
28 litigation was foreseeable with whether the volume of documents *produced*

*belatedly by TRIA* was foreseeable – which it was not. Accordingly, *Techsavies, LLC v. WDFA Mktg.*, No. C10-1213 BZ, 2011 U.S. Dist. LEXIS 152833, at *10 (N.D. Cal. Feb. 23, 2011), which Radiancy relied on in its moving brief (at 7), supports Radiancy's instant motion. TRIA's attempt to distinguish it on the basis that its tardiness was not as egregious at the defendant in *Techsavies* is meritless. (Opp. Br. at n8). For the same reason, none of the cases TRIA relies on (Opp. Br. at 11) negate a finding of "good cause" under these circumstances. Radiancy is not complaining about the total number of documents produced, but about the timing of their production and TRIA's failure to advise Radiancy that they would be producing thousands of documents after key depositions of management had already proceeded – especially given the fact that TRIA had lulled Radiancy into the false belief that TRIA's document production was nearly complete.

  To be clear, Radiancy has not contended in its moving brief and does not contend now that the parties to this matter have been altogether dilatory in pursuing discovery. This is not a case where the parties have ignored the discovery deadlines set by the Court until the very last minute. The sheer volume of total documents produced by the parties to this case and the number of depositions that have already proceeded all across this country – and in other countries – demonstrate that the parties have been generally diligent in this matter. But despite TRIA's efforts, its document productions were not timely made and TRIA was not forth-coming with Radiancy about the number of documents remaining to be produced (likely because TRIA did not want to move the trial date). TRIA must be accountable for its actions that have caused delay and be reasonable in agreeing to an extension necessitated by their numerous unexpected and belated productions.

  Instead, TRIA takes no responsibility for the delay it caused so it can try to shift the blame to Radiancy and rely on cases like *Schaffner v. Crown Equip. Corp.*, No. C 09-00284 SBA, 2011 WL 6303408 (N.D. Cal. Dec. 16, 2011). These circumstances are distinguishable from *Schaffner* because here it is the nonmoving

1  party – TRIA – who has caused the schedule to be unworkable and TRIA will
2  necessarily have to suffer the result of any additional litigation costs that may be
3  caused by their own conduct.
4        TRIA's belated productions have already prejudiced Radiancy and prevent
5  compliance with the deadlines in the case management order because additional
6  fact discovery is required before the parties can commence and complete expert
7  discovery and timely consider and draft any potential summary judgment motions.
8  TRIA again mischaracterizes the facts when it claims that "Radiancy admits that it
9  had *completed its review* of these documents by February 17."  (Opp. Br. at 11).
10 TRIA has conveniently altered the actual statement in Radiancy's February 17
11 letter, which stated "Having now completed our *initial* review of TRIA's
12 belatedly-produced documents, it is clear that Radiancy has been prejudiced by
13 their delayed production."  Roberts Decl. Ex. Z (emphasis added).  Moreover, at
14 the time of the February 17 letter, Radiancy was unaware that yet another
15 production from TRIA was forthcoming on February 21, so Radiancy could not
16 possibly have reviewed all of the belatedly-produced documents by February 17.
17       As outlined in Radiancy's moving brief (at 7-8), the late productions
18 necessitate the re-opening of the Appelbaum deposition and the deposition of an
19 additional witness, Danika Harrison.  TRIA does not dispute that Radiancy has
20 adequate grounds to re-open Mr. Appelbaum's deposition but takes the
21 indefensible position that Ms. Harrison "should have been well-known to Radiancy
22 by December . . . ."  (Opp. Br. at 12).  There is no support for this argument.
23       It is unreasonable to argue that because 80% of Ms. Harrison's documents
24 were produced by December 31, 2011, Radiancy should have known of her
25 importance as of the moment of production in the middle of the holidays.  *See*
26 Roberts Decl. ¶22.  TRIA also takes no responsibility for its failure to identify Ms.
27 Harrison either in its initial disclosures or in response to Radiancy's
28 interrogatories.  (Opp. Br. at n9).  It is no defense to say that Ms. Harrison was not

1  employed when that discovery was served given TRIA's continuing obligation to
2  timely supplement that discovery, of which it is well aware. (*See* Opp. Br. at 10).
3  By contrast, Radiancy supplemented and amended its initial disclosures weeks ago
4  and months ago had advised TRIA of the persons it would be adding and deleting
5  from the disclosures. Roberts Decl., Ex. M at 1 (January 5, 2012 email from
6  Radiancy counsel identifying persons with discoverable information to be added to
7  the initial disclosures).

