# EXHIBIT A

Brendan J. O'Rourke*
borourke@proskauer.com
Alexander Kaplan*
akaplan@proskauer.com
Jennifer L. Jones*
jljones@proskauer.com
Victoria L. Loughery*
vloughery@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Facsimile: (212) 969-2900
* Admitted *Pro Hac Vice*

Robert H. Horn (SBN 134710)
rhorn@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Phone:    (310) 557-2900
Facsimile: (310) 557-2193

Attorneys For Defendant and
Counterclaim Plaintiff Radiancy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRIA BEAUTY, INC.,<br>          Plaintiff,<br><br>          vs.<br><br>RADIANCY, INC.,<br><br>          Defendant.<br><br>RADIANCY, INC.,<br><br>          Counterclaim Plaintiff,<br>          vs.<br><br>TRIA BEAUTY, INC.,<br><br>          Counterclaim Defendant,<br><br>          and<br><br>KIMBERLY KARDASHIAN,<br><br>          Counterclaim Defendant. | CASE NO. CV-10-5030 (RS) (NJV)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>**Date:  May 10, 2012<br>Time: 1:30PM<br>Ctrm: 3**<br><br><br>**Honorable Judge Richard Seeborg** |

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      PRELIMINARY STATEMENT.......................................................................1

II.     FACTUAL BACKGROUND ............................................................................3

III.    ARGUMENT .......................................................................................................6

        A.     Claims That Consumers Will Experience "Permanent Hair Removal" After Using TRIA Hair Are Literally False As a Matter Of Law..........................8

              1.     TRIA Hair Does Not Provide Consumers With "Permanent Hair Removal" .........................................................................8

              2.     Claims That TRIA Hair Provides "Permanent Results" Necessarily Imply "Permanent Hair Removal" And Thus Are Also Literally False ...............................................................................12

        B.     TRIA Admits That Consumers Will Not Literally Be "Hair-Free" After Using TRIA Hair.........................................................................13

        C.     Claims That The TRIA Acne Is "FDA Cleared" Are Literally False...................16

CONCLUSION.................................................................................................................17

1

## TABLE OF AUTHORITIES

**Page(s)**

2

CASES

3

*Am. Home Prods. v. Federal Trade Comm'n,*
4
    695 F.2d 681 (3d Cir. 1982)................................................................8

5

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)...................................................................6
6

*Castrol, Inc. v. Pennzoil Co.,*
7
    987 F.2d 939 (3d Cir. 1993)............................................................11

8

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).....................................................................7
9

10

*Cleary v. News Corp.,*
    30 F.3d 1255 (9th Cir. 1994) ...........................................................7

11

*Constr. Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.,*
12
    No. 07CV111-IEG-RBB, 2008 U.S. Dist. LEXIS 38899 (S.D. Cal. May 13, 2008)............10

13

*In re Intrabiotics Pharm., Inc., Sec. Litig.,*
    No. C 04-02675 JSW, 2006 U.S. Dist. LEXIS 15753 (N.D. Cal. Jan. 23, 2006)....................10
14

15

*In re Nuvelo, Inc. Sec. Litig.,*
    668 F. Supp. 1217 (N.D. Cal. 2009) ......................................................10

16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
17
    475 U.S. 574 (1986).....................................................................7

18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,*
    290 F.3d 578 (3d Cir. 2002).............................................................12
19

20

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997) .........................................................7, 8

21

*Sykes v. Glaxo-SmithKline,*
22
    484 F. Supp. 2d 289 (E.D. Pa. 2007) ....................................................10

23

*Time Warner Cable, Inc. v. DirecTV, Inc.,*
    497 F.3d 144 (2d Cir. 2007)............................................................12
24

25

*Walker & Zanger, Inc. v. Paragon, Indus.,*
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ...................................................7

26

27

28

**STATUTES**

15 U.S.C. § 1114 ...................................................................................................................5

15 U.S.C. § 1125(a) ...........................................................................................................5, 7

Cal. Bus. & Prof. Code § 17200, et seq. (the "UCL") .....................................................5, 7

Cal. Bus. & Prof. Code § 17500, et seq. (the "FAL") .....................................................5, 7

Fed. R. Civ. P. 56(a) .........................................................................................................1, 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant-Counterclaim Plaintiff Radiancy, Inc. ("Radiancy") respectfully submits this memorandum of law in support of its motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.    PRELIMINARY STATEMENT

