ROPES & GRAY LLP
THAD A. DAVIS (SBN 220503)
thad.davis@ropesgray.com
Three Embarcadero Center
San Francisco, CA 94111-4006
Telephone: 415.315.6300
Facsimile: 415.315.6350

ROPES & GRAY LLP
PETER M. BRODY (*pro hac vice*)
peter.brody@ropesgray.com
MARIEL GOETZ (*pro hac vice*)
mariel.goetz@ropesgray.com
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Telephone: 202.508.4612
Facsimile: 202.383.7777

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
MICHAEL J. KUMP (SBN 100983)
mkump@kwikalaw.com
LAURA D CASTNER (SBN 172362)
lcastner@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Counterclaim Defendant
KIMBERLY KARDASHIAN

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TRIA BEAUTY, INC., Plaintiff,<br><br>vs.<br><br>RADIANCY, INC., Defendant. | Case No. CV-10-5030 RS<br>Honorable Richard Seeborg |
| RADIANCY, INC., Counterclaim Plaintiff,<br><br>vs.<br><br>TRIA BEAUTY, INC., Counterclaim Defendant, and<br><br>KIMBERLY KARDASHIAN,<br><br>Counterclaim Defendant. | **COUNTERCLAIM DEFENDANT KIMBERLY KARDASHIAN'S REPLY TO RADIANCY, INC.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 10, 2012<br>Time: 1:30 p.m.<br>Crtm.: No. 3, 17th Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. STANDARDS GOVERNING RADIANCY'S OPPOSITION ..... 2

III. RADIANCY UTTERLY FAILS TO DEMONSTRATE ANY GENUINE ISSUE OF MATERIAL FACT AGAINST MS. KARDASHIAN ..... 3

A. There Is No Genuine Issue of Material Fact As to Whether Ms. Kardashian Used the TRIA Laser Before Promoting It. ..... 3

B. Radiancy Has Not Presented Evidence of a Genuine Issue of Fact as to the "False and Deceptive Nature" of Ms. Kardashian's Statements. ..... 8

1. *"I'm loving the results so far"* ..... 9

2. "I use [TRIA Hair] on my entire body" ..... 11

3. "Never have to buy a razor or shaving cream again" ..... 12

C. Radiancy Offers No Evidence or Pertinent Authority to Show that Ms. Kardashian Made Any Actionable Statement Regarding the TRIA Laser ..... 13

IV. RADIANCY'S UCL CLAIM BASED ON THE SAME UNPROVEN ALLEGATIONS MUST ALSO BE DISMISSED ..... 13

V. CONCLUSION ..... 15

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986) .......... 1, 2, 3, 5

*Buetow v. A.L.S. Enters., Inc.* 650 F.3d 1178 (8th Cir. 2011) .......... 11

*Celotex Corp. v. Catrett* 477 U.S. 317 (1986) .......... 1, 2, 13, 14

*Devereaux v. Abbey* 263 F.3d 1070 (9th Cir.2001) .......... 2

*F.T.C. v. Garvey* 383 F.3d 891 (9th Cir. 2004) .......... 12, 13, 14, 15

*Fairbank v. Wunderman Cato Johnson* 212 F.3d 528 (9th Cir.2000) .......... 2

*Gasaway v. Nw. Mut. Life Ins. Co.* 26 F.3d 957 (9th Cir. 1994) .......... 3

*Kaplan v. Rose* 49 F.3d 1363 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995) .......... 3

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.* 701 F.2d 95 (9th Cir. 1983) .......... 3, 4

*Nelson v. Pima Community Coll.* 83 F.3d 1075 (9th Cir.1996) .......... 2

*Soremekun v. Thrifty Payless, Inc.* 509 F.3d 978 (9th Cir.2007) .......... 2

**STATE CASES**

*Garvai v. Board of Chiropractic Examiners* 216 Cal.App.2d 374 (1963) .......... 11

**REGULATIONS**

C.F.R. § 255.1(c) .......... 4

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In its Amended Counterclaims against TRIA spokesperson Kimberly Kardashian, Radiancy, solely on the basis of "information and belief," leveled the sweeping charge that, at no time during the period December 2010 through April 2011 in which Ms. Kardashian made endorsements of the TRIA Laser was she a bona fide user of the product. Radiancy, further, challenged the truthfulness of virtually every single statement made by Ms. Kardashian about the product and her use of it during that time period. As Radiancy's opposition to Ms. Kardashian's motion for summary judgment reveals, Radiancy had, and still has, <u>no facts</u> to support any of these allegations. In response to that motion, Radiancy has significantly scaled back its case against Ms. Kardashian, focusing on only a few of her statements. But even more strikingly, Radiancy has now substituted an entirely new and unprecedented theory that Ms. Kardashian is liable if she was not a bona fide user <u>before signing her contract</u> with TRIA on November 17, 2010.

