REDACTED VERSION AND
CHAMBERS COPY

Brendan J. O'Rourke*
*borourke@proskauer.com*
Alexander Kaplan*
*akaplan@proskauer.com*
Jennifer L. Jones*
*jljones@proskauer.com*
Victoria L. Loughery*
*vloughery@proskauer.com*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Facsimile: (212) 969-2900
* Admitted *Pro Hac Vice*

Robert H. Horn (SBN 134710)
*rhorn@proskauer.com*
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067-3206
Phone:    (310) 557-2900
Facsimile: (310) 557-2193

Attorneys For Defendant and
Counterclaim Plaintiff Radiancy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRIA BEAUTY, INC.,<br>　　　　Plaintiff,<br>　vs.<br>RADIANCY, INC.,<br>　　　　Defendant.<br>RADIANCY, INC.,<br>　　　Counterclaim Plaintiff,<br>　vs.<br>TRIA BEAUTY, INC.,<br>　　　Counterclaim Defendant,<br>　and<br>KIMBERLY KARDASHIAN,<br>　　　Counterclaim Defendant. | CASE NO. CV-10-5030 (RS) (NJV)<br><br>**RADIANCY, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　May 10, 2012<br>Time:　1:30PM<br>Ctrm:　3<br><br>Honorable Judge Richard Seeborg |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

PRELIMINARY STATEMENT........................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I. TRIA'S ATTEMPT TO RE-DEFINE "PERMANENT HAIR REMOVAL" DEFIES THE PLAIN MEANING OF THE PHRASE ...................................... 4

    A. "Hair Removal" and "Hair Reduction" Are Not Interchangeable ....................... 4

    B. TRIA's Advertising Promises Consumers Their Hair Will Be Gone Forever.................................................................................................. 6

II. RADIANCY HAS INTRODUCED SUFFICIENT EVIDENCE TO DEMONSTRATE THAT TRIA'S "PERMANENT HAIR REMOVAL" CLAIMS ARE LITERALLY FALSE AS A MATTER OF LAW................................. 8

    A. TRIA's Explicit Claims of "Permanent Hair Removal" Are Literally False On Their Face ............................................................................ 8

    B. TRIA's Claims That Unambiguously Convey A Message Of "Permanent Hair Removal" Are Literally False By Necessary Implication......... 9

III. VIEWED IN CONTEXT, TRIA'S CLAIMS THAT TRIA HAIR USERS WILL BE "HAIR FREE" ARE LITERALLY FALSE AS A MATTER OF LAW ................................................................................................................... 10

IV. THE TRIA ACNE IS NOT "FDA CLEARED," AND TRIA'S CLAIMS TO THE CONTRARY ARE LITERALLY FALSE AS A MATTER OF LAW ................................................................................................. 12

CONCLUSION ................................................................................................................... 13

i

RADIANCY, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS) (NJV)

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allsup, Inc. v. Advantage 2000 Consultants Inc.*,
    428 F.3d 1135 (8th Cir. 2005) ..................................................................................3

*Buetow v. A.L.S. Enters., Inc.*,
    650 F.3d 1178 (8th Cir. 2011) ..............................................................................5, 12

*Castrol, Inc. v. Pennzoil Co.*,
    987 F.2d 939 (3d Cir. 1993)......................................................................................4

*CKE Rest. v. Jack in the Box, Inc.*,
    494 F. Supp. 2d 1139 (C.D. Cal. 2007) ....................................................................3

*In re: Century 21-RE/Max Real Estate Advertising Litig.*,
    882 F. Supp. 915 (C.D. Cal. 1994) .....................................................................4, 13

*K & N Eng'g, Inc. v. Spectre Performance*,
    No. EDCV 09-01900-VAP, 2011 WL 4387094 (C.D. Cal. Sept. 2011)...................4

*Mut. Pharm. Co. v. Ivax Pharms., Inc.*,
    459 F. Supp. 2d 925 (C.D. Cal. 2006) ......................................................................3

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. N.Y. 1999)..............................................................................4

*Taser Int'l v. Bestex, Co.*,
    No. CV 06-2636 PA (SHX), 2007 WL 2947564 (C.D. Cal. Feb. 9, 2007) *aff'd*, 314 F. App'x 46 (9th Cir. 2008) ..............................................................................................3

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)................................................................................7, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant-Counterclaimant Radiancy, Inc. ("Radiancy") respectfully submits this reply memorandum of points and authorities in further support of its Motion for Partial Summary Judgment (the "Moving Memo").

