# EXHIBIT 1

THAD A. DAVIS (CSB # 220503)
  thad.davis@ropesgray.com
JOSHUA VAN HOVEN (CSB # 262815)
  joshua.vanhoven@ropesgray.com
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Phone: (650) 617-4000
Facsimile: (650) 617-4090

PETER M. BRODY (*pro hac vice*)
  peter.brody@ropesgray.com
ROPES & GRAY LLP
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Telephone: (202) 508-4612
Facsimile: (202) 383-7777

Attorneys for Plaintiff and Counter-defendant
TRIA BEAUTY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TRIA BEAUTY, INC. | Case No. 10-cv-05030-RS |
| Plaintiff and Counter-Defendant, | |
| vs. | **PLAINTIFF/COUNTER-DEFENDANT TRIA BEAUTY, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT/COUNTER-CLAIMANT RADIANCY, INC.** |
| RADIANCY INC., | |
| Defendant and Counter-Claimant. | |

PROPOUNDING PARTY:    Plaintiff/Counter-defendant TRIA Beauty, Inc.

RESPONDING PARTY:    Defendant/Counter-claimant Radiancy, Inc.

SET NO.:    One

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         Under rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff/Counter-

3    defendant TRIA Beauty, Inc. ("TRIA") hereby requests that Defendant/Counter-claimant

4    Radiancy, Inc. ("Radiancy") produce to the offices of ROPES & GRAY LLP, 1900 University

5    Avenue, 6th Floor, East Palo Alto, CA 94303, for inspection and copying the documents

6    requested herein within thirty (30) days after service of these requests ("Requests"), subject to

7    the following definitions and instructions.

8                         **DEFINITIONS AND INSTRUCTIONS**

9         1.    "Radiancy" means and refers to Defendant/Counter-Claimant Radiancy, Inc., its

10   present and former agents, employees, representatives, attorneys, affiliates, officers, directors,

11   and all persons or entities acting or purporting to act on its behalf or in concert with it, or under

12   its control, including, but not limited to, any advertising agencies or advertising consultants that

13   worked with Radiancy in connection with the no!no! Claims and/or no!no! Advertisements

14   (defined below).

15        2.    "Defendant," "you," or "your" mean Radiancy, as necessary to bring within the

16   scope of these Interrogatories any information that might otherwise be construed to be outside

17   their scope.

18        3.    "no!no! Hair" means the OTC no!no! hair-removal product marketed and sold in

19   the United States, as well as each of its constituent components individually.

20        4.    "no!no! Skin" means any no!no! brand acne treatment product currently or

21   previously marketed and sold by Radiancy in the United States.

22        5.    "TRIA" means Plaintiff/Counter-defendant TRIA Beauty, Inc.

23        6.    "TRIA LHRS" means the TRIA Laser Hair Removal System marketed and sold

24   by TRIA in the United States.

25        7.    "TRIA SCS" means the TRIA Skin Clarifying System marketed and sold by

26   TRIA in the United States.

27        8.    "TRIA Products" means, collectively or singularly, TRIA LHRS and TRIA SCS.

28

9.      "TRIA Hair Statements," "TRIA Hair Infomercial," "QVC Hair Commercial," "TRIA Hair Advertisements," "TRIA Acne Statements," "TRIA Acne Infomercial," "QVC Acne Commercial," and "TRIA Acne Advertisements" each have the meaning ascribed to them by Radiancy in its First Set of Interrogatories and First Set of Requests for Production of Documents.

10.     "no!no! Claims" means any and all of the advertising statements made by Radiancy in connection with no!no! Hair that are alleged to be false or misleading in TRIA's Complaint in this action, including, but not limited to, the following:  (1) claims that no!no! Hair results in a reduction of hair growth and density (*See* Complaint ¶¶ 16-18, 25); (2) claims regarding a "Thermicon effect" or "thermolysis," and claims comparing this technology or effect to the laser hair removal technology or effects (*See* Complaint ¶¶ 19-20, 26-29, 33-34); (3) claims stating or implying that no!no! Hair has been clinically tested or proven to be safe or effective (*See* Complaint ¶¶ 21-22);  and (4) claims regarding the safety of no!no! Hair and pain levels from use of no!no! Hair  (*See* Complaint ¶¶ 35-37).

11.     "no!no! Hair Infomercials" means any video and/or television advertisements or infomercials for no!no! Hair, as exemplified in paragraphs 17, 18, 33, and 34 of TRIA's Complaint.

12.     "no!no! Hair Commercials" means any television commercials, infomercials, and sponsored segments on Home Shopping Network (HSN) and QVC, as exemplified at paragraph 18 of TRIA's Complaint.