8  Although the parties have agreed that these depositions will go forward,
9  TRIA's offer to simply further compress an already jammed schedule by
10  overlapping the non-expert depositions of Mr. Appelbaum, Ms. Harrison, TRIA's
11  30(b)(6) financial deposition and Radiancy's 30(b)(6) financial deposition during
12  the next few weeks is simply not a workable solution.[6] Moreover, the delay in the
13  schedule is such that expert discovery would necessarily bleed well past the
14  deadline for summary judgment motions, thus preventing Radiancy from making a
15  potential summary judgment motion based on TRIA's lack of damages. *Conley v.*
16  *Union Pac. Railroad Co.*, No. S-04-1970 FCD GGH, 2008 WL 2523644 (E.D.
17  Cal. June 20, 2008), which TRIA cites (at 13), does not address Radiancy's
18  argument. There was no suggestion in that case that the expert discovery had any
19  relation to either party's desire to move for summary judgment, and the party
20  seeking to modify the schedule was not seeking to modify the trial date.

21  Radiancy cannot be expected to finish non-expert fact depositions, all expert
22  discovery and a summary judgment motion all within the next few weeks. TRIA's
23  refusal to make reasonable accommodation in the schedule is nothing more than an
24  attempt to gain an unfair advantage in the litigation by hampering Radiancy's
25  ability to draft an effective summary judgment motion. Radiancy cannot comply

---

[6] TRIA, amazingly, faults Radiancy for the adjournment of the deposition of TRIA's 30(b)(6) financial witness when Radiancy had an associate *en route* to take the deposition, which was only adjourned due to TRIA's revelation that it would be producing additional financial documents *on the day the deposition was scheduled to proceed*. *See* Loughery Decl. ¶42.

9
RADIANCY INC.'S MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULING ORDER – NO. 10-CV-5030 RS (NJV)

with the current Scheduling Order without incurring significant prejudice to its rights in this litigation.

### ii. Radiancy Diligently Pursued Amendment of the Scheduling Order

TRIA's argument (at 14) that Radiancy has delayed for over a month in bringing the instant motion on March 2 is a red herring. When TRIA commenced its parade of late document productions, it was mere days after the parties had submitted their January 24 joint request to modify the scheduling order. Those productions continued one after the other on January 26, February 2, February 7 and February 21, requiring Radiancy to digest hundreds of thousands of pages of documents in a matter of weeks.[7] As Radiancy began its initial review, it had no knowledge of what was contained in the documents. Radiancy had to evaluate not only what the documents meant for the merits of the litigation and the depositions then proceeding, but also whether the documents necessitated additional discovery and whether Radiancy had been prejudiced as a result of their late production. This document review process took place as swiftly as possible and proceeded while Radiancy was preparing for and attending eight depositions scheduled to take place between January 30 and February 16 (in New York, California, Florida and Israel) and working to compile financial information for production to TRIA, among other tasks.

Radiancy was also required to, and did, negotiate in good faith with TRIA to attempt to work out an amended schedule in order to avoid unnecessary motion practice. This process commenced with Radiancy's service of its February 17 letter raising the discovery dispute (*see* Loughery Decl. ¶27, Ex. 3), followed by TRIA's response on February 21 (*see* Loughery Decl. ¶28, Ex. 4) and three meet

---

[7] Indeed, it is ironic that TRIA blames the timing of its belated productions on the "second sweep" of document collection it conducted in October 2011, which purportedly resulted in 65,000 documents and which ultimately took TRIA almost four months to review and produce, and yet TRIA asserts that Radiancy was not diligent in bringing this motion, despite the fact that Radiancy managed to review over 40,000 belatedly-produced TRIA documents in less than a month <u>and</u> bring this motion just two weeks after finishing its initial review.

1 and confers the parties held on February 24, February 27, and February 28.
2 Loughery Decl. ¶5. Although these meet and confers were successful in some
3 respects, TRIA's refusal to consider changing the trial date prevented any
4 adjournment of the impending summary judgment deadline. As a result, the
5 parties had finally reached an *impasse* and within days Radiancy had prepared and
6 filed the instant motion on March 2.

7 It is difficult to see how Radiancy could have acted more diligently with
8 respect to the instant motion given the facts and circumstances presented over the
9 five weeks leading up to the filing of its motion. TRIA faults Radiancy for not
10 filing sooner, but Radiancy had to satisfy its meet and confer obligations before
11 filing its motion. Indeed, this Court's meet and confer requirement worked to the
12 parties' advantage because, as a result of the parties' conferences, TRIA and
13 Radiancy were able to make some progress, but unfortunately were unable to
14 resolve the ultimate issue that is now before the Court.