Plaintiff-Counterclaim Defendant TRIA Beauty, Inc. ("TRIA") entered the U.S. market for over-the-counter ("OTC") aesthetic devices in May 2008 with the launch of its hand-held Laser Hair Removal System (now called the "TRIA Hair Removal Laser") ("TRIA Hair").  January 17, 2012 Deposition of Kevin Appelbaum ("Appelbaum Depo."), Tr. 21:16-18 (Loughery Decl. Ex. 2 at 2). As a laser light-based device, TRIA Hair is only effective (if at all) on a very limited portion of the consumer population; specifically, the product literature for TRIA Hair states that it "is intended for use only on light to medium skin tones … and naturally brown or black hair.  It does not work on white, gray, blond or red hair."  *See* Loughery Decl. Ex. 30 at 4; January 30, 2012 Deposition of Dr. Robert Grove ("Grove Depo."), Tr. 79:17-80:02 (Loughery Decl. Ex. 5 at 4-5). Moreover, the IFU states that persons with dark skin tones cannot use the product because "dark skin may absorb too much laser light, which can injure (burn, discolor, or scar) [the] skin."  *Id*; Grove Depo. Tr. 81:22-82:02 (Loughery Decl. Ex. 5 at 6-7).  In addition, TRIA Hair is not cleared for use on the face or neck – areas on which many other competing OTC hair removal products can be used.   *See* Loughery Decl. Ex. 36 at 3 ("TRIA is currently cleared for OTC LHR 'below the neck'").  Unsurprisingly, in light of the above limitations, and the fact that the product initially retailed at the prohibitive price of almost one thousand dollars, TRIA has, from the beginning, had difficulty selling the TRIA Hair device.

However, instead of devoting its efforts to developing a more affordable hair removal product that could be used effectively by the majority of consumers (and not merely the subset for which TRIA Hair is currently indicated for use), TRIA has consistently sought to blame others for its failings.  In 2009, TRIA filed two separate lawsuits within a month of each other; one against the maker of a competing OTC hair removal device, another against the provider of professional

1    laser hair removal treatments.[1]  In November 2010, TRIA filed two more lawsuits against its

2    perceived competitors, one of which is the instant action against Radiancy.[2]

3        Ironically, at the same time it is using litigation to smear its perceived competitors, TRIA

4    is itself polluting the market with its false and deceptive advertising campaigns for both its hair

5    removal and its acne treatment products.  In late December 2009, TRIA obtained clearance from

6    the FDA to market and sell the TRIA Hair for the additional indicated use of "permanent reduction

7    in hair regrowth defined as a long-term, stable reduction in hair counts following a treatment

8    regime."  *See* Loughery Decl. Ex. 10.  Since that time, TRIA has embarked upon an ongoing

9    advertising campaign for TRIA Hair that deceptively promises consumers (among other things)

10   that they can be "hair free forever" if they used TRIA Hair and claiming that "permanent hair

11   removal" was "guaranteed." As will be shown in Point III below, testimony from TRIA witnesses

12   as well as documents produced by TRIA indisputably demonstrate that these claims are patently

13   false.

14       TRIA has also engaged in false and deceptive advertising of its Skin Clarifying System

15   (now called the "TRIA Skin Perfecting System") ("TRIA Acne").  TRIA Acne is a three-step

16   treatment regime centered on the Clarifying Blue Light (the "Blue Light"), a handheld device that

17   purportedly treats acne breakouts by administering doses of blue light.  TRIA has made numerous

18   false claims about the TRIA SCS, including that the treatment system has been cleared by the

19   FDA as safe and effective for treating acne.  As discussed in Point III below, this claim is literally

20   false, since only the Blue Light device has been cleared by the FDA, not the acne treatment

21   system.

22       Accordingly, because the record is clear that – contrary to TRIA's advertising – users of

23   TRIA Hair will <u>not</u> experience "permanent hair removal," and will <u>not</u> be "hair-free" as a result of

24   using TRIA Hair, and that the FDA has not "cleared" the TRIA Acne product, Radiancy is entitled

---

[1] TRIA Beauty v. Home Skinovations, Inc., 3:2009-cv-03942, N.D. Cal. (filed, Aug. 26, 2009); *see* Loughery Decl. Ex. 9.

[2] The other lawsuit is against Oregon Aesthetic Technologies the maker of a light-based acne treatment device that competes with TRIA's acne treatment device, the TRIA Clarifying Blue Light (the "Blue Light").  The suit is currently pending in the District of Oregon (TRIA Beauty v. Oregon Aesthetic Technologies, Inc., Case No. 3:10-cv-1362).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

2

to summary judgment finding these statements (as described further below) literally false as a matter of law. [3]

## II.    FACTUAL BACKGROUND

**The Parties And Their Products**

Radiancy is a leader in the medical and aesthetic skin care market, specializing in the development of affordable and easy to use light and heat-based skin care equipment for professional and consumer use.  Radiancy's consumer products are marketed and sold under the no!no! brand ("no!no!"), which includes the no!no! Hair (a heat-based hair removal product), the no!no! Skin (a light and heat-based acne treatment device), and the no!no! Smooth line of skin care products (e.g., moisturizer, after treatment cream).  Radiancy introduced the no!no! Hair to the U.S. market towards the end of 2007 (the "no!no! Classic"); an updated model of no!no! Hair was introduced in or around November 2009 (the "no!no! 8800").  January 25, 2012 Deposition of Dolev Rafaeli ("Rafaeli Depo."), Tr. 17:14-24; 18:17-22 (Loughery Decl. Ex. 4 at 2-3).  The no!no! Skin was introduced to the U.S. market in or around July 2009.