Radiancy's principal defense to summary judgment on this narrowed case is to incant, repeatedly, the mantra of a "credibility issue," but that tactic does not avail Radiancy here. First, Radiancy's attempt to paint Ms. Kardashian as untruthful collapses when her actual deposition testimony is reviewed instead of the selective and distorted version Radiancy presents. But second, to defeat summary judgment, Radiancy must present <u>facts</u>, not just accusations that Ms. Kardashian did not tell the truth – and no such facts were submitted with the opposition. Throughout, Radiancy states that it can "allege" or "assert" its claims against Ms. Kardashian, and that the Court authorized it to do so. (*See, e.g.*, Opp. at 1:18-23, 2:10-11.) However, this is summary judgment, not a motion to dismiss. <u>Radiancy has not submitted a single declaration, discovery response, report, survey, witness statement, or other factual source</u> to prove (a) that Ms. Kardashian did not use the TRIA Laser before making any public statements or did not see the results she reported, or (b) that any consumer was misled by Ms. Kardashian. Nowhere does Radiancy point to affirmative, admissible evidence that meets its burden under *Celotex* and *Liberty Lobby*. Accordingly, Ms. Kardashian respectfully requests that her motion be granted in its entirety.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## II. STANDARDS GOVERNING RADIANCY'S OPPOSITION

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986). It is "not a disfavored procedural shortcut," but rather is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). Material facts are those that may affect the outcome of the case. *Liberty Lobby,* 477 U.S. at 248. A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* To carry this burden, for any issue on which the non-moving party bears the burden of proof at trial, the moving party need not introduce any affirmative evidence of its own, but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000). Here, in fact, Ms. Kardashian has submitted affidavits, deposition excerpts, and documents in support of her motion.

When the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Liberty Lobby,* 477 U.S. at 256-57. The non-moving party must go <u>beyond the pleadings</u> and must show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007); *see also Nelson v. Pima Community Coll.,* 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment").

A party who opposes a summary judgment motion merely by challenging the veracity of the moving party's testimony fails to meet its burden of showing a genuine issue of material fact. It is not sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence: "[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983); *see also Kaplan v. Rose*, 49 F.3d 1363, 1378 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995) (plaintiff in fraud action is unable to defeat summary judgment by challenging veracity of defendant's testimony); *Gasaway v. Nw. Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir. 1994) (holding that where the moving party has provided competent evidence, the non-moving party cannot avoid summary judgment by arguing that the evidence is "self-serving speculation that should be disregarded").

## III. RADIANCY UTTERLY FAILS TO DEMONSTRATE ANY GENUINE ISSUE OF MATERIAL FACT AGAINST MS. KARDASHIAN

According to Radiancy's opposition, Radiancy's entire case against Ms. Kardashian now boils down to just four allegations, namely, that (1) she was not a bona fide user of the TRIA Laser at the time she agreed to endorse the product (Opp. at 8-11); (2) she could not have seen any results at the time she said she was "loving the results so far" (*id.* at 12-13); (3) she did not exercise "reasonable care" in stating she used the product "on her entire body" (*id.* at 13); and (4) she knew or should have known that her statement that a consumer "would never have to buy a razor or shaving cream again" was false and misleading (*id.* at 14).

As shown below, Radiancy has not produced any evidence that creates a genuine issue of material fact with regard to any of these four allegations. Moreover, none of these allegations is "material" in the sense needed to defeat summary judgment because even if true, none of these allegations could affect the outcome of this case. *Liberty Lobby*, 477 U.S. at 248. Summary judgment in Ms. Kardashian's favor clearly is warranted. *See id.*

### A. There Is No Genuine Issue of Material Fact As to Whether Ms. Kardashian Used the TRIA Laser Before Promoting It.

In its opposition – in contrast to its Amended Counterclaims – Radiancy does not dispute

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

that Ms. Kardashian was a bona fide user of the TRIA Laser at the time she made each of her endorsements of the product during the period December 2010 to April 2011. Radiancy instead shifts its attack, alleging now that Ms. Kardashian was not a bona fide user before contracting with TRIA. (Opp. at 8-11.) Radiancy devotes pages of its opposition to attempting to support this allegation and to use it to make Ms. Kardashian appear untruthful.