# PRELIMINARY STATEMENT

TRIA's Memorandum of Points and Authorities in Opposition to Radiancy's Motion for Partial Summary Judgment (the "Opposition") is nothing but a transparent attempt to deflect focus from TRIA's wrongful actions by pointing the finger at Radiancy. Indeed, TRIA's Opposition devotes a significant amount of space to the purported merits of TRIA's affirmative claims against Radiancy's advertising for the no!no! Hair and no!no! Skin products. *See, e.g.*, Opposition at 1:12-28, 8:16-9:6, 9:20-10:3. TRIA even goes so far as to attach, in their entirety, the 297-page report of Dr. Brian Biesman (the "Biesman Report") (Roberts Decl. Ex. A), and the 106-page report of Dr. Leslie Baumann (the "Baumann Report") (Roberts Decl. Ex. F) – neither of which address the performance or advertising of TRIA's products.[1]

To be clear, Radiancy's advertising is not at issue in this Motion, which seeks summary judgment declaring that certain claims made in TRIA's advertising are literally false. Accordingly, for the sake of judicial economy, Radiancy will constrain itself to address only the issues relevant to its Motion. It is obvious that the Biesman and Baumann Reports are (among other flaws) utterly irrelevant to Radiancy's Motion, and were included in TRIA's Opposition to distract the Court from the motion at hand.[2] Since neither report has any legitimate bearing on the issues raised by Radiancy's Motion, Radiancy objects to their inclusion in TRIA's Opposition, and, accordingly, requests that the Court strike or otherwise

---

[1] Radiancy has submitted rebuttals to the Biesman and Baumann Reports which thoroughly rebuke the opinions and conclusions therein. Further, Radiancy expects to move *in limine* to exclude or limit the testimony of Dr. Biesman and/or Dr. Baumann on various grounds.

[2] In fact, TRIA initially publicly filed the full and unredacted versions of the inherently flawed Biesman and Baumann Reports, despite the fact that the reports both disclose the content of documents concerning Radiancy's technology, testing and regulatory strategies, which Radiancy had designated as AEO and Confidential pursuant to the Protective Order. TRIA moved to file the reports under seal only after Radiancy notified TRIA that its actions violated the Protective Order. *See* Dk. 136.

1

exclude Exhibits A and F to the Roberts Decl., and not consider or rely on the purported "facts" contained therein when deciding Radiancy's Motion.[3]

What is at issue are TRIA's numerous false representations to consumers about its laser hair removal device ("TRIA Hair").[4] TRIA's advertising campaign for TRIA Hair repeatedly promises consumers that they will experience "permanent hair removal," and will be "free from waxing and shaving," and that users of TRIA Hair will be "hair-free forever." These statements, as used in TRIA's advertising, are literally false, both explicitly and/or by necessary implication, because users of TRIA Hair will not experience the "removal" of all hairs in a treatment area "forever." Indeed, the TRIA Hair falls very far from that promised result.

TRIA's Opposition nonetheless argues that it can avoid a finding of literal falsity because consumers will not understand TRIA's advertising claims to mean what they actually say (i.e., that consumers will experience "permanent hair removal" and "be hair-free forever"). Rather, TRIA argues, consumers viewing TRIA's ads will somehow understand that "permanent hair removal" instead means "long-term hair reduction" and that "hair-free" really means that some percentage of hair will remain. Such a tortured interpretation of TRIA's advertising claims defies both common sense and common English parlance. As demonstrated in Radiancy's Moving Memo (in Points III(A) and III(B)), and as set forth herein, TRIA's promises that users of TRIA Hair will live hair-free lives forever are literally false, and Radiancy's Motion for summary judgment on this issue should be granted.