13.     "no!no! Advertisements" means any and all advertisements of Radiancy that include one or more of the no!no! Claims or similar claims, including, but not limited to, the no!no! Hair Infomercials, the no!no! Hair Commercials, websites https://trynono.com and https://www.my-no-no.com, and the internet keyword and sponsored link advertisements referenced in paragraphs 28-29 of TRIA's Complaint.

14.     "Radiancy Products" means, collectively or singularly, no!no! Hair and no!no! Skin.

15.   As used in these Requests, the term "advertisement" includes, but is not limited to, print advertisements, television commercials and infomercials, product packaging, packaging inserts, Internet webpages, store displays, social media accounts and free-standing coupon inserts, as well as any other materials that would customarily be encompassed by the term "advertisement."

16.   In addition to the definitions contained in Fed. R. Civ. P. 34, the term "document" includes writings of any type, all other data compilations from which information can be obtained, all Communications (as that term is defined in the following paragraph), and any other means of preserving thoughts or expression, however produced or reproduced, including, but not limited to, e-mails authored from electronic or digital media, films, videotapes, and other recordings of events. Requested documents means originals in each instance (or copies thereof if originals are unavailable), regardless of origin or location, which are in the possession, custody, or control of Defendant, or in the possession, custody, or control of Defendant's agents, representatives, employers, employees, or counsel, and any containing marginal notations or other variations. Requested documents are to be taken as including all attachments, exhibits, enclosures, appendices, and other documents that relate to or refer to such designated documents. The enumeration of various specific items as included within the definition of the word "document" may not be taken to limit the generality of this word, and the requests herein are directed and intended to obtain all "documents" in the broadest and most comprehensive sense and meaning of the word.

17.   "Communication" means any transmittal or receipt of information in the form of facts, ideas, inquiries, or otherwise, and includes correspondence, telexes, telecopies, electronic mail, all attachments and enclosures thereto, computer tapes, discs, telephone tape recordings, recordings of any other type in any medium of written or oral communications, phone logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications. A communication is responsive for purposes of these Requests regardless of the sender and recipients of the Communication, and responsive Communications include

1    Communications between (a) only Radiancy employees; (b) only Radiancy employees and

2    third-parties; (c) only third-parties; or (d) any other combination of personnel.

3        18.    "Concerning" means reflecting, regarding, referring to, or relating to, in addition

4    to any of its other customary and usual meanings, and includes, but is not limited to, discussing,

5    constituting, pertaining to, describing, evidencing, identifying, touching upon, reflecting, and/or

6    summarizing.

7        19.    All words, terms, and phrases not specifically defined herein are to be given their

8    normal and customary meaning in the context in which they are used in these Requests.

9        20.    "And" as well as "or" will be construed either disjunctively or conjunctively as

10    necessary to bring within the scope of these Requests any information that might otherwise be

11    construed to be outside their scope.

12        21.    Use of the singular tense will be deemed to include the plural and vice versa, and

13    use of the masculine pronoun will be deemed to include both genders, as necessary, to bring

14    within the scope of these Requests all documents and responses that might otherwise be

15    construed to be outside their scope.

16        22.    In responding to these Requests, Defendant is required to furnish all information

17    that is available to it, including information in the possession, custody, or control of Defendant's

18    attorneys, accountants, agents, employees, representatives, or any other persons directly or

19    indirectly employed by or connected with Defendant or its attorneys or anyone else subject to

20    Defendant's control.

21        23.    Under Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure, the

22    documents produced are to be produced as they are kept in the ordinary course of business or

23    are to be organized and labeled to correspond to the specific Request(s) to which they are

24    responsive. The integrity and internal sequence of the requested documents within each folder

25    are not to be disturbed. Under no circumstances are documents from any file folder to be

26    commingled with documents from any other file folder.

27        24.    If documents being produced are hard copy documents, rather than making

28    another hard copy, Defendant should scan the documents in TIFF format with Optical Character