15 That meeting its meet and confer obligation required Radiancy to file its
16 motion after the non-expert discovery cutoff does not end this inquiry, and the
17 authority TRIA relies on for this argument does not support such a proposition.
18 Rather, that authority instead notes, in *dicta*, that motions brought at the discovery
19 cutoff may, in some circumstances, be considered too late. *See Hamilton v.*
20 *Willms*, No. 1:02-cv-06583-AWI-SMS, 2011 WL 1356770, at *6 (E.D. Cal. Mar.
21 28, 2011). But, in that case the party moving for amendment of the discovery
22 schedule made its motion *more than a year* after the close of discovery. *Id*. Here,
23 Radiancy filed its motion 14 days after the end of the discovery deadline, which
24 can hardly be considered delinquent under the circumstances, and other courts
25 have recognized that motions to re-open discovery brought within a similar time
26 period after the deadline meet the "good cause" standard. *See Monroe*, 2010 U.S.
27 Dist. LEXIS 37718, at *6 (granting post-discovery motion to amend the discovery
28

1 schedule and finding party who brought its motion thirteen days after the discovery
2 deadline was diligent).

3      **B.**    **TRIA Has Not Demonstrated It Would Be Prejudiced by a Short**
4               **Adjournment of the Trial Schedule**

5      Whether TRIA can demonstrate it would be prejudiced by a short delay in
6 the trial schedule is irrelevant because Radiancy has shown that it has "good
7 cause" to seek the instant amendment. *See Masterpiece Leaded Windows Corp. v.*
8 *Joslin*, No. 08-CV-0765-JM (JMA), 2009 WL 1456418, at *3 (S.D. Cal. May 22,
9 2009) ("[T]he focus of the inquiry is . . . not upon the prejudice to the party
10 opposing the modification."); *SKF Condition Monitoring, Inc. v. Invensys Sys.,*
11 *Inc.*, No. 07cv1116 BTM (BGS), 2010 WL 3463686, at *6 (E.D. Cal. Aug. 31,
12 2010) ("Although the Court may consider the prejudice to [the opposing party] as
13 part of its good-cause analysis, the existence of prejudice 'might supply *additional*
14 reasons to *deny* a motion' if a party has not shown good cause. Here, however, the
15 Court has found good cause and so does not consider prejudice.") (internal
16 citations omitted).

17      In any event, TRIA's attempt at claiming prejudice should not prevent an
18 adjournment of the trial date. TRIA makes not one argument that *actual* prejudice
19 would necessarily result if the schedule were adjusted to allow the parties to
20 properly litigate this case. TRIA argues only that prejudice "might" result because
21 their experts and other fact witnesses have been expecting a trial will go forward at
22 the end of July. (Opp. Br. at 14). Surely TRIA's witnesses can block out whatever
23 new dates the Court may set for a trial to proceed six or seven months from now.
24 Radiancy has no objection to those dates being set to ensure that the trial would not
25 conflict with any religious holidays.

26      TRIA's own conduct has caused the current schedule to be unworkable; they
27 should not be heard now to complain that they "might" be prejudiced by a short
28

delay when their delays have already resulted in actual prejudice to Radiancy, which will not be rectified unless the instant motion is granted.

## **CONCLUSION**

For all of the foregoing reasons, the current Scheduling Order has become unworkable, and a new order is necessary to provide the parties time to complete all outstanding discovery and prepare motions for summary judgment, as well as to give the Court sufficient time to decide the parties' dispositive motions. Accordingly, Radiancy respectfully requests that the Court grant its Motion for Relief from the Scheduling Order, and issue an Order: 1) re-opening fact discovery for a period of sixty (60) days; and 2) extending all other deadlines in the Scheduling Order by sixty (60) days, or setting forth such other alternative schedule as the Court deems appropriate to address the concerns set forth in Radiancy's motion.

DATED: March 9, 2012

Brendan J. O'Rourke
Alexander Kaplan
Jennifer L. Jones
Victoria L. Loughery
Robert H. Horn
PROSKAUER ROSE LLP

By:     /s/ Robert H. Horn
        Robert H. Horn
Attorneys for Defendant and Counterclaim-Plaintiff Radiancy, Inc.

6530/60854-041
current/27667783v