TRIA markets and sells a consumer hair removal device called the "TRIA Laser Hair Removal System" ("TRIA Hair").  (TRIA First Amended Complaint (Dk. 54) ("Amended Complaint"), ¶ 7; Radiancy Answer to TRIA First Amended Complaint (Dk. 53), ¶ 7 ("Radiancy Answer")).  The TRIA Hair product consists of, among other things, a laser light source contained within a plastic housing.  (Amended Counterclaims, ¶ 16; TRIA Answer, ¶ 16).  TRIA Hair was introduced to the U.S. market as an over-the-counter ("OTC") device in May 2008 ; in December 2009, TRIA received an additional clearance from the FDA to market and sell the device as indicated for the intended use of "permanent reduction in hair regrowth defined as a long-term, stable reduction in hair counts following a treatment regime."  Grove Depo. Tr. 50:14-51:15 (Loughery Decl. Ex. 5 at 2-3).  Prior to December 2009, federal regulations did not permit TRIA to market or sell TRIA Hair with a "permanent reduction" claim. *Id.*

---

[3] This motion seeks summary judgment only on the subset of TRIA's false advertising statements identified in Points III.A, III.B and III.C.  Radiancy's Amended Counterclaims identify many more false statements of fact that TRIA has made concerning both its hair removal and acne treatment products; the falsity of these statements will be proven at trial.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

3

1   TRIA also markets and sells an OTC device for the treatment of acne called the "TRIA

2   Skin Perfecting System" ("TRIA Acne").[4]  (TRIA Answer to Amended Counterclaims ("TRIA

3   Answer" (Dk. 76), ¶ 15).  TRIA Acne is a three-step treatment regime which consists of a

4   cleanser, a serum and a device TRIA calls the "Skin Perfecting Blue Light" (the "Blue Light").[5]

5   (Amended Counterclaims, ¶ 17; TRIA Answer, ¶ 17).  The Blue Light is a hand-held device

6   consisting of, among other things, light emitting diodes ("LEDs") contained within a plastic

7   housing.  *Id.*  In January 2010, TRIA obtained a § 510k clearance from the FDA to market and sell

8   the Blue Light as indicated for the general treatment of dermatological conditions and the specific

9   treatment of mild to moderate inflammatory acne.  *See* Loughery Decl. Ex. 11.  TRIA sells the

10  Blue Light as a standalone acne treatment product, as well as part of the TRIA Acne product.

11  (TRIA Answer, ¶ 17).

12      TRIA markets and advertises its TRIA Hair and TRIA Acne products through, *inter alia*,

13  internet advertising (including its own website), infomercials, print and television advertising, and

14  social media.  (Amended Counterclaims, ¶ 21; TRIA Answer, ¶21).

15  **Procedural History And Claims At Issue**

16      On November 5, 2010, TRIA filed a Complaint in this Court against Radiancy, alleging

17  that Radiancy had made false statements in its advertising of the no!no! Hair, and had infringed

18  TRIA's registered trademarks by purchasing and using them as paid internet search terms.  (Dk.

19  1).  On December 15, 2010, Radiancy answered TRIA's Complaint and interposed counterclaims

20  concerning TRIA's false advertising of its TRIA Hair and TRIA Acne products, as well as claims

21  for trademark infringement and unfair competition, arising from TRIA's purchase and use of

22  Radiancy's trademarks as paid internet search terms.  (Dk. 10).

23      On July 22, 2011, TRIA filed the Amended Complaint, which included new claims against

24  Radiancy's over-the-counter acne treatment device ("no!no! Skin").  (Dk. 50).  On September 6,

25

26  [4] TRIA previously sold this product under the name "TRIA Skin Clarifying System".  (Amended Complaint ¶ 39;
    Radiancy Answer ¶ 39).