Radiancy's maneuver is a complete diversion. As a matter of law, whether Ms. Kardashian used the TRIA Laser before November 17, 2010 – when she signed her contract – is legally irrelevant. There simply is no case, law, rule, or other authority that remotely suggests that an endorser is legally obligated to have used a product before signing a contract to promote it. To the contrary, the FTC Endorsement Guides – on which Radiancy heavily relies – stipulate only that the endorser be a bona fide user of the product "at the time the endorsement was given." 16 C.F.R. § 255.1(c). Ms. Kardashian fully complied with the Guides, having used the TRIA Laser several weeks before her first public statement promoting the device, and having continued to use it throughout the period in which she served as TRIA's spokesperson – and afterward. (Castner Decl. Ex. A at 12:16-13:3, 18:14-21:24, 26:6-27:4, 40:11-43:3, 49; Kardashian Decl. ¶¶10, 13, 20, 24.) Radiancy has presented no evidence to the contrary, and so lacks any basis in law or fact to go to trial on its theory that Ms. Kardashian was not a bona fide user of the TRIA Laser.

Seeking to avoid summary judgment despite this glaring lack of basis for its theory, Radiancy argues that "Ms. Kardashian herself has given contradictory testimony in her deposition concerning when she first received the product as well as when she first used it. Therefore, at a minimum, the current record raises issues of material fact that should go to the jury." (Opp. at 2:21-24.) It is settled, however, that Radiancy cannot create a genuine issue of material fact simply by arguing that her deposition testimony should not be believed. *Nat'l Union Fire Ins. Co.*, 701 F.2d at 97. That is particularly so given that the alleged "contradiction" in Ms. Kardashian's testimony concerns the legally irrelevant question of whether Ms. Kardashian was a bona fide user of the TRIA Laser before entering into the contract or only before she began

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

endorsing the product.[1] *See Liberty Lobby*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted [on summary judgment].").

In any event, when all of Ms. Kardashian's deposition testimony is considered, it is clear there was no such "contradiction." Rather, Ms. Kardashian consistently testified that her practice is always to sample a product before she signs a contract to endorse it – and that she followed this custom and practice in connection with the TRIA Laser. Radiancy's effort to suggest otherwise is at best misguided and at worst a bad faith attempt to confuse the Court about Ms. Kardashian's testimony, which is more fully outlined here.

Within the first few minutes of Ms. Kardashian's deposition – which was the first time she had ever been deposed (Depo. at 60:6-7) [2] – she testified that "I used [TRIA Laser] before I signed on to be – to endorse the product." (Depo. at 10:18-19.) Radiancy's lawyer asked, "Q: Are you sure about that?" to which Ms. Kardashian responded unequivocally: "A: Yes. Because I always need to try the product to see if I like it to see if I want to endorse it …." (Depo. at 10:20-23.) Radiancy's counsel then probed:

> Q: Did you get the product before you signed with TRIA?
>
> MR. KUMP: If you recall the date.
>
> A: Okay. I mean, I don't recall the date, but I typically get the products before I sign the contract.
>
> BY MR. O'ROURKE: Q: Okay, so when you say you typically get the products before you sign the contract, are you talking about other endorsement deals?
>
> A: How I conduct my business, yes.

---

[1] In a further effort to impugn Ms. Kardashian's veracity, Radiancy takes out of context a November 23, 2010 email chain between TRIA's CEO, Kevin Appelbaum, and Marketing Director, Nicole Landberg. (Opp. p. 10:26-11:7; Loughery Decl. Ex. 11 at 1.) Upon reviewing the entire email, it is clear the reference to Ms. Kardashian "authentically" promoting the TRIA Laser refers to the manner in which she would discuss the product in the course of her talk show/program appearances, so that it did not seem like a commercial. In any event, the email predates all of Ms. Kardashian's promotional activities for the TRIA Laser, and does nothing to refute her testimony and her public statements that she did in fact use the TRIA Laser. Ms. Kardashian is not copied on the email chain and she was not questioned about it at her deposition.