Also at issue are TRIA's literally false claims that the TRIA Skin Clarifying System ("TRIA Acne") is "FDA-Cleared." TRIA admits, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and in its Opposition (at 24:15-16), that it only obtained FDA clearance for a single component of the three-part acne treatment system – the TRIA Clarifying Blue Light device (the "Blue Light"). However, TRIA argues that the Court should not find the claim to be

---

[3] Likewise, the Court should also disregard the corresponding portions of the Opposition (e.g., 1:12-28, 8:16-9:6, 9:20-10:3), which relate solely to TRIA's arguments in favor of its affirmative claims.
[4] A list of the TRIA advertising claims on which Radiancy seeks summary judgment are set forth on pages 5-6 of the Memorandum of Points and Authorities in Support of Radiancy's Motion (the "Moving Memo").
[5] All references to the "Loughery Decl." contained herein refer to the declaration submitted in support of Radiancy's Motion for Partial Summary Judgment, dated April 5, 2012.

false because consumers will ignore the plain meaning of the statement that "the TRIA Skin Clarifying System [is] the only FDA-cleared at-home acne treatment," and somehow intuit that the "FDA-cleared" claim refers merely to the Blue Light, rather than the three-part "System" to which the claim explicitly refers by name. Such an argument is self-serving, and has no basis in fact or law. As demonstrated in Radiancy's Moving Memo (at 16-17), and as set forth in Point IV below, the claim that the TRIA Acne is "FDA-Cleared," when viewed in context, is literally false.

In sum, there is no genuine disputed issue of fact with regard to the above challenged advertising claims. Radiancy has shown that TRIA has falsely represented the nature and efficacy of its products to consumers. Accordingly, Radiancy's Motion for Partial Summary Judgment should be granted.

## ARGUMENT

As an initial matter, TRIA incorrectly argues that literal falsity is a question of fact that cannot be determined at the summary judgment stage. *See* Opposition at 11. To the contrary, the case law is clear that courts are empowered to determine, as a matter of law, whether an advertisement is literally false. *CKE Rest. v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139 (C.D. Cal. 2007). *See also Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) ("'a court may find on its own that a statement is literally false'") (citation omitted). *Cf. Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005) ("[a] literally false statement can be determined as a matter of law").

TRIA also makes the general argument in its Opposition that Radiancy is not entitled to summary judgment finding TRIA's advertising claims false as a matter of law because Radiancy has not cited to any clinical study or submitted any expert report in support of its Motion. This argument is incorrect.[6] Radiancy has cited to deposition testimony and documents – including

---

[6] The cases cited by TRIA on this point are inapposite to the circumstances presented here. In *Taser Int'l, Inc. v. Bestex, Co.*, No. CV 06-2636 PA (SHX), 2007 WL 2947564 (C.D. Cal. Feb. 9, 2007), *aff'd*, 314 F. App'x 46 (9th Cir. 2008), the Court found that it could not determine whether the challenged statements were literally false because the movant had not provided evidence concerning the nature of the allegedly false statements or the context in which they were made. Here, in contrast, Radiancy has not only described the nature and context of TRIA's allegedly false statements, but has also provided the Court with copies of the advertisements containing such statements. *Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135 (8th Cir. 2005), merely found that the defendant's statements that defendant intended to enter the market at a certain time period were literally true when made, and the fact that

3

TRIA's own clinical studies – which affirmatively demonstrate that TRIA's advertisements are false.

In fact, "the test for literal falsity is simple[]; if a defendant's claim is untrue, it must be deemed literally false." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993). Thus, the best way to determine whether an advertising claim is literally false is by simply "comparing the statement itself with the reality it purports to describe." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999). *See also In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal. 1994) ("Just as a court can look at the face of an advertisement and decide as a matter of law whether the ad constitutes puffery, a court may also determine the meaning of an ad on its face with no reliance on extrinsic evidence.").