Recognition ("OCR"), along with a Concordance database load file containing fields populated with: the beginning bates number of each document [BEGBATES field]; the ending bates number of each document [ENDBATES field]; the number of pages of each document/record [PAGECOUNT field]; and the extracted OCR text [TEXT field]. With respect to documents that are already in electronic/digital form, or exist in or can be retrieved electronically, Defendant should convert said documents into a TIFF file with bates numbers, along with a link to the native, electronic file, and ensure that the metadata from the original/native electronic file has been transferred into a load file that can be loaded onto a Concordance database load file. Provided that the following populated fields are in existence within the native file from which the metadata is extracted, Defendant should ensure that the Concordance load file contains these populated fields (if some of these fields are not in existence within the native file, the remaining fields that are in existence should be contained within the Concordance load file):

| BEGBATES | CUSTODIAN | DOCSUBJECT | DATELASTPRNT | ENTRYID |
|---|---|---|---|---|
| ENDBATES | EMAILCLIENT | AUTHOR | TIMELASTPRNT | INTMSGID |
| ATTACHBEGBATES | FOLDER | KEYWORDS | IMPORTANCE | INREPLYTOID |
| ATTACHENDBATES | NATIVEFILE | COMMENTS | SENSITIVITY | UNREAD |
| PAGECOUNT | RECORDTYPE | CATEGORIES | DATESENT | READRECEIPT |
| SUBJECT | FILENAME | ORGANIZATION | TIMESENT | DELIVRECEIPT |
| FROM | DOCEXT | DATECREATED | DATERCVD | HEADERS |
| TO | FILESIZE | TIMECREATED | TIMRCVD | MAILSTORE |
| CC | MD5HASH | DATELASTMOD | CONVERSATION | TEXT |
| BCC | TITLE | TIMELASTMOD | CONVERINDEX | |

25.    If any documents covered hereunder are withheld from production on the ground of privilege, or on a ground other than privilege, Defendant shall furnish a list of all such documents that includes: (a) the date and number of pages of the document; (b) its title (if any); (c) its subject matter; (d) the identity of each attachment or appendices to the document; (e) the name and identification of each person to whom it is addressed; (f) the name and identification

1    of each person who received a copy thereat; (g) the name and identification of each person to

2    whom the document was distributed, shown, or explained; (h) the name and identification of the

3    person or persons by whom it is written; (i) its present custodian; and (j) the ground or grounds

4    upon which it is being withheld.

5           26.     These Requests will be deemed continuing and require immediate further

6    supplemental production if Defendant receives, discovers, or generates additional documents

7    after responding to these Requests. If any such additional documents or any portion of such

8    documents are withheld from production upon a claim of privilege or for any other reason,

9    Defendant must promptly serve a written identification of each such document or portion of

10   such document, setting forth the information described in the immediately preceding instruction.

11          27.     This First Set of Requests for the Production of Documents covers all documents

12   wherever located that are subject to production under the Federal Rules of Civil Procedure

13   and/or the Local Civil Rules of the United States District Court for the Northern District of

14   California, including all documents in Defendant's possession, custody, or control, and all

15   documents that are otherwise obtainable by Defendant.

16          28.     If any documents responsive to the Requests have been lost, destroyed,

17   transferred voluntarily or involuntarily to others not subject to Defendant's control, or otherwise

18   disposed of, or if any documents responsive to the Requests exist but are not available,

19   Defendant shall furnish a list identifying each such document, and set forth the following

20   information with respect to each document: its date, author(s), sender(s), addressee(s) and

21   recipient(s), and the subject matter of the document. In each instance, Defendant shall explain

22   the circumstances surrounding each disposition or why such document is unavailable, including,

23   in the event of such a disposition, the authorization therefor and the date thereof.

24                              **DOCUMENT REQUESTS**

25   **REQUEST NO. 1**

26          All documents concerning the analysis or testing of the efficacy, effectiveness,

27   capabilities, performance, and/or technology of no!no! Hair, whether or not such analysis and

28   testing was conducted or sponsored by Defendant. For purposes of illustration but not

1   limitation, this request encompasses, among other things, (a) documents concerning
2   comparative efficacy/effectiveness testing of no!no! Hair on the one hand, and TRIA LHRS, or
3   any other hair removal product, including both at-home and professional hair removal
4   treatments, on the other hand; (b) documents concerning any other analysis or testing of no!no!
5   Hair (whether or not comparative); (c) all protocol(s) used for each such analysis or test; (d)
6   documents concerning the results of each such analysis or test; (e) documents concerning any
7   conducted or contemplated statistical or other analysis of each such analysis or test, including
8   the results and methodologies of such analysis; (f) documents concerning the development of
9   the protocol(s) used for each such analysis or test; (g) documents sufficient to identify all
10  equipment, software, methods, processes, and equations used in each such protocol; and (h)
11  documents showing the identities of any and all persons who conducted or participated in such
12  analysis or test.