27  [5] TRIA previously sold the Blue Light under the name "TRIA Clarifying Blue Light").  (Amended Complaint ¶ 39;
    Radiancy Answer ¶ 39).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

2011, Radiancy filed its Amended Counterclaims to include additional allegations related to TRIA's more recent advertising, and to add TRIA's spokesperson for the TRIA Hair device, Kim Kardashian ("Ms. Kardashian"), as a defendant.  (Dk. 71).  The Amended Counterclaims pleaded five causes of action against TRIA: 1) false Advertising, in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a); 2) false Advertising in violation of Cal. Bus. & Prof. Code § 17500, et seq. (the "FAL"); 3) unfair competition, in violation of Cal. Bus. & Prof. Code § 17200, et seq. (the "UCL"); 4) trademark infringement, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; and 5) unfair competition under California common law.[6]

There is no dispute that TRIA made the following advertising statements with regard to TRIA Hair:

- *Permanent hair removal is our promise* (Amended Counterclaims, ¶ 23; TRIA Answer, ¶ 23).
- *The TRIA Laser is the only way to get permanent hair removal at home – guaranteed.*  (Amended Counterclaims, ¶ 23; TRIA Answer, ¶ 23).
- *take a permanent holiday from unwanted hair*  (Amended Counterclaims, ¶ 24; TRIA Answer, ¶ 24).
- *Are the results permanent?. . . .In as few as eight treatments you'll never have to shave or wax again.  End of story.*  (Amended Counterclaims, ¶ 24; TRIA Answer, ¶ 24).
- *Get permanent hair-free results at home – guaranteed.*  (Amended Counterclaims, ¶ 24; TRIA Answer, ¶ 24).
- *Now you can get permanent hair removal at home with the TRIA Laser. . . .*  (Amended Counterclaims, ¶ 27; TRIA Answer, ¶ 27).
- *Permanent hair removal, that's right, I said it – permanent . . . .it's the first and only real laser hair removal treatment to achieve permanent hair removal, at home.*  (Amended Counterclaims, ¶ 27; TRIA Answer, ¶ 27).

---

[6] Radiancy has also asserted the second and third causes of action against Ms. Kardashian, arising from false statements she has made about TRIA Hair, and her personal use of the device.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

5

- *What can you do with TRIA?  Permanent hair removal.*  (Amended Counterclaims, ¶ 27; TRIA Answer, ¶ 27).

- [TRIA Hair] *is the first technology to really deliver permanent hair free results* (Amended Counterclaims, ¶ 28; TRIA Answer, ¶ 28).

- *experience the freedom of being hair free and care free for life*  (Amended Counterclaims, ¶ 28; TRIA Answer, ¶ 28).

- *The TRIA Laser Hair Removal System is designed to gently disable hair growth so that your skin remains smooth and <u>hair-free</u> – permanently.*  (Amended Counterclaims, ¶ 30; TRIA Answer, ¶ 30).

- *The TRIA Laser Hair Removal System is designed to gently disable hair growth so that your skin remains smooth and <u>hair-free</u> – permanently.*  (Amended Counterclaims, ¶ 30; TRIA Answer, ¶ 30).

- *TRIA Laser Hair Removal System will have you living happily ever after with beautifully hair free skin*  (Amended Counterclaims, ¶ 31; TRIA Answer, ¶ 31).

- *Get hair-free forever – just like Kim Kardashian.*  (Amended Counterclaims, ¶ 88; TRIA Answer, ¶ 88).

There is also no dispute that TRIA has stated that the TRIA Acne System is "FDA Cleared."  (Amended Counterclaims, ¶ 125; TRIA Answer, ¶ 125).

As will be demonstrated in Point III below, the undisputed facts demonstrate that all of the above listed advertising statements are literally false.

## III.    ARGUMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party may move for summary judgment on any claim or defense, or any element of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("a party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.").  A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby,*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

6

1  *Inc.*, 477 U.S. 242, 247-48 (1986).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

2  (summary judgment is proper where "'the pleadings, depositions, answers to interrogatories, and

3  admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

4  material fact and that the moving party is entitled to judgment as a matter of law.'") (citation

5  omitted).  The moving party has met its burden for summary judgment when it has shown that

6  "the record taken as a whole could not lead a rational trier of fact to find for the non-moving

7  party…."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

8  (internal citation omitted).

9          In order to sustain a false advertising claim under § 43(a) of the Lanham Act, a plaintiff

10  must demonstrate that (1) the defendant made a false statement of fact in a commercial

11  advertisement about its own or another's product; (2) the statement actually deceived or has the

12  tendency to deceive a substantial segment of its audience; (3) the false statement is material, in

13  that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to

14  enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the

15  false statement.  15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d

16  1134, 1139 (9th Cir. 1997).

17          Likewise, claims for false advertising under the FAL and for deceptive business practices

18  under the UCL also require a showing that defendant has made a false statement of material fact

19  concerning its product that has, or is likely to, deceive consumers, and to cause injury to the

20  plaintiff.  *See, e.g., Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit

21  has consistently held that state common law claims of unfair competition and actions pursuant to

22  California Business and Professions Code § 17200 are 'substantially congruent' to claims made

23  under the Lanham Act."); *Walker & Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168, 1182-

24  1183 (N.D. Cal. 2007) (finding summary judgment on UCL and FAL claims was warranted,

25  noting "[i]n the Ninth Circuit, claims of unfair competition and false advertising under state

26  statutory and common law are 'substantially congruent' to claims made under the Lanham Act.").