[2] Excerpts from Ms. Kardashian's deposition cited herein are attached to the Reply Declaration of Laura D. Castner as Exhibit L, and are referred to herein as "Depo. at ____."

Q: And it is typical for you in an endorsement situation to test the product before you sign the endorsement deal?

A: Yes. (Depo. at 10:25-11:14.)

To confirm the reason for Ms. Kardashian's practice, Radiancy's counsel asked: "Q: Generally speaking, is it important to you to feel good about the product before you agree to endorse it?" to which she responded, "A: Absolutely." (Depo. at 12:7-10.)

Radiancy's counsel asked Ms. Kardashian when she first received a TRIA Laser product, which prompted the following exchange:

Q: What date do you believe that that was?

MR. KUMP. The same objection.

Q: You can answer.

A: In November of 2010.

Q: Do you know whether it was in the beginning of November?

A: Closer to mid.

Q: Could it have been at the end of November?

A: I really don't remember. (Depo. at 16:4-14.)

Immediately thereafter, Radiancy's counsel questioned Ms. Kardashian about some documents by taking them out of chronological order. Rather than showing Ms. Kardashian the contract she signed with TRIA on November 17, 2010, Radiancy's counsel marked as Exhibit 1 an email dated November 23, 2010, which Ms. Kardashian testified she had not seen before. (Depo. at 16:15-25.) Exhibit 1 is an email from a marketing support person (Mark Rothman at Platinum Rye) who wrote to the assistant (Lisandra Dufort) for Ms. Kardashian's mother asking for Ms. Kardashian's "mailing address to get the TRIA product to Kim." (Depo. Ex. 1.)

Based solely on this email, and without showing Ms. Kardashian the contract she signed a week before the email, Radiancy's counsel asked, "does [Exhibit 1] refresh your recollection as to when the product was sent to you?" After Ms. Kardashian's attorney interposed an objection that "it calls for speculation," Ms. Kardashian responded: "A: Well, the date's on there, so it's obviously after this email. I know I received it in November of 2010, so my statement is

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

accurate." (Depo. at 18:3-13.) It is obvious from Ms. Kardashian's response that she was speculating based upon the date of the email. Contrary to Radiancy's representation, Ms. Kardashian never "admit[ted] that she had signed the TRIA Agreement without ever even receiving, let alone using, the TRIA [Laser]." (Opp. at 5:27-28).

Radiancy's opposition further misrepresents the record by claiming Ms. Kardashian's counsel "pulled [Ms. Kardashian] out of the [deposition] for a 'short break' [and] [w]hen she returned from the break, Ms. Kardashian changed her testimony, asserting that she was 'absolutely' certain she had used the product 'sometime before November 17.'" (Opp. at 6:1-4.) This is a complete fabrication. As the record shows, when Ms. Kardashian's counsel asked to "take a short break," Radiancy' counsel replied: "Okay." (Depo. at 20:9-13.) Radiancy's opposition fails to tell the Court that immediately after the break, Radiancy's counsel marked as Exhibit 2 a copy of the endorsement contract between TRIA and Ms. Kardashian (Depo. at 20:16-22), which had not been shown to Ms. Kardashian during the prior questioning regarding when she first tried the TRIA Laser on herself:

> Q: Is that your signature on page 14 underneath Kimsaprincess, Inc.?
>
> A: Yes.
>
> Q: And did you sign this contract on November 17, 2010?
>
> A: Yes. (Depo. at 22:2-7.)

Radiancy's counsel then marked Exhibit 3, Ms. Kardashian's December 22, 2010 "tweet" in which she commented, "I've been using the @TRIABeauty Laser since they first sent it to me & I'm loving the results so far!" (Depo. at 22:22-23:13.) Counsel questioned her about the tweet:

> Q: And do you see the date underneath the tweet?
>
> A: Yes.
>
> Q: Could you read it into the record, please?
>
> A: December 22.
>
> Q: And as of December 22 when you made this tweet, had you used the TRIA Laser?

A: Yes.

Q: How many times?

A: Once.

Q: Do you recall specifically when that was?

A: Sometime before November 17.

Q: Are you sure of that?

A: Absolutely.

Q: How do you know you used it before November 17?

A: Because I always try a product before I sign a contract. (Depo. at 25:11-26:3 (emphasis added).)