For the reasons set forth in Radiancy's Moving Memo, and as explained further below, there can be no dispute that, when "compared to the reality they purport to describe," TRIA's advertising statements are literally false.

### I. TRIA'S ATTEMPT TO RE-DEFINE "PERMANENT HAIR REMOVAL" DEFIES THE PLAIN MEANING OF THE PHRASE

#### A. "Hair Removal" and "Hair Reduction" Are Not Interchangeable

TRIA concedes (Opposition at 14) that the FDA does not permit a manufacturer to claim that its device provides "permanent hair removal", unless the manufacturer demonstrates that the device can permanently remove <u>all hairs in a treated area</u>. TRIA does not deny that the FDA has not cleared TRIA Hair for a "permanent hair removal" claim. Indeed, TRIA's own testing shows that the TRIA Hair absolutely does NOT eliminate all such hairs.[7] *See* Wheeland Study (Roberts Decl. Ex. C at 18), showing that <u>at most</u> TRIA Hair provides a 65% reduction of hairs re-growing 12 months after an 8-treatment regime.

---

defendant later changed its mind about entering the market did not render its prior statements false. In *K & N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-01900-VAP, 2011 WL 4387094 (C.D. Cal. Sept. 20, 2011), the Court denied summary judgment because the movant had not provided direct evidence that contradicted the test results on which the non-movant's establishment claims relied. In contrast, here, Radiancy has shown that TRIA's claims are contradicted by, among other things, TRIA's own clinical studies and by the admissions of its own former officers and employees.

[7] Radiancy notes that TRIA initially produced the report Ronald Wheeland (the "Wheeland Report") as a purported rebuttal to Radiancy's expert report of Dr. Peter Rheinstein. Radiancy expects to make a motion *in limine* concerning Dr. Wheeland's report and testimony.

Nonetheless, TRIA argues that its "permanent hair removal" claims are not literally false because consumers supposedly do not understand there to be any practical difference between "permanent hair removal" and "permanent hair reduction." Opposition at 14.

Grove Tr. 144:9-155:1.

Grove Tr. 138:5-7.

While it may be convenient for TRIA to argue that consumers do not distinguish between "hair removal" and "hair reduction," it is clear that the evidence in this case does not support such a conclusion.[8]

TRIA cites to *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178 (8th Cir. 2011), to support its argument that, notwithstanding the FDA's definition, "permanent hair removal" should not be construed as promising to remove all hair in a treated area. However *Buetow* is inapposite. There the Court held that claims that defendant's product used "odor eliminating technology" and "eliminate[d] odor" were not literally false despite tests showing that the product blocked only 96%-99% of odors, on the ground that the consumer would not reasonably "believe that any product can 'eliminate' every molecule of human odor." *Id.* at 1186. In contrast to the odor eliminating technology at issue in *Buetow*, in the context of hair removal, there <u>are</u> methods that

---

[8] Moreover, while Merriam-Webster defines the word "remove" to mean "to get rid of: eliminate" (Heyer Aff. Ex. 5), the term "reduce" means merely "to diminish in size, amount, extent, or number" (Heyer Aff. Ex. 6).

5

will remove <u>all</u> hairs in a treated area (e.g., shaving, waxing, or using Radinacy's no!no! Hair).[9] *See* Grove Depo. Tr. 114:2-3 ▇▇▇ (emphasis added)). Thus it is perfectly reasonable for consumers – the vast majority of whom are familiar with the 100% hair removal benefit of razors – to expect that a product claiming to "permanently remove" hair would, in fact, remove all the hair in the area being treated.

In light of the above, the Court should decline to disregard the plain meaning of the phrase "permanent hair removal" and find, as TRIA urges, that it is interchangeable with "permanent hair <u>reduction</u>."