13  **REQUEST NO. 2**

14          All documents concerning the analysis or testing of the efficacy, effectiveness,
15  capabilities, performance, and/or technology of TRIA LHRS, whether or not such analysis and
16  testing was conducted or sponsored by Defendant.  For purposes of illustration but not
17  limitation, this request encompasses, among other things, (a) documents concerning
18  comparative efficacy/effectiveness testing of TRIA LHRS on the one hand, and no!no! Hair, or
19  any other hair removal product, including both at-home and professional hair removal
20  treatments, on the other hand; (b) documents concerning any other analysis or testing of TRIA
21  LHRS (whether or not comparative); (c) all protocol(s) used for each such analysis or test; (d)
22  documents concerning the results of each such analysis or test; (e) documents concerning any
23  conducted or contemplated statistical or other analysis of each such analysis or test, including
24  the results and methodologies of such analysis; (f) documents concerning the development of
25  the protocol(s) used for each such analysis or test; (g) documents sufficient to identify all
26  equipment, software, methods, processes, and equations used in each such protocol; and (h)
27  documents showing the identities of any and all persons who conducted or participated in such
28  analysis or test.

**REQUEST NO. 3**

All documents concerning substantiation or support for, refutation of, or disagreement with, any of the no!no! Claims. For purposes of illustration but not limitation, this request includes any documents in which the adequacy of the substantiation or support for any of the no!no! Claims is questioned or criticized, any trials or other testing that allegedly supports or refutes the no!no! Claims, and any statistical analyses concerning such trials or other testing, including, but not limited to, any report, video, analysis, and/or testing conducted by third parties.

**REQUEST NO. 4**

All documents concerning any studies or testing that are referenced in no!no! Advertisements, including, but not limited to, the results, the protocols employed, the identities of the persons involved, and any statistical analyses.

**REQUEST NO. 5**

All documents concerning analysis or testing of the efficacy, effectiveness, capabilities, performance, and/or technology of TRIA SCS whether or not such analysis and testing was conducted or sponsored by Defendant. For purposes of illustration but not limitation, this request encompasses, among other things, (a) documents concerning comparative efficacy/effectiveness testing of TRIA SCS on the one hand, and no!no! Skin, or any other acne treatment product, including both at-home and professional acne treatments, on the other hand; (b) documents concerning any other analysis or testing of TRIA SCS (whether or not comparative); (c) all protocol(s) used for each such analysis or test; (d) documents concerning the results of each such analysis or test; (e) documents concerning any conducted or contemplated statistical or other analysis of each such analysis or test, including the results and methodologies of such analysis; (f) documents concerning the development of the protocol(s) used for each such analysis or test; (g) documents sufficient to identify all equipment, software, methods, processes, and equations used in each such protocol; and (h) documents showing the identities of any and all persons who conducted or participated in such analysis or test.

**REQUEST NO. 6**

To the extent not encompassed by other Requests, reports, protocols, data, results, memoranda, and other documents concerning all testing or studies (whether or not conducted by Radiancy or a third party) that tested no!no! Hair, whether or not such studies also tested TRIA LHRS.

**REQUEST NO. 7**

To the extent not encompassed by other Requests, reports, protocols, data, results, memoranda, and other documents concerning all testing or studies (whether or not conducted by Radiancy or a third party) that tested TRIA LHRS, whether or not such studies also tested no!no! Hair.

**REQUEST NO. 8**

To the extent not encompassed by other Requests, reports, protocols, data, results, memoranda, and other documents concerning all testing or studies (whether or not conducted by Radiancy or a third party) that tested TRIA SCS.

**REQUEST NO. 9**

To the extent not encompassed by other Requests, reports, protocols, data, results, memoranda, and other documents concerning all testing or studies concerning the no!no! Claims.

**REQUEST NO. 10**

To the extent not encompassed by other Requests, reports, protocols, data, results, memoranda, and other documents concerning all testing or studies concerning the TRIA Hair Statements and TRIA Acne Statements.

**REQUEST NO. 11**

All documents concerning any product advantages or disadvantages of no!no! Hair, whether technical, aesthetic, packaging-related, or otherwise, either standing alone, as compared to TRIA LHRS, or as compared to third party's products.

**REQUEST NO. 12**

All documents concerning the way that no!no! Hair functions or performs as compared to TRIA LHRS or any third party's hair removal product.

**REQUEST NO. 13**

All documents concerning the nature, quality, quantum, and/or level of technology associated with no!no! Hair as compared to TRIA LHRS or any third party hair removal product.

**REQUEST NO. 14**

All documents concerning Radiancy's conception, development, selection of, decision to use, and/or use of the no!no! Claims in the no!no! Advertisements.

**REQUEST NO. 15**

All documents concerning Radiancy's decision to include the no!no! Claims on packaging and in advertising for no!no! Hair, including copies of all such advertisements.