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

7

As described in detail below, TRIA has made numerous false statements of fact about both its hair removal and acne treatment products in its infomercial, on its website, as well as on its social media pages and print advertisements.  Each of these statements, when viewed in the context of the advertisements in which they appear, convey literally false messages to consumers about the TRIA products.  Accordingly, Radiancy now moves for summary judgment finding that TRIA's advertising statements, as described below, are literally false as a matter of law. [7]

**A.   Claims That Consumers Will Experience "Permanent Hair Removal" After Using TRIA Hair Are Literally False As a Matter Of Law**

**1.   TRIA Hair Does Not Provide Consumers With "Permanent Hair Removal"**

A party may demonstrate falsity within the meaning of the Lanham Act by showing that a statement is literally false, either on its face or by necessary implication.  *Southland Sod Farms*, 108 F.3d at 1139.  When evaluating whether or not a particular claim is false the challenged statement must be viewed in context, because the central issue under the Lanham Act is whether the message conveyed to the consumer by the advertisement is false or misleading.  *See Am. Home Prods. v. Federal Trade Comm'n*, 695 F.2d 681, 687 (3d Cir. 1982) ("'[T]he tendency of advertising to deceive must be judged by viewing it as a whole, without emphasizing isolated words or phrases apart from their context.'") (citation omitted).

TRIA's advertising is replete with express claims that using its TRIA Hair product will result in "permanent hair removal."  For instance, at http://www.trytrialaser.com (last visited on 11/30/2010), TRIA has used the claim "*permanent hair removal is our promise*."[8]  *See* Loughery Decl. Ex. 23.  This claim appears in large, bold font at the top of the page; underneath this claim, in somewhat smaller font, TRIA doubles-down on its permanent claim, stating: "*The TRIA Laser is the only way to get permanent hair removal at home—guaranteed.*"[9]  *Id.*

[7] The instant motion relates solely to Radiancy's first three causes of action.  The remaining elements and causes of action will be proven at trial.
[8] TRIA asserts that this website is not "owned or operated by TRIA" (Answer ¶ 19).  However there can be no dispute that TRIA controls the content of this website, which is featured in TRIA's Infomercial (Loughery Decl. Ex. 1 at 23:43), as TRIA's own documents demonstrate that TRIA marketing personnel regularly instructed persons from a company called "Conversions Systems" on what changes, fixes and updates needed to be made to the site.  *See, e.g.,* Loughery Decl. Ex. 19 and 20.
[9] Unless otherwise indicated, all emphasis is supplied.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

8

Likewise, TRIA makes consistent "permanent hair removal" claims in its Hair Removal Infomercial.  For example, the announcer states, "*Now you can get permanent hair removal at home with the TRIA Laser, the first and only FDA cleared hair removal laser available for home use*," while images of women walking, playing on the beach and interacting with men, and an image of the TRIA Laser are shown on the screen.  *See* Loughery Ex. 1, at 24:10. TRIA spokesperson Ereka Vetrini is also pictured, claiming:  "*Imagine waking up everyday with that clean, smooth freshly shaved feeling – that's the promise of laser hair removal.  Permanent hair removal, that's right, I said it – permanent.  Now there's a laser hair removal system for home use, and this is it, the TRIA Laser Hair Removal System, it's the first and only real laser hair removal treatment to achieve permanent hair removal, at home.*"  *See Id.* at 3:52.

Also in the infomercial, TRIA spokesperson, Dr. Eric Bernstein, states "*The TRIA is the only FDA cleared laser for home laser hair removal.  And what can you do with the TRIA? Permanent hair removal.*"  *See Id.* at 1:45.

There can be no dispute that, in the context of selling a hair removal device, a claim that the device is effective in providing users with "permanent hair removal" is material, and would likely affect a customer's decision on whether or not to purchase the device.  TRIA's "permanent hair removal" claims are literally false.  As TRIA's internal documents make clear (*see* Loughery Decl. Ex. 32 and 33) the sole apparent substantiation for its claim that TRIA Hair provides "permanent hair removal" is the fact that, in December 2009, the device was cleared by the FDA to be sold for the indicated use of "permanent reduction in hair regrowth defined as a long-term, stable reduction in hair counts following a treatment regime."  However, "permanent hair reduction" and "permanent hair removal" are not interchangeable terms, as the FDA itself makes clear on its "Laser Facts Page," stating:

> Several manufacturers received FDA permission to claim, 'permanent reduction,' NOT 'permanent removal' for their lasers. This means that although laser treatments with these devices will permanently reduce the total number of body hairs, they will not result in a permanent removal of all hair.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

9

*See* Loughery Decl. Ex. 24. [10]  Indeed, the fact that TRIA's document production contained numerous copies of the Laser Facts Page – some with the above-quoted language highlighted – shows that TRIA was well aware of the FDA's specific instructions.  *See* Loughery Decl. Ex. 16 and 31. REDACTED