When the record at Ms. Kardashian's deposition is fully considered, it is clear that she consistently testified that it is her practice to sample products before she signs a contract to endorse any product, and that she followed this practice with the TRIA Laser. Radiancy misleads the Court by charging that Ms. Kardashian "was pulled out of the room" by her counsel, and that "[w]hen she returned from the break, Ms. Kardashian changed her testimony ...." (Opp. at 6:1-4.) This simply is not what happened. As the record shows, immediately following the short break, Radiancy's counsel refreshed Ms. Kardashian's recollection about the sequence of events by showing her for the first time the November 17, 2010 contract she had signed, and then asking her about the December 22, 2010 tweet that lies at the heart of Radiancy's counterclaims. Ms. Kardashian's testimony that she first tried the TRIA Laser before November 17, 2010 did not come "[w]hen she returned from the break" (Opp. at 6:1) – it came several pages later, after Ms. Kardashian was shown the TRIA contract and testified she signed it on November 17, 2010.

**B. Radiancy Has Not Presented Evidence of a Genuine Issue of Fact as to the "False and Deceptive Nature" of Ms. Kardashian's Statements.**

The few statements by Ms. Kardashian that Radiancy continues to challenge were not false in any material respect, and Radiancy's opposition fails to set forth evidence to the contrary. Radiancy contends that Ms. Kardashian "knew or should have known" of the purportedly "false and deceptive nature of her statements" because they supposedly contradict the TRIA Laser

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Instructions for Use ("IFU") "and other product information provided to her by TRIA, and thus the evidence shows that she clearly knew or should have known that such statements were deceptive." (Opp. at 11:23-28.) But Radiancy reaches this conclusion by ignoring portions of the IFU itself, as well as abundant additional evidence submitted with Ms. Kardashian's Motion, including a clinical study by Dr. Ronald G. Wheeland, M.D., FACP, and other product information reviewed by Ms. Kardashian. Ms. Kardashian's statements were fully consistent with these materials, and Radiancy cannot point to a single shred of evidence suggesting that Ms. Kardashian, at any time, made any statements that she did not believe were 100% truthful. As demonstrated below, there is no genuine issue of material fact for trial on these facts.

**1. *"I'm loving the results so far"***

In a tweet sent on December 22, 2010, Ms. Kardashian stated, "I've been using the @TRIABeauty Laser since they first sent it to me to try & I'm loving the results so far!" (Kardashian Decl. Ex. C at K00410.) As Ms. Kardashian testified, the results to which she was referring were (a) the hair on her legs fell out within 10 to 14 days after using the TRIA Laser and (b) she found the device convenient and easy to use. (*See* depo. testimony in Mot. at 13 (Castner Decl. Ex. A at 43:14-45:7); Kardashian Decl. ¶¶11, 18).) Radiancy has presented no evidence whatsoever that, as of the date of this statement, Ms. Kardashian did not "lov[e] the results so far."

Radiancy tries to cast doubt on the veracity of Ms. Kardashian's statement by suggesting, without any factual support, that it would have taken a "miracle" for hair loss to have occurred so quickly. (Opp. at 12:26-27.) In fact, Radiancy simply ignores the evidence cited at pages 21-22 of Ms. Kardashian's moving papers. As explained there, both TRIA's IFU and the Wheeland Study (Castner Decl. Exs. J and K) state that hair loss will occur 10-14 days after a treatment with the TRIA Laser. For example, the Quick Guide in TRIA's IFU notes that "After 10-14 days, small stubs of hair will fall off naturally." (Castner Decl. Ex. J at p. 91.) In addition, TRIA's IFU states that "After 2 weeks, the little stubs of hair fall out by themselves and the disabled follicle won't produce more hair. You may or may not see these stubs pushed out from the follicle." (*Id.* at p. 84.) The published, peer-reviewed Wheeland study of the TRIA Laser similarly found that:

* "The mean hair count reduction for all self-administered treatments

in the [Treatment Group] study was 60.6% 3 weeks after the first treatment . . ." (Castner Decl. Ex. K. p. 111);

* "The subjects assessed the reduction in hair counts themselves at selected visits following the first treatment, using a six-category scale. The predominant responses were 75-99% reduction 3 weeks following the first treatment." (*Id.*, p. 112 (emphasis added));

* "To summarize, the study showed in simulated consumer use: Excellent short-term single-treatment hair removal. The device substantially reduced the number of hairs after one treatment. The mean percentage hair count reduction from all sites was 61% at 3 weeks after the first treatment. A full 84% of treatment sites had cosmetically meaningful hair removal (defined as more than 30% hair reduction) after the first treatment. This is especially impressive considering that this was the first use of the device by the subjects and that subjects learned how to use the device solely from the device's proposed instructions for use." (*Id.*, pp. 119, 121 (second emphasis added).)