B. **<u>TRIA's Advertising Promises Consumers Their Hair Will Be Gone Forever</u>**

TRIA argues that Radiancy is not permitted to attack its use of the word "permanent," because the FDA has cleared TRIA to market the TRIA Hair "for the permanent reduction of hair regrowth." Opposition at 16. This argument is a red herring. Radiancy does not challenge TRIA's ability to advertise, consistent with its FDA-clearance, that TRIA Hair provides users with a "permanent reduction of hair re-growth," as defined by the FDA (i.e., the long-term, stable reduction in the number of hairs re-growing over time greater than the duration of the complete growth cycle of hair follicles, which varies from four to twelve months). *See* Loughery Decl. Ex. 24. This is not, however, what TRIA claims in its advertising.

To the contrary, TRIA's advertising repeatedly claims – explicitly and by necessary implication – that TRIA Hair provides consumers with "permanent hair removal" <u>not</u> "permanent hair reduction." As explained in Point I(A) above, these two phrases have distinctly different literal meanings, and are not interchangeable. Indeed, if the phrases were interchangeable, why would TRIA not simply constrain itself to claiming (consistent with its FDA clearance) "permanent hair reduction"? The reason is obvious: claiming "permanent hair removal" is a greater promise to consumers and a better result (if true). In any event, the mere fact that the FDA

---

[9] Indeed, TRIA's own instructions for use require that the user shave first, before treating with the device, to remove all hair from the treatment area. This is because, while laser hair removal treatments can, over time, reduce the amount of hair re-growing after treatment, they do not remove or eliminate all the hair.

has cleared TRIA for "permanent hair reduction" does <u>not</u> provide TRIA with impunity for using the word "permanent" in a manner that is not just inconsistent with the FDA's definition, but affirmatively false and deceptive to consumers.

TRIA also argues that the word "permanent" does not necessarily mean "lasting forever" and uses, as an example, the fact that "permanent" hair coloring will eventually fade. Opposition at 17, n.13. However, this argument does not help TRIA since "permanent" hair coloring products – unlike TRIA – prominently disclose the fact that the definition of "permanent" being employed is something other than "forever." *See, e.g.,* Heyer Aff. Ex. 3 (Clairol Nice 'n Easy "Permanent Color" provides "8 WEEKS OF TONES + HIGHLIGHTS"); Heyer Aff. Ex. 2 (L'Oreal Superior Preference offers consumers "permanent color that stays brilliant up to 8 weeks"). In contrast, none of the challenged TRIA Hair advertising ever informs consumers that its definition of "permanent" is anything less than "forever."

In fact, TRIA's argument that "permanent" is not necessarily commonly understood to mean "forever" is both surprising and confusing in light of the fact that certain TRIA advertisements actually *include* the word "forever" in the context of making "hair free" claims. ███████████████████████████████████████████ Loughery Decl. Ex. 12 at 25. TRIA's social media marketing campaign has also included the directive: "Get hair free forever – just like Kim Kardashian!" *See* Loughery Decl. Ex. 26. TRIA's advertising also necessarily implies that the hair removal benefits purportedly provided by TRIA Hair will last forever. *See* Point II(B) at 9-10, *supra*.

The unambiguous message communicated by these claims in the context of the advertisements in which they appear is that use of the TRIA Hair will render the consumer free of all hair and that the hair will *never* come back. As demonstrated in Radiancy's Moving Memo at 8-16, and explained further in Points II and III herein, the clear meaning of all of these statements, in context, is false and accordingly, the claims are literally false. *See Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 154-55 (2d Cir. 2007).

7

II. **RADIANCY HAS INTRODUCED SUFFICIENT EVIDENCE TO DEMONSTRATE THAT TRIA'S "PERMANENT HAIR REMOVAL" CLAIMS ARE LITERALLY FALSE AS A MATTER OF LAW**

    A. <u>**TRIA's Explicit Claims of "Permanent Hair Removal" Are Literally False On Their Face**</u>

TRIA's claims that consumers will achieve "permanent hair removal" through use of the TRIA Hair are facially false because, as explained in Radiancy's Moving Memo at 8-16, the TRIA Hair does not in fact remove all hair in a treated area and does not permanently stop the hairs that appear to have been removed from regrowing. ██████████████████████████

██████████████████████████████████████████████████

██████ *See* Loughery Decl. Ex. 29 at 1.