**REQUEST NO. 16**

To the extent not encompassed by other Requests, documents concerning the derivation of any of the no!no! Claims and/or no!no! Advertisements.

**REQUEST NO. 17**

All documents concerning the message(s) or claim(s) that Radiancy intended to communicate and/or believes are communicated in the no!no! Advertisements, including, but not limited to, the message(s)/claim(s) intended to be conveyed by the no!no! Claims.

**REQUEST NO. 18**

All documents concerning consumer perception of the no!no! Claims and/or the no!no! Advertisements.

**REQUEST NO. 19**

All documents concerning qualitative or quantitative consumer research, whether conducted by Radiancy or a third party, concerning the no!no! Claims, the no!no! Advertisements, no!no! Hair, and/or the TRIA Products, including, but not limited to, market strategies, advertising testing, concept testing, product testing, consumer perception studies, testing of actual or potential impact on consumer behavior, concepts developed and placed with consumers, research concerning purchase intent, specific consumer "likes" and "dislikes" for each concept, and/or product after-use rating.

**REQUEST NO. 20**

To the extent not encompassed by the immediately preceding Request, reports, questionnaires, protocols, verbatim, data, results, memoranda, and other documents concerning all consumer surveys, consumer impact research (actual or potential impact), or other consumer perception research that Radiancy or a third party has conducted concerning the no!no! Claims, the no!no! Advertisements, no!no! Hair, and/or the TRIA Products.

**REQUEST NO. 21**

All documents concerning work performed by any advertising agency concerning the no!no! Claims and/or the no!no! Advertisements.

**REQUEST NO. 22**

All documents concerning any communication between Radiancy and any advertising agency concerning the no!no! Claims and/or the no!no! Advertisements.

**REQUEST NO. 23**

All documents sufficient to identify any media schedule for the no!no! Advertisements.

**REQUEST NO. 24**

All documents sufficient to show when the no!no! Advertisements, the no!no! Claims, the no!no! Hair Infomercials, and/or the no!no! Hair Commercials began airing or being shown or displayed publicly in the United States and/or on Radiancy's website.

**REQUEST NO. 25**

All documents sufficient to show where, when, and for how long the no!no! Advertisements, the no!no! Claims, the no!no! Hair Infomercials, and/or the no!no! Hair Commercials have been and will be shown or publicly displayed in the United States and/or on Radiancy's website.

**REQUEST NO. 26**

All documents sufficient to show the number of "hits" or visitors to Radiancy's websites on a daily basis from January 1, 2007 to the present.

**REQUEST NO. 27**

All documents sufficient to show the number of "hits" or times the no!no! Hair Infomercials and no!no! Hair Commercials have been viewed on Radiancy's website from the time they were first made publicly available until the present.

**REQUEST NO. 28**

All documents sufficient to show the number of times the no!no! Hair Infomercials and no!no! Hair Commercials have been viewed on television from the time they were first made publicly available until the present.

**REQUEST NO. 29**

All documents concerning consumer communications, comments, or complaints concerning the no!no! Claims, the no!no! Advertisements, and/or the Radiancy Products.

**REQUEST NO. 30**

All documents concerning customer returns of no!no! Hair, including but not limited to customer return records, reasons for returns, and any analysis of returns by Radiancy.

**REQUEST NO. 31**

To the extent not encompassed by other Requests, documents that Radiancy may tend to support, refute or contradict TRIA's claims and allegations in its claims in this action.

**REQUEST NO. 32**

All documents sufficient to show the weekly and monthly wholesale and retail sales of the Radiancy Products from January 1, 2007 through the present.

**REQUEST NO. 33**

All documents sufficient to show Radiancy's projected and actual gross revenues and net profits on each stock keeping unit ("sku") for the Radiancy Products, for each week or month during the period from January 1, 2007 through the present.

**REQUEST NO. 34**

All documents sufficient to show how Radiancy calculates gross revenues and net profits in the immediately preceding Request, including, but not limited to, documents showing all expenses broken out by category and/or item of expense.

**REQUEST NO. 35**

All documents sufficient to show Radiancy's projected and actual sales and/or orders on each sku for the Radiancy Products, for each week or month during the period from January 1, 2007 through the present.

**REQUEST NO. 36**

All documents sufficient to show Radiancy's costs and expenses for advertising the Radiancy Products.

**REQUEST NO. 37**

All documents sufficient to show the wholesale and retail prices of the Radiancy Products for each week or month during the period from January 1, 2007 through the present.

**REQUEST NO. 38**

All documents sufficient to show Radiancy's gross revenues, net revenues, assets, liabilities, income, and profitability from January 1, 2007 through the present.