Nor does the term "permanent", as defined by the FDA in the context of clearing a laser hair removal device, truly mean "permanent" (*i.e.,* forever).  According to the FDA, "permanent," in the context of a "permanent hair <u>reduction</u>" claim, is defined as: "the long-term, stable reduction in the number of hairs re-growing after a treatment regime, which may include several sessions.  The number of hairs regrowing must be stable over time greater than the duration of the complete growth cycle of hair follicles, which varies from four to twelve months according to body location." REDACTED

Accordingly, TRIA cannot rely on its FDA clearance as substantiation for its claim that TRIA Hair provides consumers with "permanent hair removal." REDACTED

---

[10] Radiancy respectfully requests that the Court take judicial notice of Ex. 24 to the Loughery Declaration, which is a copy of the "Laser Facts" page of the FDA website, found at http://www.fda.gov/radiation-emittingproducts/resourcesforyouradiationemittingproducts/ucm252761.htm.  Under Fed. R. Evid. 201(b), a court may take judicial notice of facts not subject to reasonable dispute which are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Numerous courts, including District Courts in this Circuit have found documents published by the FDA to be proper subjects for judicial notice. *See, e.g., In re Intrabiotics Pharm., Inc., Sec. Litig.,* No. C 04-02675 JSW, 2006 U.S. Dist. LEXIS 15753, at *25 (N.D. Cal. Jan. 23, 2006) (judicial notice of FDA Industry Guidance document); *Constr. Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.*, No. 07CV111-IEG-RBB, 2008 U.S. Dist. LEXIS 38899, at *22 (S.D. Cal. May 13, 2008) (judicial notice of FDA guidelines relating to new drug approval process); *In re Nuvelo, Inc. Sec. Litig.,* 668 F. Supp. 1217, 1219-20 (N.D. Cal. 2009) (judicial notice of PowerPoint presentation published on FDA website); *Sykes v. Glaxo-SmithKline,* 484 F. Supp. 2d 289, 293, 310 (E.D. Pa. 2007) (judicial notice of FDA Industry Guidance document and FDA webpage).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

REDACTED

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████

The principal study on which the TRIA relied for its FDA clearance to make the "permanent reduction in hair regrowth" actually <u>contradicts</u> the "*permanent hair removal*" claims, noting that, at twelve months following the third (and last) treatment, test subjects were still experiencing hair re-growth in the treated area. *See* Loughery Decl. Ex. 7 at 6; Grove Depo. Tr. 51:16-25 (Loughery Decl. Ex. 5 at 3).

Moreover, any claims that TRIA Hair "permanently removes" hair are further contradicted by TRIA Hair's own instructions for use ("IFU"). The IFU states that after 6-8 months of treatment, the user should "[d]o occasional touch-ups if necessary." *See* Loughery Decl. Ex. 30 at 6. Occasional touch-ups would obviously not be necessary if the TRIA Hair did in fact achieve permanent hair removal.

Accordingly, TRIA's "permanent hair removal" claims, as described above, are literally false. *See Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993) ("[T]he test for literal falsity is simple[]; if a defendant's claim is untrue, it must be deemed literally false.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

11

## 2.     Claims That TRIA Hair Provides "Permanent Results" Necessarily Imply "Permanent Hair Removal" And Thus Are Also Literally False

Under the doctrine of necessary implication, "an advertisement can be literally false even though no 'combination of words between two punctuation signals' is untrue, if the clear meaning of the statement, considered in context, is false." *Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 154-155 (2d Cir. 2007) (citation omitted). An advertisement conveys a false message by necessary implication when "'considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) (citation omitted).

TRIA's advertising repeatedly uses the claim "permanent" in a manner that necessarily implies consumers will experience permanent hair removal. For instance, in the TRIA Hair Infomercial host Ereka Vetrini expressly links the claims of "permanency" with claims of "hair removal," stating, "*I hope you'll join me and thousands of other women around the world experiencing the freedom of being <u>hair free</u> and carefree <u>for life</u>. Only with the TRIA Laser Hair Removal System, the first and only <u>permanent hair removal system</u> for home use. <u>Real laser, permanent results – it's like the hair was never there</u>.*" As she speaks alternating images of Ereka, other women who provided testimonials on the infomercial, and photos of an underarm which appears hairless (purportedly after 4 TRIA Hair treatments), appear on screen, with the text "call now 1800-398-1697" and "tryTRIAlaser.com." Loughery Decl. Ex. 1, 23:43.