Even accepting Radiancy's unproven claim that Ms. Kardashian did not receive a TRIA Laser until shortly after November 23, 2010, there was still more than enough time for her to use the product and see results before she made any public statement on TRIA's behalf, either in a television appearance (at her December 9 media day) or on the Internet (on December 22).

Radiancy also argues that the word "results" could only mean "permanent hair reduction," citing TRIA's FDA clearance. Again, Radiancy ignores inconvenient portions of the evidence it cites. The FDA cleared the TRIA Laser for two specific and separate indications: (1) "adjunctive use with shaving for hair removal sustained with periodic treatments" and (2) "permanent reduction in hair regrowth defined as a long-term, stable reduction in hair counts following a treatment regime." (Castner Reply Decl. Ex. O). Further, the very language of Ms. Kardashian's December 22 tweet – "I've been using," and "I'm loving the results so far" – conveys that she was not done with her course of treatment with the TRIA Laser. As Ms. Kardashian testified, her experience with professional laser hair removal had taught her that the initial hair loss occurring in the first few weeks after treatment signals that the treatment has affected the hair follicle and thus is a harbinger of the permanent hair reduction that will become visible subsequently. (Castner Decl. Ex. A at 26:13-22, 44:2-16, 54:12-18; Kardashian Decl. ¶ 7.) Again, Radiancy submits no evidence that suggests, let alone proves, that Ms. Kardashian did not "lov[e] the results so far."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Finally, Radiancy takes issue with the fact that Ms. Kardashian, in her deposition, described among the "results" that she "loved" about the TRIA Laser, its ease and convenience of use. (Opp. at 13:8-17.) In essence, Radiancy argues that the word "results," which clearly could mean different things to different people (as seen from TRIA's own product instructions), can only be interpreted according to the meaning Radiancy gives it, or else it is "deceptive." This is not the law.[3] Although Radiancy suggests the December 22 tweet may be "literally false," (Opp. at 17) that doctrine is inapplicable when the challenged statement or phrase is susceptible to multiple reasonable meanings, as "results" is in this context. *See, e.g., Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011) ("When an ad 'can reasonably be understood as conveying different messages, [a] literal falsity argument must fail."). Moreover, Radiancy's quibble with Ms. Kardashian's additional reasons for loving the TRIA Laser's "results" is simply not material, and does not create a triable issue to withstand summary judgment.

2. ***"I use [TRIA Laser] on my entire body"***

Radiancy also challenges Ms. Kardashian's statement that she uses the TRIA product "on [her] entire body," and argues this statement must be false because TRIA's IFU recommends against use on certain body parts.[4] (Opp. at 13:19-26.)

Radiancy's argument depends on interpreting "entire body" to mean "every square centimeter of every part of the body" – an absurd interpretation and one that is belied by Radiancy's own practices. Radiancy fails to mention that it has advertised its own hair removal device, the no!no! Hair, using substantially similar (and more extreme) claims, notwithstanding that the no!no! Hair should not be used on the breasts or genitals (*see* Castner Reply Decl. Ex. M). For example, in video advertisements for the no!no! Hair from the Home Shopping Network

---

[3] The case cited by Radiancy – *Garvai v. Board of Chiropractic Examiners,* 216 Cal.App.2d 374 (1963) – does not so hold; that case relates to the conduct of a chiropractic practice owned by a non-chiropractor and whether the services advertised were discounted, and is factually inapposite.

[4] An IFU recommendation is just that – a recommendation. Thus, no result can be drawn about how an individual user may or may not, in practice, use the device.