As explained in Point I above, as used in TRIA's advertising, the phrase "permanent hair removal" unquestionably conveys an unambiguous message of permanent removal of *all* hair. In response, TRIA argues that, even if true, Radiancy nonetheless failed to introduce evidence that TRIA Hair does not remove all hair in a treated area forever. Opposition at 14-18. However, Radiancy has demonstrated that TRIA's own clinical studies establish that TRIA Hair provides, at most, only a long-term reduction of some percentage of hair re-growth, rather than the removal of all treated hairs. *See* Point I(A), *infra*; Moving Memo at 11. ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

██████ Loughery Decl. Ex. 18 at 2. Even the Wheland Eight-Treatment Study, which TRIA submitted as purported support for its "permanent hair removal" claim, reported mean normalized hair count reductions of only 44%-65% at twelve months post-treatment – which means that users who have completed the treatment regime suggested in TRIA's IFU reported anywhere from 35%-56% hair growth in the treated area. Roberts Decl. Ex. C at 18. These results stand in stark contrast to hair removal methods that do in fact achieve <u>removal</u> of all hair in a treated area.

Accordingly, TRIA's explicit claims of "permanent hair removal" are literally false on their face as a matter of law.

8

B. **TRIA's Claims That Unambiguously Convey A Message Of "Permanent Hair Removal" Are Literally False By Necessary Implication**

TRIA also makes a variety of claims that necessarily imply the false message that TRIA Hair consumers will experience "permanent hair removal." *See* Moving Memo at 12-15. For example, when viewed in the context of TRIA's false advertising, claims that TRIA Hair "frees you from shaving, waxing, ingrown hairs and razor burn–once and for all" (Loughery Decl. Ex. 25), "In as few as eight treatments you'll never have to shave or wax again. End of Story" (Loughery Decl. Ex. 22) and that "in 6 months, you're done!" (Amended Counterclaims ¶ 23; TRIA Answer ¶ 23) are literally false by necessary implication.[10] *See* Moving Memo at 13. So are promises that consumers will achieve "permanent hair-free results" and have the ability to be "hair free, permanently," which TRIA has made on its website (Loughery Decl. Ex. 35 at 1), in its Hair Removal Infomercial (Loughery Decl. Ex. 1, 02:37 and 06:00) and on its Facebook page (Amended Counterclaims ¶ 30; TRIA Answer ¶ 30). *See* Moving Memo at 13-15. The Hair Removal Infomercial also encourages consumers to experience "the freedom of being hair free and carefree *for life*." Loughery Decl. Ex. 1, 23:43 (emphasis added).

These statements unambiguously convey the message of "permanent hair removal" – a message that TRIA Hair users will experience removal of *all* hair in a treated area and that such hair will *never* come back. The only possible takeaway from these claims is that consumers who use the TRIA Hair will never again need to use other hair removal methods. However, as explained in Points I(A) and II(A), *supra*, the TRIA Hair does not achieve "permanent hair removal" in the manner implied by these claims (and as the average consumer cannot help but understand it). TRIA Hair users will not be free of all hair and the results are not permanent in the "once and for all" or "forever" sense; whether due to remaining hair or hair regrowth, these consumers will be forced to continue to resort to some method of removing hair.

In sum, the unambiguous message communicated by these claims in the context of the advertisements in which they appear is that use of the TRIA Hair will render the consumer free of

---

[10] Indeed, the claim "in 6 months, you're done!" is also apparently false on its face in light of the results of the Wheeland Eight Treatment Study which shows that, even after eight months of treatments, consumers will still have anywhere from 35%-65% of hair in the treated areas. *See* Roberts Decl. Ex. C at 18.

9

all hair and that the hair will *never* come back. The clear meaning of all of these statements, in context, is false and accordingly, the claims are literally false. *See Time Warner Cable*, 497 F.3d at 154-55. Thus, Radiancy is entitled to summary judgment as to the falsity of these claims.