**REQUEST NO. 39**

All documents concerning any equity tracking or any advertisement, in any media, that compares the Radiancy Products with competing products, whether created, generated, or performed by a third party or otherwise.

**REQUEST NO. 40**

All documents concerning any equity tracking for any advertisement, in any media, that compares the Radiancy Products with the TRIA Products, whether created, generated, or performed by a third party or otherwise.

**REQUEST NO. 41**

All documents sufficient to identify the number and type of Radiancy Products that Radiancy currently sells, markets, manufactures, or distributes in the United States.

**REQUEST NO. 42**

All documents concerning the intended, expected, potential, or actual effect of causal factors (including advertising, advertising spending, promotions, promotional spending, brand equity, product performance, and/or the introduction of new products) on sales, sales growth,

1 | shares, share growth, revenues, and/or profits of the Radiancy Products and/or the TRIA

2 | Products during the period from January 1, 2007 through the present, or any portion thereof.

3 | **REQUEST NO. 43**

4 | All documents concerning the intended, expected, potential, and/or actual effect of the

5 | no!no! Claims and the no!no! Advertisements on sales of no!no! Hair, including, but not limited

6 | to, documents concerning share, unit, revenue, or profit gains.

7 | **REQUEST NO. 44**

8 | All documents concerning the intended, expected, potential, and/or actual effect of the

9 | no!no! Claims and the no!no! Advertisements on sales of the TRIA Products or any third party's

10 | products, including, but not limited to, documents concerning share, unit, revenue, or profit

11 | gains.

12 | **REQUEST NO. 45**

13 | All documents concerning the potential and/or actual effect of the TRIA Hair Statements

14 | and the TRIA Acne Statements on sales of the Radiancy Products or any third party's products,

15 | including, but not limited to, documents concerning share, unit, revenue, or profit gains.

16 | **REQUEST NO. 46**

17 | All documents sufficient to indicate Radiancy's projections of market size and share for

18 | the Radiancy Products.

19 | **REQUEST NO. 47**

20 | All documents concerning any attempt to trade and capitalize on the goodwill associated

21 | with TRIA's trademarks, trade dress, brand, and goodwill.

22 | **REQUEST NO. 48**

23 | All documents sufficient to identify each no!no! Advertisement, including, but not

24 | limited to, the name of the publication or media in which the advertisement was run and the

25 | beginning and end dates when each no!no! Advertisement was run.

26 | **REQUEST NO. 49**

27 | Digital copies of all no!no! Advertisements, including, but not limited to, the no!no!

28 | Hair Infomercials and the no!no! Hair Commercials.

**REQUEST NO. 50**

All documents concerning the development and creation of the no!no! Advertisements (including, but not limited to, the no!no! Hair Commercials and the no!no! Hair Infomercials), including, but not limited to, scripts, draft scripts, storyboards, draft storyboards, and other documents that Radiancy, QVC or HSN used, in whole or in part, to prepare, create, or develop the no!no! Advertisements.

**REQUEST NO. 51**

All documents concerning the production, direction, and editing of footage for the no!no! Hair Commercials and the no!no! Hair Infomercials, including, but not limited to, any outtakes, or portions thereof.

**REQUEST NO. 52**

All documents concerning the protocol concerning each visual demonstration made and/or performed by any person in the no!no! Hair Commercials and/or the no!no! Hair Infomercials.

**REQUEST NO. 53**

All documents concerning the consumer testimonials and consumer footage contained in the no!no! Hair Commercials and/or the no!no! Hair Infomercials.

**REQUEST NO. 54**

All documents sufficient to identify all the actors, professionals, and alleged users who appear or are quoted in the no!no! Advertisements.

**REQUEST NO. 55**

Any and all drafts of the no!no! Advertisements.

**REQUEST NO. 56**

All documents sufficient to identify any third party whom Radiancy contacted, negotiated with, engaged or contracted to assist in the creation of the no!no! Advertisements, including, but not limited to, the no!no! Hair Commercials and the no!no! Hair Infomercials.

1

**REQUEST NO. 57**

2   All documents concerning communications (formal or informal) between Radiancy (or

3 any attorney of agent of Radiancy) and the Food and Drug Administration (FDA) regarding the

4 safety or effectiveness of no!no! Hair.

5 **REQUEST NO. 58**

6   All documents concerning communications (formal or informal) between Radiancy (or

7 any attorney of agent of Radiancy) and the FDA regarding the "Thermicon" effect or any other

8 effect of use of no!no! Hair on the structure or function of the human body.