In addition to the Infomercial, TRIA has used the claim "permanent" in a manner that necessarily implies "permanent hair removal" on its website. For example, a TRIA advertisement which appeared on the TRIA webpage shows a picture of the TRIA Hair device just above the claim "*the way to be hair-free forever!*" Directly underneath that claim, the ad states "*The TRIA Laser is the only FDA-cleared, at-home laser hair removal system that provides <u>permanent results</u>.*" *See* Loughery Decl. Ex. 12 at 25. The juxtaposition of the position of the "*hair-free forever*" claim, with the claim that the TRIA Hair is a "*laser hair removal system that provides*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

12

*permanent results*" necessarily implies that the TRIA Hair will provide consumers with permanent hair removal.

TRIA's website has also featured an advertisement stating that users of the TRIA Hair can "*take a permanent holiday from unwanted hair.*" *See* Loughery Decl. Ex. 25 (emphasis added); TRIA Answer ¶ 24.  In this advertisement, directly below the "*permanent holiday*" claim, the text reads:  "*Created by the same scientists who made in-office laser hair removal a success, the TRIA Laser frees you from shaving, waxing, ingrown hairs and razor burn—once and for all.  You'll swear the hair was never there!*"  *Id.*  Additionally, on its frequently asked questions ("FAQ") page, in response to the question "Are the results permanent?"  TRIA has claimed:  "In as few as eight treatments *you'll never have to shave or wax again.  End of story.*"  Loughery Decl. Ex. 22.  Similarly, on the FAQ page of http://www.trytrialaser.com, when confronted with the same question TRIA has claimed:  "*In as little as 90 days, you'll see permanent results—and in 6 months, you're done!*"  (Amended Counterclaims ¶ 23; TRIA Answer ¶ 23).

These unqualified claims – which are directly contradicted by the statement in the TRIA Hair IFU which warns consumers that "occasional touch-ups" may be necessary even 6-8 months after treatment (as well as by the other evidence described in above)  – unambiguously convey the message that TRIA users will experience "permanent hair removal," and thus are literally false.  Accordingly, Radiancy is entitled to summary judgment with regard to these claims as well.

**B.**   **TRIA Admits That Consumers Will Not Literally Be "Hair-Free"**
     **After Using TRIA Hair**

TRIA advertises a variety of iterations of the claim that consumers who use TRIA Hair will be "hair free."  Claims that TRIA users will be "hair free" – even temporarily – after using TRIA Hair are literally false because the undisputed facts demonstrate that TRIA users will experience some percentage of hair remaining even after long-term use of the device.[11]

On its website, http://www.triabeauty.com, TRIA has used the claim, "*Get permanent hair-free results at home – guaranteed!*"  Loughery Decl. Ex. 35 at 1.  TRIA has also used this

---

[11] As with the claims for "permanent hair removal" there can be no legitimate dispute that a claim that TRIA Hair will leave consumers "hair-free" would materially affect consumers' purchasing decision.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

13

1    claim in its print advertising.  *See* Loughery Decl. Ex. 34.  Similarly, another advertisement which

2    appeared on the TRIA webpage shows a picture of the TRIA Hair device just above the claim "*the*

3    *way to be hair-free forever!*"  *See* Loughery Decl. Ex. 12 at 25.

4         TRIA's Hair Removal infomercial is also riddled with similar claims, which are repeated

5    throughout the nearly 30 minute show.  For example, Rebekah George, a beauty editor, is pictured

6    on the screen stating:  "*If there is a timeline in beauty where major milestones happen, TRIA*

7    *Beauty will be on the map because this is the first technology to really deliver permanent hair free*

8    *results, and you can do it all in the comfort of your own home.*"  Loughery Decl. Ex. 1, 02:37.

9         Later on in the infomercial, TRIA co-founder (and its former CEO and Chief Technology

10   Officer), Dr. Robert Grove, describes the purported results of using TRIA Hair, stating that "*when*

11   *you do a laser treatment, the light from the TRIA Laser gets absorbed by the pigment in the hair*

12   *shaft and it shuts down that follicle so it never grows another hair. Eventually, you terminate*

13   *growth in all those follicles and you end up with an area that is hair free, permanently.*"  *Id.* at

14   06:00.  The infomercial goes on to depict the image of a woman reclining with her arm behind her

15   head, revealing her (apparently) hairless underarm, as Dr. Grove reiterates the "hair-free" claim,

16   stating that "*over time you have gradually less and less hair, until finally you're hair free.*"  *Id.* at

17   06:20.

18        Further on, towards the end of the infomercial, host Ereka Vetrini reinforces the "hair free"

19   claims, stating, "*I hope you'll join me and thousands of other women around the world*

20   *experiencing the freedom of being hair free and carefree for life.  Only with the TRIA Laser Hair*

21   *Removal System, the first and only permanent hair removal system for home use.  Real laser,*

22   *permanent results – it's like the hair was never there,*" while alternating images of Ereka, other

23   women who provided testimonials on the infomercial, photos of an underarm before and after 4

24   TRIA treatments, and the text "call now 1800-398-1697" and "tryTRIAlaser.com" appear on the

25   screen.  *Id.* at 23:43 (emphasis added).