(posted on www.YouTube.com), Radiancy makes the following claims:

> "…technology is **completely safe to use anywhere on your body**…" (Castner Reply Decl. Ex. N at 13:27 (emphasis added).)
>
> "…we can use it on the face, you can use it on the arms, legs, bikini area. So, **anywhere on your body** that you have unwanted hair, this is the technology for you." (*Id.* at 00:42-00:47 (emphasis added).)
>
> "…you pick the area…Now this can be on your face. This can be on your legs. It could be underarms, bikini area. **Anywhere that you have unwanted hair**, you pick the area and then you basically just glide the technology right over the area that you want to treat…" (*Id.* at 02:49-03:02 (emphasis added).)
>
> "…we're going to be removing the hair above the surface of the skin . . . So, this could be **anywhere on your body.**" (*Id.* at 03:13 (emphasis added).)

Radiancy cannot plausibly impute a meaning to the phrase "on my entire body" that its own advertising contradicts. Indeed, Radiancy's attempt to hold Ms. Kardashian liable for the "on my entire body" statement is nothing more than a double standard. Ms. Kardashian had no duty to disclose every qualification or limitation regarding use of the device in her brief media appearances and promotional statements; more detailed descriptions about the limitations and instructions for using TRIA's device are appropriately included on TRIA's website, which was readily available for consumers to consult before purchase, as well as the product's labeling and IFU. *See* Castner Decl. Ex. K; *www.triabeauty.com*; *F.T.C. v. Garvey*, 383 F.3d 891, 894-95 (9th Cir. 2004). In any event, Radiancy has made no showing as to why or how Ms. Kardashian's statement is material to consumers' purchasing decisions.

**3. *"Never have to buy a razor or shaving cream again"***

Last, Radiancy mounts a hair-splitting attack on a statement by Ms. Kardashian that after treatment with the TRIA Laser, a consumer will "never have to buy a razor or shaving cream again," which it claims is "false and misleading" because the IFU instructs the consumer to "cleanse, shave and dry your skin" each time before using the TRIA Laser, and states that the product is "intended for adjunctive use with shaving for hair removal sustained with periodic treatments." (Opp. at 14:1-10.) Obviously, this statement by Ms. Kardashian refers to the benefits

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

of treatment once completed, not the procedures that the user undergoes during treatment.

### C. Radiancy Offers No Evidence or Pertinent Authority to Show that Ms. Kardashian Made Any Actionable Statement Regarding the TRIA Laser

As to the role Ms. Kardashian's intent plays in this action, Radiancy argues out of both sides of its mouth (Opp. at 14-15). On the one hand, Radiancy argues that Ms. Kardashian's belief and intent are irrelevant (Opp. at 14:15-25), but then claims that whether her testimony concerning her beliefs and intent is credible cannot be decided on summary judgment (*id.* at 14:25-15:5). Radiancy's arguments are misguided. First, as shown in the moving papers and above, her statements were not "based solely on her subjective beliefs;" they were based on her use of and experience with TRIA Laser, as well as information she received from TRIA (*see* Castner Decl. Ex. A at 12:16-13:3, 13:13-22, 14:5-9, 15:19-23, 18:14-20:7, 20:11-21:24, 26:6-27:4, 28:25-30:9, 42:10-43:3, 46:24-47:15, 49; and Kardashian Decl. ¶¶10-11, 13-15, 17-18, 20, 21, 24-26, 28, 30), and thus clearly met the law's requirements. *See Garvey*, 383 F.3d at 903-905. Radiancy simply ignores the evidence it does not like, while offering nothing that affirmatively disproves Ms. Kardashian's statements, as it must to withstand summary judgment. *Celotex,* 477 U.S. at 324.

Radiancy claims it "is not required to prove that Ms. Kardashian intentionally mislead [*sic*] consumers," but that she can be liable for merely negligent statements which were intended to induce consumers to purchase the TRIA Laser. (Opp. at 15:6-21) In this case, however, the distinction makes no difference because Radiancy has not shown that Ms. Kardashian's statements were either negligently or intentionally false or misleading. It is Radiancy's burden to prove with admissible evidence, and not simply allege with mere speculation and doubletalk, that Ms. Kardashian's statements violated Section 17500; it is not her burden to prove that her statements were permissible. As discussed above, Radiancy has not met its burden. *Celotex,* 477 U.S. at 324.

## IV. RADIANCY'S UCL CLAIM BASED ON THE SAME UNPROVEN ALLEGATIONS MUST ALSO BE DISMISSED

Radiancy relies upon the same speculation and innuendo dispatched above to argue it "has established a viable cause of action" against Ms. Kardashian for unfair competition under the UCL. (Opp. at 16:2-3.) This statement is indicative of the reason Radiancy's opposition fails:

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Ms. Kardashian has filed a Rule 56 motion, not a Rule 12 motion, which obligates Radiancy to submit affirmative evidence that creates a genuine issue of material fact; Radiancy cannot merely stand on its pleadings at the summary judgment stage. *Celotex,* 477 U.S. at 324. As shown above, Radiancy has failed to meet its burden.