### III. VIEWED IN CONTEXT, TRIA'S CLAIMS THAT TRIA HAIR USERS WILL BE "HAIR FREE" ARE LITERALLY FALSE AS A MATTER OF LAW

The uncontroverted evidence shows that consumers who use the TRIA Hair are left with some percentage of hair even after long-term use of the device. Roberts Decl. Ex. C at 18. Thus, as explained in Radiancy's Moving Memo (at 13-15), TRIA's claims that TRIA Hair users will be "hair free" are literally false, on their face, as a matter of law. "Free" is defined as "relieved from or lacking something and especially something unpleasant or burdensome." *See* Heyer Aff. Ex. 7. Irrespective of whether the hairs were never removed in the first place or are the result of hair re-growth, and regardless of whether they are terminal or vellus, when hairs are present after use of the TRIA Hair, the user is undeniably *not* "hair free." Considered in the context of the advertisements in which they are made, the unambiguous message communicated by TRIA's "hair free" claims is that consumers will be *entirely free of hair*. These claims are, accordingly, literally false.

TRIA argues that although consumers will have some percentage of hair present after use of the device, its "hair-free" claims are not literally false because consumers only care about appearing hair-free, rather than actually being free of hair. Notably, however, TRIA does not advertise that consumers will merely *appear* "hair free." ███████████████ ████████████████████████████████████████ Loughery Decl. Ex. 1, 23:43. As mentioned in Point II(A), such claims are literally false, because the evidence shows that some significant percentage of hair remains after using TRIA Hair.

Moreover TRIA's attempt to argue that only "invisible" or "unnoticeable" hair remains after a treatment regime is not supported by the evidence. First, the Wheeland Three Treatment Study demonstrates that users who <u>self-assessed</u> the percentage hair reduction reported a mean

10

RADIANCY, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT – CASE NO. CV-10-5030 (RS) (NJV)

1 reduction of only 31% after 12 months.[11]  Roberts Decl. Ex. C, Appx. 1 at 10 (Table 8).  This
2 means that the mean percentage of <u>self-assessed</u> hairs remaining in the treated areas (i.e., the hairs
3 that consumers "noticed") was 69% .  Even the Wheeland Eight Treatment Study shows that, 12
4 months after the last treatment, users were still reporting noticeable hairs remaining in the treated
5 areas.  In fact, even when used at its highest setting, 69% of test subjects self-assessed hairs
6 remaining in the treated areas 12 months following TRIA's recommended 8-treatment regime.[12]
7 *Id.* Appx. 1 at 19 (Table 18).  Accordingly, TRIA's own clinical studies demonstrate that its "hair
8 free" claims are literally false.

9       TRIA also attempts to support its "hair free" claims through "customer satisfaction
10 research" (*see* Opposition at 23) consisting of select customer ratings and reviews from the TRIA
11 website (Roberts Decl. Ex. D), certain open-ended responses from individuals dated between
12 August and September 2009 (Roberts Decl. Ex. E) and a portion of the results of a Zoomerang
13 survey on the TRIA Hair (Roberts Decl. Ex. H).  These consumer reviews – particularly those
14 cherry-picked from TRIA's website – are inadmissible hearsay, and should not even be considered
15 by the Court on this motion.  To the extent the Court is inclined to consider this evidence, it should
16 be noted that the very research TRIA offers in support of its "hair free" claims undermines the
17 veracity of such claims and reveals significant dissatisfaction among TRIA Hair users.  For
18 example, the Zoomerang survey includes the following responses to the question "What do you
19 like about the TRIA Laser Hair Removal System?":  "There was a slight reduction in regrowth of
20 hair"; "all the ad campaign – nothing else really works"; and "Unfortunately I found this product
21 as [*sic*] a complete waste of money :(".[13]  Roberts Decl. Ex. H.