9 **REQUEST NO. 59**

10   All documents concerning communications (formal or informal) between Radiancy (or

11 any attorney of agent of Radiancy) and the FDA regarding the equivalence or substantial

12 equivalence or superiority of no!no! Hair to any FDA-cleared laser or intense pulsed light

13 ("IPL") hair removal device, including but not limited to communications regarding similarities

14 or differences between the mechanisms of action of no!no! Hair and those of any FDA-cleared

15 laser or IPL hair removal device and/or the relative effectiveness of no!no! Hair and those FDA-

16 cleared devices.

17 **REQUEST NO. 60**

18   All documents concerning communications (formal or informal) between Radiancy (or

19 any attorney of agent of Radiancy) and the FDA regarding clearance for no!no! Hair under

20 Section 510(k) of the Food, Drug, and Cosmetic Act ("FDC Act") and/or any request for

21 information under Section 513(g) of the FDC Act respecting the classification of, and regulatory

22 requirements applicable to, no!no! Hair.

23 **REQUEST NO. 61**

24   All documents concerning communications (formal or informal) between Radiancy (or

25 any attorney of agent of Radiancy) and the FDA relating to the question of whether no!no! Hair

26 is a medical device within the meaning of the FDA Act.

27

28

**REQUEST NO. 62**

All documents supporting, refuting, or relating to any of the statements, comparisons, and representations by Radiancy relating to:

(i) Claims that using no!no! Skin cures acne outbreaks or completely removes individual pimples, including without limitation such claims as: Users of no!no! Skin will experience "no more breakouts"; no!no! Skin "will let you remove pimples shortly after they appear"; no!no! Skin "utilizes light and heat to gently remove your acne"; users "don't have to worry about those breakouts anymore"; no!no! Skin "destroy[s] the P.acnes"; no!no! Skin "stop[s] acne at its source"; "the acne lesion essentially disappears or is at least reduced significantly within a day"; no!no! Skin "opens the pore, destroys acne causing bacteria and soothes the inflammation so that you can start to enjoy clear skin - FAST"; no!no! Skin "accelerates the healing process of mild to moderate acne sores"; and no!no! Skin "clears" 81% of acne.

(ii) Claims that no!no! Skin is equivalent to professional dermatological treatment of acne, including without limitation such claims as: "no!no! Skin is a doctor approved and recommended device that is based on years of research and development"; no!no! Skin "uses dermatologist grade technology"; "doctor recommended, no!no! Skin uses professional LHE technology, the same technology used by physicians and dermatologists around the world"; "no!no! Skin puts the power and precision of professional acne phototherapy safely into the palm of your hand"; and "now you can now access this same technology [that professional use] from the comfort of your own home, instead of having to purchase medical equipment that typically costs tens of thousands of dollars!"

(iii) Claims that no!no! Skin is painless and safe for all users, including without limitation such claims as: Treatments with no!no! Skin are "painless" and "ha[ve] no side-effects when used as directed"; "no!no! Skin is recommended for individuals with mild to moderate acne lesions no matter their

skin type"; treatments with no!no! Skin are "safe for all skin types"; and no!no!
Skin is "safe, pain-free and effective" for treating "facial and body acne,"
including acne on the "back," "arms," "chest," and "butt[.]"

(v) Claims that no!no! Skin is the first or only at-home LHE device
available to consumers on an OTC basis, including without limitation such
claims as: "For the first time ever, you can use an FDA CLEARED device that
utilizes light and heat to gently remove your acne"; and no!no! Skin is "the only
acne treatment device that puts the power and precision of professional acne
phototherapy safely under your control."

(vi) Claims that no!no! Skin works better and faster than competitors'
products for treating acne, including without limitation such claims as: no!no!
Skin "penetrate[s] down in to the skin, deeper than . . . topicals can go"; and
no!no! Skin "clears up to 81% of pimples in as little as 24 hours" while "[m]ost
other medications take longer."

**REQUEST NO. 63**

All documents concerning analysis or testing of the efficacy, effectiveness, capabilities,
performance, and/or technology of no!no! Skin, whether or not such analysis and testing was
conducted or sponsored by Defendant. For purposes of illustration but not limitation, this
request encompasses, among other things, (a) documents concerning comparative
efficacy/effectiveness testing of no!no! Skin on the one hand, and TRIA SCS, or any other acne
treatment product, including both at-home and professional acne treatments, on the other hand;
(b) documents concerning any other analysis or testing of no!no! Skin (whether or not
comparative); (c) all protocol(s) used for each such analysis or test; (d) documents concerning
the results of each such analysis or test; (e) documents concerning any conducted or
contemplated statistical or other analysis of each such analysis or test, including the results and
methodologies of such analysis; (f) documents concerning the development of the protocol(s)
used for each such analysis or test; (g) documents sufficient to identify all equipment, software,

1  methods, processes, and equations used in each such protocol; and (h) documents showing the

2  identities of any and all persons who conducted or participated in such analysis or test.