26        TRIA has also used social media as a platform on which to broadcast its false "hair free"

27   claims.  For example, TRIA's Facebook page has included the claim:  "*The TRIA Laser Hair*

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

14

1    *Removal System is designed to gently disable hair growth so that your skin remains smooth and*

2    *hair-free – permanently.*"  (Amended Counterclaims ¶ 30; TRIA Answer ¶ 30).  Similarly, in an

3    April 18, 2011 post to its Facebook page, TRIA commands consumers to "*Get hair-free forever –*

4    *just like Kim Kardashian.*"  Loughery Decl. Ex. 26.  TRIA has also taken its false campaign to

5    Twitter.   On August 15, 2010, TRIA tweeted:  "*TRIA Laser Hair Removal System will have you*

6    *living happily ever after with beautifully hair free skin!*"  Loughery Decl. Ex. 17.

7             Notwithstanding all of the above, the indisputable facts demonstrate that, even after a

8    consumer uses TRIA Hair according to its IFU, some percentage of hair and/or stubble will

9    remain.  Indeed, TRIA co-founder and COO, Dr. Tobin Island, when asked if TRIA's internal

10   research demonstrated that there were still hairs present even after several treatments with TRIA

11   Hair, responded: "…I think, yes, sometimes there are hairs present after several treatments."  *See*

12   January 19, 2012 Deposition of Tobin Island ("Island Depo."), Tr. 106:12-17 (Loughery Decl. Ex.

13   3 at 2).  REDACTED

14

15

16

17

18

19

20

21

22

23            TRIA's internal correspondence also demonstrates that not only are its unqualified "hair-

24   free" claims false, but that TRIA was aware that such claims were false at the time that they were

25   being made.  REDACTED

26

27

28   _____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

15

1   REDACTED

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮

7       In light of the above, it is clear there is no triable issue of fact with regard to the falsity of

8   TRIA's "hair free" claims.

9       **C.    Claims That The TRIA Acne Is "FDA Cleared" Are Literally False**

10      TRIA's advertising falsely and explicitly claims that the TRIA Acne that is "FDA

11  Cleared."  For instance, in the TRIA Acne infomercial, the announcer states in a voiceover,

12  "Introducing the TRIA Skin Clarifying System, the only FDA-cleared at-home acne treatment that

13  delivers the same professional-strength blue light therapy that dermatologists use in their offices,"

14  while the text "FDA cleared SAFE & EFFECTIVE" and images of the System and a woman

15  painting her face with the blue light appear on the screen.  *See* Loughery Decl. Ex. 37 at 9.

16      TRIA has also produced an email advertisement containing this claim.  *See* Loughery Decl.

17  Ex. 21 at 20.  The advertisement declares "YOU VS. ACNE" at the top, followed below by the

18  claim "Try the TRIA Skin Clarifying System – win your daily struggle over acne!" underneath.  A

19  little further down the page, next to a picture of the TRIA Acne System, the ad states:  "The TRIA

20  Skin Clarifying System:

21      • clears acne faster

22      • uses effective yet gentle blue light – not harsh benzoyl peroxide

23      • *is FDA-cleared* safe and effective, and is dermatologist preferred"

24      However, these advertisements – and any other claims that the TRIA SCS is "FDA-

25  cleared" are literally false.  REDACTED

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

16

1  REDACTED

2  ████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4       Accordingly, since there remains no genuine disputed issue of fact with regard to the literal

5  falsity of TRIA's statement that TRIA Skin is "FDA Cleared," Radiancy should be granted

6  entitled to summary judgment as to this claim as well.

7

8                                    **CONCLUSION**

9       For all of the foregoing reasons, Radiancy respectfully requests that the Court grant its

10  motion for partial summary judgment and issue an Order:

11       1) finding that any claims that TRIA Hair provides "permanent hair removal" or that users

12  of TRIA Hair will be "hair free" are literally false as a matter of law;  and

13       2) finding that any claim stating that the TRIA Acne is "FDA cleared" is literally false as a

14  matter of law;

15       3) directing that TRIA pay Radiancy the costs of this action and its reasonable attorneys'

16  fees herein; and

17       4) granting Radiancy such other and further relief as the Court may deem just and proper.

18

19

20  DATED: April 5, 2012                    Brendan J. O'Rourke
                                            Alexander Kaplan
21                                          Jennifer L. Jones
                                            Victoria L. Loughery
22                                          Robert H. Horn
                                            PROSKAUER ROSE LLP
23

24                                          By:  _____/s/ Robert H. Horn_____
                                                       Robert H. Horn
25                                          Attorneys for Defendant and Counterclaim-Plaintiff
                                            Radiancy, Inc.
26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADIANCY, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS)(NJV)

17