In the moving papers, Ms. Kardashian demonstrated that Radiancy could not state a claim under the UCL as a matter of law. (Mot. at 10-12.) Radiancy argues that it has stated claims under the fraudulent, unfair and unlawful prongs of the UCL – but again, fails to submit evidence to support such claims. First, under the fraudulent prong of the UCL, Radiancy concedes it must prove that Ms. Kardashian's statements are "literally false" (Opp. at 17-13-13), but has not done so. Radiancy also argues that Ms. Kardashian's appearances "caused a significant increase in both sales and traffic" which indicates consumers are likely to be deceived. (Opp. at 17:22-18:2.) The exhibits cited, however – emails between TRIA executives discussing favorable sales results following several of Ms. Kardashian's promotional appearances – show nothing of the sort. They simply suggest that Ms. Kardashian's media appearances were well received by TRIA consumers.

Second, under the unfair prong of the UCL, Radiancy argues that its UCL claim "is based on Ms. Kardashian's deceptive and untrue statements." (Opp. at 20:6-7 (emphasis added).) As shown above, however, Radiancy has not submitted any affirmative evidence proving that any of her statements were material and deceptive or untrue. Third, under the unlawful prong of the UCL, Radiancy states it "has also alleged" that Ms. Kardashian violated the FTC Act and/or the FTC Endorsement Guides. (Opp. at 21:12-15 (emphasis added).) But an allegation means nothing under Rule 56. Again, Radiancy has failed to submit any evidence that even suggests, let alone proves, that Ms. Kardashian's statements violated the standards for a celebrity spokesperson as explained by Example No. 4 in the FTC's Guides, quoted in full on page 13 of the Motion.

Finally, Radiancy asserts for the first time that Ms. Kardashian is liable under *Garvey* as both a "direct participa[nt]" in "false advertising statements she disseminated" and as an endorser, arguing that "the holding in *Garvey* is readily distinguishable from the facts of this case." (Opp. at 23:12, 26-28.) Radiancy does not cite a single case to support its assertion, and *Garvey* remains an accurate statement of the law. Moreover, Radiancy's attempt to distinguish *Garvey* misses the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

mark – in fact, the challenged statements there, for which Steve Garvey was found not liable under either theory of liability, were far more dramatic than Ms. Kardashian's statements.[5]

Contrary to Radiancy's assertion, it has not "established that Ms. Kardashian's misrepresentation and omissions were in total reckless disregard of the truth of such statements . . . ." (Opp. at 23:16-19.) As shown above, her statements were consistent with TRIA's IFU and other product information; and Radiancy has produced no admissible evidence to the contrary.

## V. CONCLUSION

Radiancy brought its counterclaim against Ms. Kardashian with no evidence to support it, but purely to harass its competitor, TRIA Beauty, and Ms. Kardashian herself. Despite having had many months for discovery, Radiancy still has no evidence to suggest any of Ms. Kardashian's promotional statements for TRIA were false or misleading, or that any consumers were, in fact, deceived. Radiancy would have the Court continue this charade, allowing its unfounded claims to go to trial despite having no evidence from which a jury could find Ms. Kardashian liable. It is time to bring an end to this abuse of process. For all of the reasons set forth in the moving papers and above, Ms. Kardashian respectfully requests that her motion be granted in its entirety.

DATED: April 26, 2012

Respectfully submitted,

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP

ROPES & GRAY LLP

By: /s/
Michael J. Kump
Attorneys for Kimberly Kardashian

---

5 Among other things, Mr. Garvey made statements such as "If you're having trouble losing weight, … the Enforma System is the miracle you've been waiting for. It's all natural, it's safe and it works," and "With [the Enforma System], you simply take Exercise in a Bottle twice a day and Fat Trapper before any meal that contains fat. Then go ahead and enjoy the foods that you love without the fear of fat. It's that easy," which the Ninth Circuit found not to be actionable. *Garvey*, 383 F.3d at 894-95. The Court did not require him to become an expert in diet and nutrition in order to endorse weight loss products.