---

[11] One subject did self-assess a 100% hair reduction at 12 months.  However, this result would not support an unqualified claim that all consumers will be "hair free".  Roberts Decl. Ex. C, Appx. 1 at 10 (Table 8).
[12] The percentage of self-assessed hairs remaining in the treated areas 12 months after completion of the 8-treatment regime ranged from 1%-99%.  Roberts Decl. Ex. C, Appx. 1 at 19 (Table 18).
[13] Further examples of general "customer satisfaction research," as TRIA calls it, can be found on TRIA's own website.  *See* Heyer Aff. Ex. 4 at 1 ("No difference in amount of hair or in the density of hair."); *id.* at 2 ("After the first few treatments the hair seemed to be growing back finer and thinner but over time (a few weeks later) it all comes back."); *id.* at 3 ("While hair is thinner and seems to grow slower, it is far from gone.").

1  In light of the fact that TRIA Hair users are left with some amount of hair even after long-
2  term use of the device, TRIA's "hair free" promises to consumers, as advertised, are literally false
3  on their face. There is no triable issue of fact with regard to the falsity of these claims, and
4  Radiancy should be granted summary judgment. *See Buetow*, 650 F.3d at 1187 (holding that,
5  despite tests showing defendant's product blocked 96%-99% of odors, defendant's claim that its
6  product would "render the wearer 'completely scent-free'" may have "so exaggerated the basic
7  [odor eliminating] claim as to be literally false. . . ." (emphasis added)).

### IV. THE TRIA ACNE IS NOT "FDA CLEARED," AND TRIA'S CLAIMS TO THE CONTRARY ARE LITERALLY FALSE AS A MATTER OF LAW

As admitted ███████████████████████████████ (*see* Loughery Decl. Ex. 14 at 1) ███████████████████ (*see* Loughery Decl. Ex. 8) and conceded by TRIA in its Opposition (at 24:15-16), the entire TRIA Acne three-step system is not FDA cleared. Accordingly, any claim to the contrary is literally false.

TRIA incorrectly states that "many of [the advertisements cited by Radiancy] discuss *only* the blue light device and its benefits, with no mention of any of the accompanying products that have at times been sold as one 'system.'" Opposition at 24. It is entirely unclear what TRIA is referring to, as both of the advertisements Radiancy cites contain repeated explicit references to the "accompanying products." ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Heyer Aff. Ex. 1 at 09:26; Loughery Decl. Ex. 37 at 9). ████████████████████████████████████████████████████ (Heyer Aff. Ex. 1 at 06:36; Loughery Decl. Ex. 37 at 7). ████████████████████ *Id.* ████████████████████████████████

|   |   |
|---|---|
| 1 | |
| 2 | ███████████████████ Heyer Aff. Ex. 1 at 10:20; Loughery Decl. Ex. 37 at 10. |
| 3 | |
| 4 | |
| 5 | ███████████████████ *See* Loughery Decl. Ex. 21 at 20. |

6  Given the context in which the "FDA cleared" claims appear, there can be no question that
7  consumers viewing these advertisements will believe that the entire three-step TRIA Acne system
8  has been cleared by the FDA. There is also no dispute that only the Blue Light, and not TRIA's
9  entire three-step system, is in fact FDA cleared. *See* Loughery Decl. Ex. 11. TRIA's "FDA
10 cleared" claims are plainly literally false, so Radiancy need not present evidence that consumers
11 were actually misled (despite TRIA's insistence otherwise). *See In re Century 21-RE/MAX Real*
12 *Estate*, 882 F. Supp. at 922. Accordingly, Radiancy is entitled to summary judgment on the falsity
13 of TRIA's "FDA cleared" claims.

## CONCLUSION

15 For all of the foregoing reasons, and the reasons set forth in Radiancy's Moving Memo,
16 Radiancy respectfully requests that the Court grant its motion for partial summary judgment in its
17 entirety.

DATED: April 26, 2012

Brendan J. O'Rourke
Alexander Kaplan
Jennifer L. Jones
Victoria L. Loughery
Robert H. Horn
PROSKAUER ROSE LLP


By: _____/s/ Robert H. Horn_____
          Robert H. Horn
Attorneys for Defendant and Counterclaim-Plaintiff
Radiancy, Inc.