3  **REQUEST NO. 64**

4  To the extent not encompassed by other Requests, reports, protocols, data, results,

5  memoranda, and other documents concerning all testing or studies (whether or not conducted by

6  Radiancy or a third party) that tested no!no! Skin.

7  **REQUEST NO. 65**

8  All documents concerning any product advantages or disadvantages of no!no! Skin,

9  whether technical, aesthetic, packaging-related, or otherwise, either standing alone, as compared

10 to TRIA LHRS, or as compared to third party's products.

11 **REQUEST NO. 66**

12 All documents concerning the manner in which no!no! Skin functions or performs as

13 compared with TRIA SCS or any third party acne treatment product.

14 **REQUEST NO. 67**

15 All documents concerning the nature, quality, quantum, and/or level of technology

16 associated with no!no! Skin as compared to TRIA SCS or any third party acne treatment

17 product.

18 **REQUEST NO. 68**

19 All documents concerning customer returns of no!no! Skin, including but not limited to

20 customer return records, reasons for returns, and any analysis of returns by Radiancy.

21 **REQUEST NO. 69**

22 To the extent not encompassed by other Requests, all documents (including documents

23 concerning any studies and statistical analyses) that support or contradict the no!no! Claims.

24 **REQUEST NO. 70**

25 To the extent not encompassed by other Requests, all documents that Radiancy believes

26 may tend to support the claims alleged in the Cross-Complaint.

27

28

**REQUEST NO. 71**

To the extent not encompassed by other Requests, all documents that Radiancy believes may tend to refute the claims in TRIA's Complaint.

**REQUEST NO. 72**

To the extent not encompassed by other Requests, all documents that Radiancy believes may end to refute TRIA's claims.

**REQUEST NO. 73**

All documents that Radiancy intends to rely upon in this case.

**REQUEST NO. 74**

All documents concerning the purchase of the terms "TRIA," "TRIA Beauty," "TRIA laser" and other phrases incorporating the TRIA name, or confusingly similar marks, as keywords on internet search engines.

**REQUEST NO. 75**

All documents concerning any communication between Radiancy and any person concerning the purchase of the terms "TRIA," "TRIA Beauty," "TRIA laser" and other phrases incorporating the TRIA name, or confusingly similar marks, as keywords on internet search engines.

**REQUEST NO. 76**

All documents concerning use of the terms "TRIA," "TRIA Beauty," "TRIA laser," "Laser Like Results," and other phrases incorporating the TRIA name or references to laser technology, in an effort to cause consumers searching for TRIA's products to click on a link to Radiancy's website.

**REQUEST NO. 77**

All documents concerning any communication between Radiancy and any person concerning use of the terms "TRIA," "TRIA Beauty," "TRIA laser," "Laser Like Results," and other phrases incorporating the TRIA name or references to laser technology, in an effort to cause consumers searching for TRIA's products to click on a link to Radiancy's website.

1

**REQUEST NO. 78**

All documents sufficient to show Radiancy's corporate structure, including the relationship and identity of any limited liability corporation members, parents, subsidiaries, or affiliates, and including any organizational and personnel charts.

**REQUEST NO. 79**

All documents concerning Radiancy's document retention and destruction policies, whether formal or informal, written or unwritten, including all such policies related to electronic data, electronic mail, and social networking.

January 13, 2011

By _____
Joshua V. Van Hoven
ROPES & GRAY LLP

Attorneys for Plaintiff/Counter-defendant
TRIA BEAUTY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFF/COUNTER-DEFENDANT TRIA BEAUTY, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT/COUNTER-CLAIMANT RADIANCY, INC.** was served on January 11, 2011 by causing a true copy of same to be transmitted by first class mail to:

    Robert H. Horn
    PROSKAUER ROSE LLP
    2049 Century Park East, 32nd Floor
    Los Angeles, CA 90067-3206

    Brendan J. O'Rourke
    Kristin H. Neuman
    Victoria L. Loughery
    PROSKAUER ROSE LLP
    Eleven Times Square
    New York, NY 10036

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2011 in East Palo Alto.

                    By:

                    Joshua Van Hoven
                    ROPES & GRAY LLP

                    Attorneys for Plaintiff/Counter-defendant
                    TRIA BEAUTY, INC.